*aee*

**18CV2120**

**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

# FILED                    AEE

4/10/2018

IN RE: FACEBOOK, INC., CONSUMER
PRIVACY USER PROFILE LITIGATION

MDL DOCKET NO. 2843

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



## NOTICE OF RELATED ACTIONS

Pursuant to Rule 6.2(d) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation ("the Panel"), Defendant Facebook, Inc. ("Facebook") hereby provides this notice

informing the Panel of three "potential tag-along actions" to In re Facebook, Inc., Consumer

Privacy User Profile Litigation, MDL No. 2843:

1. *Suzie Haslinger v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100*,
   United States District Court for the Northern District of California, 4:18-cv-01984
   (filed Mar. 30, 2018)

2. *Debra Kooser and Margaret Frankiewicz v. Facebook, Inc., Cambridge Analytica,
   SCL Group, Limited, and Global Science Research LTD*, United States District Court
   for the Northern District of California, Case No. 3:18-cv-02009 (filed Apr. 2, 2018)

3. *Jordan O'Hara, Brent Collins and Olivia Johnston v. Facebook, Inc., Cambridge
   Analytica, LLC, Aleksandr Kogan and Stephen K. Bannon*, United States District
   Court for the Central District of California, Case No. 8:18-cv-00571 (filed Apr. 4,
   2018)

4. *Jackie Williams v. Facebook, Inc. and Cambridge Analytica, LLC*, United States
   District Court for the Northern District of Alabama, Case No. 2:18-cv-00535-RDP
   (filed Apr. 4, 2018)

A schedule of actions is attached to this Notice. Copies of the docket sheets and

complaints are attached as Exhibits A-D to this Notice. The complaints share common questions

of fact and law and are premised on the same core issues as the other actions pending before the

Panel, and are therefore "Related Actions" for purposes of these proceedings.

Dated: April 5, 2018                                Respectfully submitted,

                                                    GIBSON, DUNN & CRUTCHER LLP

                                                    By: __/s/ Orin Snyder__
                                                    Orin Snyder
                                                    200 Park Avenue
                                                    New York, N.Y. 10166
                                                    Tel: 212.351.2400
                                                    Fax: 212.351.6335
                                                    osnyder@gibsondunn.com

                                                    Joshua S. Lipshutz
                                                    1050 Connecticut Avenue, N.W.
                                                    Washington, D.C. 20036
                                                    Tel: 202.955.8217
                                                    Fax: 202.530.9614
                                                    jlipshutz@gibsondunn.com

                                                    Kristin A. Linsley
                                                    Brian M. Lutz
                                                    555 Mission Street
                                                    Suite 300
                                                    San Francisco, CA 94105
                                                    Tel: 415.393.8379
                                                    Fax: 415.374.8474
                                                    klinsley@gibsondunn.com
                                                    blutz@gibsondunn.com

                                                    *Attorneys for Facebook, Inc.*



**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

**IN RE: FACEBOOK, INC., CONSUMER
PRIVACY USER PROFILE
LITIGATION**

**MDL DOCKET NO. 2843**

## SCHEDULE OF ACTIONS (TO BE ADDED TO EXISTING SCHEDULE)

| # | Case Name | District | Case No. / Filing Date | Assigned Judge |
|---|-----------|----------|------------------------|----------------|
| 1 | Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100 | Northern District of California (Oakland) | Case No.: 4:18-cv-01984 Filed: 03/30/2018 | District Judge Yvonne Gonzalez Rogers |
| 2 | Debra Kooser and Margaret Frankiewicz v. Facebook, Inc., Cambridge Analytica, SCL Group, Limited, and Global Science Research LTD | Northern District of California (San Francisco) | Case No.: 3:18-cv-02009 Filed: 04/02/2018 | Magistrate Judge Elizabeth D. Laporte |
| 3 | Jordan O'Hara, Brent Collins, and Olivia Johnston v. Facebook, Inc., Cambridge Analytica, Aleksandr Kogan, Stephen K. Bannon, and Does 1-10 | Central District of California (Santa Ana) | Case No.: 8:18-cv-00571 Filed: 04/04/2018 | unassigned |
| 4 | Jackie Williams v. Facebook, Inc. and Cambridge Analytica, LLC | Northern District of Alabama (Birmingham) | Case No.: 2:18-cv-00535-RDP Filed: 04/04/2018 | District Judge R. David Proctor |

Dated: April 5, 2018                              Respectfully submitted,

                                                  GIBSON, DUNN & CRUTCHER LLP

                                                  By: /s/ *Orin Snyder*
                                                  Orin Snyder
                                                  200 Park Avenue
                                                  New York, N.Y. 10166
                                                  Tel: 212.351.2400
                                                  Fax: 212.351.6335
                                                  osnyder@gibsondunn.com

                                                  Joshua S. Lipshutz
                                                  1050 Connecticut Avenue, N.W.
                                                  Washington, D.C. 20036
                                                  Tel: 202.955.8217
                                                  Fax: 202.530.9614
                                                  jlipshutz@gibsondunn.com

                                                  Kristin A. Linsley
                                                  Brian M. Lutz
                                                  555 Mission Street
                                                  Suite 300
                                                  San Francisco, CA 94105
                                                  Tel: 415.393.8379
                                                  Fax: 415.374.8474
                                                  klinsley@gibsondunn.com
                                                  blutz@gibsondunn.com

                                                  *Attorneys for Facebook, Inc.*

**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION** | **MDL DOCKET NO. 2843** |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on April 5, 2018, I caused the foregoing documents to be filed with the Clerk of the Court using the Judicial Panel on Multidistrict Litigation's CM/ECF system, which will serve notification of such filing to the email of all counsel of record in this action. I further certify that copies of the foregoing were served on all counsel (or unrepresented parties), and on the Clerk of the Court of each proposed transferor court, by U.S. First Class Mail, postage pre-paid, as follows:

## **Court Clerks**

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102

*Theresa Beiner and Brandon Haubert, on behalf of themselves and all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 3:18-CV-01953

*Howard O'Kelly, on behalf of himself and all others similarly situated v. Facebook, Inc., and Cambridge Analytica, LLC;* Case No. 3:18-CV-01915

*Lauren Price on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica*; Case No. 3:18-CV-01732

*Jonathan D. Rubin, individually and on behalf of all those similarly situated v. Facebook, Inc., SCL Group, Global Science Research Ltd., and Cambridge Analytica LLC;* Case No. 3:18-cv-01852

Thomas G. Bruton, Clerk
Chicago Division
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

*Victor James Comforte, II and Brendan Michael Carr, Individually, and on behalf of all others similarly situated v. Cambridge Analytica, Facebook, Inc., Mark Zuckerberg, and John and Jane Does 1-100,* Case No. 1:18-CV-02120

Susan Y. Soong, Clerk
Oakland Division
United States District Court
1301 Clay Street, Suite 400S
Oakland, CA 94612

*Ashley Gennock and Randy Nunez, and on behalf of all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 4:18-CV-01891

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
280 S. 1st Street
San Jose, CA 95113

*Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100;* 4:18-cv-01984-YGR

Kiry Gray, Clerk
Southern Division
Central Division of California
411 West 4th Street, Room 1053
Santa Ana, CA 92701

*Jordan O'Hara, Brent Collins, and Olivia Johnston, individually and on behalf of all others similarly situated v. Facebook, Inc., a Delaware corporation; Cambridge Analytica, LLC, a Delaware limited liability company; Aleksandr Kogan, an individual, Stephen K. Bannon, an individual, and DOES 1-10, Inclusive*

David J. Bradley, Clerk
Houston Division
United States Courthouse
515 Rusk Avenue
Houston, TX 77002

*Matthew Lodowski, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica, Robert Leroy Mercer, and Aleksandr Kogan*;
Case No. 4:18-CV-00907

William T. Walsh, Clerk
Newark Division
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

*Jay Malskoff and Kenneth Irvine, individually and on behalf of all others v. Facebook, Inc., Cambridge Analytica, Cambridge Analytica (UK), Cambridge Analytica LLC, Robert Mercer, and Aleksandr Kogan;*
Case No. 2:18-CV-04451

Clerk of Court
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

*Jackie Williams, on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica, LLC*, Case No. 2:18-CV-00535-RDP

**Counsel / Parties**

Michael W. Sobol
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Fax: 415.956.1008
Email: msobol@lchb.com
*Counsel to Plaintiff Theresa Beiner and Brandon Haubert*

Joseph Scott Davidson
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: 630.581.5456
Fax: 630-575.8188
Email: jvlahakis@sulaimanlaw.com
*Counsel to Plaintiff Victor James Comforte, II and Brendan Michael Carr*

Todd David Carpenter
Carlson Lynch Sweet Kilpela &
Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619.762.1900
Fax: 619.756.6991
Email: tcarpenter@carlsonlynch.com
*Counsel to Plaintiff Ashley Gennock and Randy Nunez*

Jason Scott Hartley
Stueve Siegel Hanson, LLP
550 West C Street
Suite 1750
San Diego, CA 92101
Telephone: 619.400.5822
Fax: 619.400.5832
Email: hartley@stuevesiegel.com
*Counsel to Plaintiff Howard O'Kelly*

Christopher Springer
Keller Rohrback, L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: 805.456.1496
Fax: 805.456.1497
Email: cspringer@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

Lynn Lincoln Sarko
Gretchen Freeman Cappio
Cari Campen Laufenberg
Keller Rohrback, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206.623.1900
Fax: 206.623.3384
Email: lsarko@kellerrohrback.com
Email: gcappio@kellerrohrback.com
Email: claufenberg@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

William Craft Hughes
Hughes Ellzey, LLP
Galleria Tower I
2700 Post Oak Blvd, Suite 1120
Houston, TX 77056
Telephone: 888.350.3931
Fax: 888.995.3335
Email: craft@hughesellzey.com
*Counsel to Plaintiff Matthew Lodowski*

James E. Cecchi
Carella Byrne Cecchi Olstein Brody &
Agnello, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973.994.1700
Fax: 973.994.1744
Email: jcecchi@carellabyrne.com
*Counsel to Plaintiffs Jay Malskoff and
Kenneth Irvine*

John A. Yanchunis
Morgan and Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: 813.223.5505
Fax: 813.223.5402
Email: jyanchunis@ForThePeople.com
*Counsel to Plaintiff Lauren Price*

Steven William Teppler
Abbott Law Group, P.A.
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111
Fax: 904.292.1220
Email: steppler@abbottlawpa.com
*Counsel to Plaintiff Lauren Price*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law
Corporation
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel to Plaintiff Lauren Price*

Nicholas A. Carlin
Phillips Erlewine Given & Carlin LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA 94129
Telephone: 415.398.0900
Fax: 415.398.0911
Email: nac@phillaw.com
*Counsel to Plaintiff Jonathan D. Rubin*

Helen I. Zeldes
Amy C. Johnsgard
Andrew J. Kubik
Ben Travis
Coast Law Group LLP
1140 S. Coast Highway 101
Encinitas, California 92024
Telephone: 760.942.8505
Fax: 760.942.8515
Email: helen@coastlaw.com
Email: amy@coastlaw.com
Email: andy@coastlaw.com
Email: ben@coastlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, D.C. 20016
Telephone: 202.789.3960
Fax: 202.789.1813
Email: charlesl@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Michael J. Flannery
Cuneo Gilbert & LaDuca LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 314.226.1015
Fax: 202.789.1813
Email: mflannery@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Paul L. Hoffman
Aidan C. McGlaze
Schonbrun Seplow Harris & Hoffman LLP
11543 W. Olympic Blvd
Los Angeles, CA 90064
Telephone: 310.396.0731
Fax: 310.399.7040
Email: phoffman@sshhlaw.com
Email: amcglaze@sshhlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

Timothy G. Blood
Thomas J. O'Reardon II
Blood Hurst & O'Reardon, LLP
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619.339.1100
Fax: 619.338.1101
Email: tblood@bholaw.com
Email: toreardon@bholaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

SCL Group
1-6 Yarmouth Place
Mayfair
London, W1S 4EL

Global Science Research Ltd.
6th Floor 49 Peter Street,
Manchester, England, M2 3NG

Cambridge Analytica LLC
597 5th Avenue, 7th Floor
New York, NY 10017

Cambridge Analytica (UK) Ltd.
55 New Oxford Street
London WC1A 1BS

Aleksandr Kogan
University of Cambridge, Dept. of
Psychology
Downing Street
Cambridge, UK CB2 3EB

Stephen K. Bannon
210 A Street, N.E.
Washington, DC 20002
*Last Known Address*

Luke Montgomery
Brad Ponder
Montgomery Ponder, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Telephone: 205.201.0303
Fax: 205.208.9443
Email: luke@montgomeryponder.com
Email: brad@montgomeryponder.com
*Counsel for Jackie Williams*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law Corp.
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel for Debra Kooser and*
*Margaret Frankiewicz*

Robert Leroy Mercer
149 Harbor Rd.
Saint James, NY 11780

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
*Agent of Service of Process for Cambridge*
*Analytica, LLC*

Stephen K. Bannon
82 Heritage Hill Rd
New Canaan, CT 06840
*Last Known Address*

Orin Snyder
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166
*Counsel for Mark Zuckerberg*

Dated: April 5, 2018                          Respectfully submitted,

                                              GIBSON, DUNN & CRUTCHER LLP

                                              By: /s/ *Orin Snyder*
                                              Orin Snyder
                                              200 Park Avenue
                                              New York, N.Y. 10166
                                              Tel: 212.351.2400
                                              Fax: 212.351.6335
                                              osnyder@gibsondunn.com

                                              Joshua S. Lipshutz
                                              1050 Connecticut Avenue, N.W.
                                              Washington, D.C. 20036
                                              Tel: 202.955.8217
                                              Fax: 202.530.9614
                                              jlipshutz@gibsondunn.com

                                              Kristin A. Linsley
                                              Brian M. Lutz
                                              555 Mission Street
                                              Suite 300
                                              San Francisco, CA 94105
                                              Tel: 415.393.8379
                                              Fax: 415.374.8474
                                              klinsley@gibsondunn.com
                                              blutz@gibsondunn.com

                                              *Attorneys for Facebook, Inc.*

# EXHIBIT A

# U.S. District Court
# California Northern District (Oakland)
# CIVIL DOCKET FOR CASE #: 4:18-cv-01984-YGR

Haslinger v. Facebook, Inc. et al
Assigned to: Judge Yvonne Gonzalez Rogers
Cause: 28:1332 Diversity-Fraud

Date Filed: 03/30/2018
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

## Plaintiff

**Suzie Haslinger**
*individually and on behalf of all others
similarly situated*

represented by **Christopher Londergan Springer**
Keller Rohrback L.L.P.
801 Garden Street
Santa Barbara, CA 93101
805-456-1496
Email: cspringer@kellerrohrback.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cari Campen Laufenberg**
Keller, Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
206-623-1900
Fax: 206-623-3384
Email: claufenberg@kellerrohrback.com
*ATTORNEY TO BE NOTICED*

**Gretchen Freeman**
Keller Rohrback LLP
1201 Third Avenue
Suite 3200
Seattle, WA 98101
206-623-1900
Fax: 206-623-3384
*ATTORNEY TO BE NOTICED*

**Lynn Lincoln Sarko**
Keller Rohrback L.L.P.
1201 Third Avenue
Suite 3200
Seattle, WA 98101-3052
206-623-1900
Email: lsarko@kellerrohrback.com
*ATTORNEY TO BE NOTICED*

V.
## Defendant

**Facebook, Inc.**

**Defendant**

**Cambridge Analytica LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2018 | 1 | COMPLAINT against Cambridge Analytica LLC, Facebook, Inc. ( Filing fee $ 400, receipt number 0971-12236596.). Filed bySuzie Haslinger. (Attachments: # 1 Civil Cover Sheet) (Springer, Christopher) (Filed on 3/30/2018) (Entered: 03/30/2018) |
| 03/30/2018 | 2 | Proposed Summons. (Springer, Christopher) (Filed on 3/30/2018) (Entered: 03/30/2018) |
| 03/30/2018 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Suzie Haslinger.. (Springer, Christopher) (Filed on 3/30/2018) (Entered: 03/30/2018) |
| 03/30/2018 | 4 | Case assigned to Judge Yvonne Gonzalez Rogers.  Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.  Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. (bwS, COURT STAFF) (Filed on 3/30/2018) (Entered: 04/02/2018) |
| 04/02/2018 | 5 | **Initial Case Management Scheduling Order with ADR Deadlines: This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras Case Management Statement due by 6/25/2018. Initial Case Management Conference set for 7/2/2018 02:00 PM in Oakland, Courtroom 1, 4th Floor. (Attachments: # 1 Notice of Eligibility for Video Recording)(cpS, COURT STAFF) (Filed on 4/2/2018) (Entered: 04/02/2018)** |
| 04/02/2018 | 6 | Summons Issued as to Cambridge Analytica LLC, Facebook, Inc.. (cpS, COURT STAFF) (Filed on 4/2/2018) (Entered: 04/02/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/05/2018 08:37:07 | | | |
| PACER Login: | gi000234:2554876:4036719 | Client Code: | 30993-00083 |
| Description: | Docket Report | Search Criteria: | 4:18-cv-01984-YGR |
| Billable Pages: | 2 | Cost: | 0.20 |

1  Christopher Springer (291180)
   KELLER ROHRBACK L.L.P.
2  801 Garden Street, Suite 301
   Santa Barbara, CA 93101
3  (805) 456-1496, Fax (805) 456-1497
4  cspringer@kellerrohrback.com

5  Lynn Lincoln Sarko, *pro hac vice forthcoming*
   Gretchen Freeman Cappio, *pro hac vice forthcoming*
6  Cari Campen Laufenberg, *pro hac vice forthcoming*
   KELLER ROHRBACK L.L.P.
7  1201 Third Avenue, Suite 3200
8  Seattle, WA 98101
   (206) 623-1900, Fax (206) 623-3384
9  lsarko@kellerrohrback.com
   claufenberg@kellerrohrback.com
10

11 *Attorneys for Plaintiff*
   *Additional Attorneys Listed on Signature Page*

12
                    UNITED STATES DISTRICT COURT
13               NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION
14

15 SUZIE HASLINGER, individually and on behalf of
   all others similarly situated,
16                                              No.
                            Plaintiff,
17                                              **CLASS ACTION COMPLAINT**
       v.
18                                              JURY TRIAL DEMANDED
   FACEBOOK, INC., CAMBRIDGE ANALYTICA
19 LLC, and DOES 1-100,                         Judge:

20                          Defendants.

21

22

23

24

25

26

27

28

# Table of Contents

I.      INTRODUCTION ............................................................................................................... 1

II.     NATURE OF THE ACTION ............................................................................................. 1

III.    JURISDICTION AND VENUE ......................................................................................... 2

IV.     PARTIES ........................................................................................................................... 2

        A.      Plaintiff ................................................................................................................. 2

        B.      Defendants ............................................................................................................ 2

V.      FACTUAL BACKGROUND ............................................................................................ 3

VI.     CLASS ACTION ALLEGATIONS ................................................................................ 11

VII.    CAUSES OF ACTION .................................................................................................... 13

        COUNT I — VIOLATION OF THE FEDERAL WIRETAP ACT, TITLE I OF THE ECPA
                (18 U.S.C. § 2510, et seq.) .................................................................................. 13

        COUNT II — VIOLATION OF THE STORED COMMUNICATIONS ACT, TITLE II OF
                THE ECPA (18 U.S.C. § 2701, et seq.) .............................................................. 16

        COUNT III — NEGLIGENCE ............................................................................................ 19

        COUNT IV — UNJUST ENRICHMENT .......................................................................... 20

        COUNT V — INVASION OF PRIVACY – INTRUSION UPON SECLUSION ..................... 21

        COUNT VI — VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Cal.
                Bus. & Prof. Code § 17200, et seq.) .................................................................. 23

VIII.   PRAYER FOR RELIEF ................................................................................................... 25

CLASS ACTION COMPLAINT

## I.   INTRODUCTION

Plaintiff, Suzie Haslinger, individually and on behalf of herself and all others similarly situated ("Class Members"), files this Class Action Complaint against Facebook, Inc. ("Facebook" or the "Company"), Cambridge Analytica LLC ("Cambridge Analytica"), and Does 1-100 ("Doe Defendants") (collectively, "Defendants"), and alleges as follows based on personal knowledge, the investigation of her counsel, and information and belief:

## II.   NATURE OF THE ACTION

1.   Facebook's 2.2 billion active users were recently shocked to learn that the social networking company had allowed Cambridge Analytica, as well as other, as yet unidentified entities, to obtain at least 50 million Facebook users' highly sensitive personal information for political marketing purposes, without their authorization. This personal information includes users' names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, and is referred to herein as "Personal Information."

2.   Whereas the Personal Information of Plaintiff and millions of other users was supposed to be protected and used only for disclosed and limited purposes, Cambridge Analytica—as well as other, as yet unidentified entities—without authorization, or exceeding any limited authorization they or their agents may have had, improperly collected this Personal Information and used it for their commercial benefit.

3.   Facebook knew or should have known that this improper collection and use of its users' data was occurring, but failed to stop it and willfully ignored and failed to investigate the activities of Cambridge Analytica and other entities.

4.   Even worse, Facebook was on notice of this misuse by at least 2015, when a whistleblower came forward. But, in further breach of its users' trust, Facebook failed to notify users until the misuse became public on account of various investigative media reports in March 2018.

5.   Plaintiff is a victim of Defendants' breach of her privacy and other harms, who brings this proposed class action lawsuit on behalf of herself and all other persons who registered for Facebook accounts and whose Personal Information was obtained from Facebook by Cambridge Analytica or other entities without their authorization or in excess of their authorization.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA") and 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5 million, exclusive of interests and costs, there are more than 100 members of the class, and at least one class member is a citizen of a state different from one or more Defendants.

7. Venue is proper under 28 U.S.C. § 1391(c), because Facebook resides in this district, and Defendants are corporations that do business in and are subject to personal jurisdiction in this district. Venue is also appropriate in this district, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in or emanated from this district.

## IV. PARTIES

### A. Plaintiff

8. Plaintiff Suzie Haslinger is a citizen and resident of Virginia. Plaintiff has held a Facebook account for approximately ten years.

### B. Defendants

9. Facebook, Inc., a publicly traded company, is incorporated in Delaware. The Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Pursuant to 28 U.S.C. § 1332, Facebook is a citizen of Delaware and California.

10. Facebook builds and operates various products designed for people who want to connect and communicate with one another through electronic devices, including mobile devices and personal computers. The Company trades on NASDAQ under the ticker symbol "FB."

11. Facebook operates a social networking website that "enables people to connect, share, discover, and communicate with each other on mobile devices and personal computers."[1]  This website allows users to share information, photographs, website links, and videos. Through this website and its other products, Facebook enables its roughly 2.2 billion monthly active users to "engage with [other] people on Facebook" in a variety of ways, "the most important of which is [the] News Feed which displays an algorithmically-ranked series of stories and advertisements individualized for each person."[2]

---

[1] Facebook, Inc., Annual Report (Form 10-K) (Feb. 1, 2018) at 5.
[2] *Id.* at 5, 34.

1    12.    On information and belief, Cambridge Analytica LLC is a Delaware limited liability

2    company that is owned and operated by SCL Group. Cambridge Analytica maintains offices in New

3    York and Washington, D.C. Cambridge Analytica "uses data to change audience behavior." Its business

4    is focused on two divisions, data-driven marketing ("CA Commercial"), and data-driven campaigns

5    ("CA Political"). CA Political's data-driven campaigns combine data mining and data analysis in such a

6    manner as to enable Cambridge Analytica to "find your voters and move them to action."

7    13.    Plaintiff does not know the true names of Defendants Does 1 through 100, inclusive, and

8    therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that

9    information and belief alleges, that each of those defendants was proximately responsible for the events

10    and happenings alleged in this complaint and for Plaintiff's injuries and damages.

11                        **V.    FACTUAL BACKGROUND**

12    14.    On March 17, 2018, both the *New York Times* and *The Guardian* reported that Cambridge

13    Analytica had obtained Facebook users' Personal Information from Facebook, without the users'

14    permission ("Data Breach").[3] The reports revealed that Cambridge Analytica used the data of 50 million

15    people obtained from Facebook for political purposes, without proper disclosures or permission. The

16    *New York Times* report stated:

17    [T]he firm harvested private information from the Facebook profiles of more than 50
18    million users without their permission, according to former Cambridge employees,
     associates and documents, making it one of the largest data leaks in the social network's
19    history. The breach allowed the company to exploit the private social media activity of a
     huge swath of the American electorate, developing techniques that underpinned its work
20    on President Trump's campaign in 2016.

21                                       \*\*\*

22    **But the full scale of the data leak involving Americans has not been previously**
     **disclosed — and Facebook, until now, has not acknowledged it.** Interviews with a
23    half-dozen former employees and contractors, and a review of the firm's emails and

24

25

26    [3] Matthew Rosenberg, Nicholas Confessore & Carole Cadwalladr, *How Trump Consultants Exploited
     the Facebook Data of Millions*, N.Y. Times (Mar. 17, 2018),
27    https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (emphasis
     added); *see also* Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 Million Facebook
28    profiles harvested for Cambridge Analytica in major data breach*, The Guardian (Mar. 17, 2018),
     https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.

                                           3                        CLASS ACTION COMPLAINT

documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.[4]

**The New York Times**   https://nyti.ms/2GB9dK4

POLITICS

# How Trump Consultants Exploited the Facebook Data of Millions
# Leer en español

By MATTHEW ROSENBERG, NICHOLAS CONFESSORE and CAROLE CADWALLADR   MARCH 17, 2018

*(After this story was published, Facebook came under harsh criticism from lawmakers in the United States and Britain. Read the latest.)*

15.     Facebook had assured its users that their "trust is important to us." The Company's Data Use Policy states: "we don't share information we receive about you with others unless we have . . . received your permission; given you notice such as by telling you about this policy; or removed your name and any other personally identifying information from it."[5]

16.     On March 16, 2018, Facebook announced that it was suspending Cambridge Analytica and SCL Group from Facebook.[6] The Company stated that, in 2015, it learned it had been lied to by Dr. Aleksandr Kogan, a psychology professor at the University of Cambridge, and that Dr. Kogan had violated Facebook's "Platform Policies by passing data from an app that was using Facebook Login to SCL/Cambridge Analytica[.]"[7]

17.     In 2013, Dr. Kogan reportedly requested and gained access to the personal information of approximately 300,000 Facebook users, after they downloaded the personality quiz application ("app")

---

[4] Rosenberg, Confessore & Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*.

[5] Data Use Policy (Nov. 15, 2013), https://www.facebook.com/full_data_use_policy (on information and belief, the Data Use Policy was available on this website until Mar. 22, 2018).

[6] Paul Grewal, *Suspending Cambridge Analytica and SCL Group from Facebook*, Facebook Newsroom (Mar. 16, 2018), https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/.

[7] *Id.*

4                                                              CLASS ACTION COMPLAINT

he designed, "MyDigitalLife" (also known as "thisisyourdigitallife") (collectively, "MyDigitalLife").[8] Facebook users were led to believe that psychologists would use the information collected from the app and would help them have a better understanding of their own personalities.

18.     However, in addition to the personal data of the approximately 300,000 Facebook users that downloaded MyDigitalLife, Cambridge Analytica was able to gain access to the personal data of all of these users' Facebook "friends" as well—more than 50 million additional people who, according to Facebook, "had their privacy settings set to allow it."[9]

19.     According to the March 20, 2018 article in *Forbes*, Christopher Wylie, a former Cambridge Analytica contractor, revealed in a recent interview with *The Guardian* how the data mining process at Cambridge Analytica worked: "With their profiles, likes, even private messages, [Cambridge Analytica] could build a personality profile on each person and know how best to target them with messages."[10]

20.     Mr. Wylie also revealed that he had various documents that "showed how, between June and August 2014, the profiles of more than 50 million Facebook users had been harvested."[11] According to Mr. Wylie, Facebook users' profiles "contained enough information, including places of residence, that [Cambridge Analytica] could match users to other records and build psychographic profiles."[12]

21.     Cambridge Analytica was thus implementing a psychological propaganda campaign on millions of Facebook users, without their knowledge or consent. Of the 50 million Facebook users affected by this scheme, only approximately 300,000 of them had downloaded the MyDigitalLife app— and, even then, they had agreed to share only their own personal information for the limited purposes

[8] *See* Mark Zuckerberg ("Zuckerberg Facebook Post"), Facebook (Mar. 21, 2018 12:36 PM), https://www.facebook.com/zuck/posts/10104712037900071; *see also* Grewal, *Suspending Cambridge Analytica and SCL Group from Facebook*.
[9] Grewal, *Suspending Cambridge Analytica and SCL Group from Facebook.*
[10] Parmy Olson, *Face-to-Face With Cambridge Analytica's Elusive Alexander Nix*, Forbes (Mar. 20, 2018), https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/.
[11] Carole Cadwalladr, *'I made Steve Bannon's psychological warfare tool': meet the data war whistleblower*, The Guardian (Mar. 18, 2018), https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.
[12] Rosenberg, Confessore & Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*.

1  associated with the app.  Mr. Wylie stated: "Facebook data . . . was 'the saving grace' that let his team

2  deliver the models it had promised[.]"[13]

3      22.  On March 20, 2018, *The Guardian* reported that, according to Sandy Parakilas—a former

4  Facebook insider who worked as a platforms operations manager and whose duties between 2011 and

5  2012 included "policing data breaches by third party software developers"—"Hundreds of millions of

6  Facebook users are likely to have had their private information harvested by companies that exploited

7  the same terms as the firm that collected data and passed it on to [Cambridge Analytica]."[14]

# The Guardian

## 'Utterly horrifying': ex-Facebook insider says covert data harvesting was routine

Sandy Parakilas says numerous companies deployed these techniques – likely affecting hundreds of millions of users  and that Facebook looked the other way

17      23.  Mr. Parakilas stated that he warned senior executives at the Company that, due to its

18  lackadaisical approach to data protection, the Company was at risk for a major data breach.  He told *The*

19  *Guardian* that: "My concerns were that all of the data that left Facebook servers to developers could not

20  be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data[.]"  Mr.

21  Parakilas also asserted that Facebook "did not use enforcement mechanisms, including audits of external

22  developers, to ensure data was not being misused."[15]

23      24.  Mr. Parakilas stated that an executive at Facebook "advised him against looking too

24  deeply at how the data was being used."  According to Mr. Parakilas, "[Facebook] felt that it was better

---

[13] *Id.*

[14] Paul Lewis, *'Utterly horrifying': ex-Facebook insider says covert data harvesting was routine*, The Guardian (Mar. 20, 2018), https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas.

[15] *Id.*

CLASS ACTION COMPLAINT

1    not to know."[16]

2      25.    Nonetheless, Facebook's lackadaisical approach to data protection continued after Mr.

3    Parakila departed the Company, as evidenced by Cambridge Analytica's subsequent collection of the

4    personal data of more than 50 million Facebook users without their authorization as well as the

5    € 150,000 fine assessed by France's Commission on Informatics and Liberty ("CNIL") for "failing to

6    prevent [Facebook] users' data being accessed by advertisers."[17] Facebook's assertion that "[p]rotecting

7    people's information is at the heart of everything we do,"[18] rings hollow, particularly in light of

8    Facebook founder and CEO Mark Zuckerberg's revelations:

9

10      In 2014, to prevent abusive apps, we announced that we were changing the entire platform to dramatically limit the data apps could access. Most importantly, apps like Kogan's could no longer ask for data about a person's friends unless their friends had also

11      authorized the app. We also required developers to get approval from us before they could request any sensitive data from people. These actions would prevent any app like

12      Kogan's from being able to access so much data today.

13      In 2015, we learned from journalists at The Guardian that Kogan had shared data from his app with Cambridge Analytica. It is against our policies for developers to share data

14      without people's consent, so we immediately banned Kogan's app from our platform, and demanded that Kogan and Cambridge Analytica formally certify that they had deleted all

15      improperly acquired data. They provided these certifications.

16

17      Last week, we learned from The Guardian, The New York Times and Channel 4 that Cambridge Analytica may not have deleted the data as they had certified. We immediately banned them from using any of our services. Cambridge Analytica claims

18      they have already deleted the data and has agreed to a forensic audit by a firm we hired to confirm this. We're also working with regulators as they investigate what happened.[19]

19

20      26.    On March 20, 2018, *Bloomberg* reported that the Federal Trade Commission ("FTC") is

21    "probing whether Facebook violated terms of a 2011 consent decree of its handling of user data that was

22    transferred to [Cambridge Analytica] without users' knowledge."[20] As a result of the 2011 settlement

23

24    [16] *Id.*

25    [17] *See* Sudip Kar-Gupta & Mathieu Rosemain, *Facebook fined 150,000 euros by French data watchdog*, Reuters (May 16, 2017), https://www.reuters.com/article/us-facebook-france/facebook-fined-150000-

26    euros-by-french-data-watchdog-idUSKCN18C10C.
   [18] Grewal, *Suspending Cambridge Analytica and SCL Group from Facebook.*

27    [19] Zuckerberg Facebook Post.
   [20] David McLaughlin, Ben Brody & Billy House, *Facebook Draws Scrutiny from FTC, Congressional*

28    *Committees*, Bloomberg (Mar. 20, 2018), https://www.bloomberg.com/news/articles/2018-03-20/ftc-said-to-be-probing-facebook-for-use-of-personal-data.

with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal chargers that is deceived consumers and forced them to share more personal information than they intended."[21] Additionally, "if the FTC finds Facebook violated terms of the consent decree, it has the power to fine the company more than $40,000 a day per violation."[22]

 **FEDERAL TRADE COMMISSION**

# Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns about Facebook Privacy Practices

27.  Additionally, on March 20, 2018, various new agencies reported that the U.K. Parliament had summoned Mr. Zuckerberg to give evidence related to the Cambridge Analytica scandal. The U.K. House of Commons Digital, Culture, Media and Sport Committee stated: "Facebook previously gave evidence to the inquiry in Washington DC on [February 8]. However, Facebook has since failed to supply requested supplementary evidence to the Committee by the deadline of [March] 14th. Subsequent information about Facebook's connection to [Cambridge Analytica] raises further questions[.]"[23] The British lawmakers requested to "hear from a senior Facebook executive with the sufficient authority to give an accurate account of this catastrophic failure of process."[24]

28.  Facebook's initial responses included the Zuckerberg Facebook Post as well as a

---

[21] *Id.*

[22] On March 26, 2018, the Acting Director of the FTC, Tom Pahl, issued a formal statement regarding privacy and data security at Facebook, in which he confirmed that that the FTC "has an open non-public investigation into [Facebook's] practices." *See Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns about Facebook Privacy Practices*, FTC (Mar. 26, 2018), https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.

[23] Jill Lawless, *Facebook's Zuckerberg comes under fire from UK, US lawmakers*, Associated Press (Mar. 19, 2018), https://www.mysanantonio.com/business/technology/article/UK-lawmaker-says-Facebook-misled-Parliament-over-12762179.php.

[24] *Id.*

Case MDL No. 2843 Document 13-3 Filed 04/05/18 Page 14 of 32

1  Facebook post on March 21, 2018 by Sheryl Sandberg, Facebook's Chief Operating Officer.[25]  Ms.
2  Sandberg acknowledged that Facebook is aware that "this was a major violation of people's trust" and
3  expressed "regret that [Facebook] didn't do enough to deal with it."[26]  Ms. Sandberg also stated that the
4  Company is investigating "all apps that had access to large amounts of information before [Facebook]
5  changed [its] platform in 2014 to dramatically reduce data access."[27]

6      29.    On March 25, 2018, Facebook's CEO Mark Zuckerberg took out full-page ads in
7  multiple British and American newspapers, in which he apologized for the "breach of trust" related to
8  "leaked Facebook data of millions of people in 2014."[28]  Mr. Zuckerberg also stated that he was "sorry
9  [Facebook] didn't do more at the time," and assured Facebook users that Facebook is "now taking steps
10  to ensure this doesn't happen again."[29]

# We have a responsibility to protect your information. If we can't, we don't deserve it.

19     30.    On information and belief, Facebook maintained a Data Use Policy on its website until
20  March 22, 2018. The Data Use Policy informed Facebook users of the following:

21      Granting us permission to use your information not only allows us to provide Facebook
22      as it exists today, but it also allows us to provide you with innovative features and
        services we develop in the future that use the information we receive about you in new
23      ways.

24  —————————————
25  [25] *See* Sheryl Sandberg ("Sandberg Facebook Post"), Facebook (Mar. 21, 2018 12:40 PM),
    https://www.facebook.com/sheryl/posts/10160055807270177 (sharing Zuckerberg Facebook Post).
26  [26] *Id.*
    [27] *Id.*
27  [28] Sheena McKenzie, *Facebook's Mark Zuckerberg says sorry in full-page newspaper ads*, CNN (Mar.
    25, 2018), https://www.cnn.com/2018/03/25/europe/facebook-zuckerberg-cambridge-analytica-sorry-
28  ads-newspapers-intl/index.html.
    [29] *Id.*

> While you are allowing us to use the information we receive about you, you always own all of your information. Your trust is important to us, which is why we don't share information we receive about you with others unless we have:
>
> - received your permission;
> - given you notice, such as by telling you about it in this policy; or
> - removed your name and any other personally identifying information from it.

*See* Data Use Policy.

31. Ms. Sandberg noted that Facebook is "taking steps to reduce the data [Facebook users] give an app" when they use their Facebook account, and the Company intends to "make it easier" for users to have a better understanding of which apps they have "allowed to access [their] data."[30] Mr. Zuckerberg also informed Facebook users that the Company is "also investigating every single app that had access to large amounts of data before [Facebook] fixed this," because "[w]e expect there are others."[31]

32. Despite its knowledge that Class Members' Personal Information had been collected and used without their authorization, and that such misuse of Class Members' data presented substantial risk of further misuse, fraud, and other identity theft to Class Members, Facebook failed to provide notification to Class Members of the misuse of their Personal Information without and/or in excess of authorization, until March 2018—approximately three years after it was informed of the Data Breach.

33. Facebook's failure to notify Plaintiff and Class Members of the Data Breach was in violation of its data breach notification obligations under state laws including, *inter alia*, the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq.

34. In the intervening years between 2015, when *The Guardian* notified Facebook of the Data Breach, and when Facebook admitted to Plaintiff and Class Members that this had occurred—only after subsequent reporting by *The New York Times* and *The Guardian*—Facebook failed to provide Plaintiff and Class Members with information that their sensitive information had been used without and/or in excess of their authorization and denied them the opportunity to take steps to protect themselves and mitigate their heightened risk of identity theft and other harms.

---

[30] *See* Sandberg Facebook Post.

[31] McKenzie, *Facebook's Mark Zuckerberg says sorry in full-page newspaper ads*.

35.     As such, Plaintiff and Class Members were blindsided when they learned that their

Personal Information had been accessed without and/or in excess of their authorization, and was

allegedly used by Cambridge Analytica to create targeted advertising on behalf of President Trump's

2016 campaign.

## VI.     CLASS ACTION ALLEGATIONS

36.     Pursuant to Rule 23(b)(2), 23 (b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure,

Plaintiff brings her claims on behalf of a proposed nationwide class, defined as follows:

> All natural persons in the United States who registered for Facebook accounts and
> whose Personal Information was obtained from Facebook by Cambridge
> Analytica or other entities without authorization or in excess of authorization.

37.     Excluded from the Class are Defendants and their parents, subsidiaries, affiliate, officers

and directors, current or former employees, and any entity in which Facebook has a controlling interest,

as well as the Court and its personnel presiding over this action.

38.     Numerosity. The proposed Class is sufficiently numerous, as there are, upon information

and belief, at least 50 million Class Members, and they are dispersed throughout the United States,

making joinder of all members impracticable. Class Members can be readily identified and ascertained

through the records maintained by Defendants.

39.     Commonality. Common questions of fact and law exist for each cause of action and

predominate over questions affecting only individual class members, including:

(a) Whether Facebook represented that it would safeguard the privacy of Plaintiff's and

Class Members' Personal Information and not disclose it without consent;

(b) Whether Cambridge Analytica improperly obtained Plaintiff's and Class Members'

Personal Information without authorization or in excess of authorization;

(c) Whether Facebook was aware of Cambridge Analytica's improper collection of

Plaintiff's and Class Members' Personal Information;

(d) Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due

care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

11                                    CLASS ACTION COMPLAINT

(e) Whether Defendants breached a legal duty to Plaintiff and Class Members to exercise due
    care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

(f) Whether Class Members' Personal Information was obtained by Cambridge Analytica
    and/or Doe Defendants;

(g) Whether Defendants' conduct violated the Federal Wiretap Act, 18 U.S.C. §§ 2501, et
    seq.;

(h) Whether Defendants' conduct violated the Stored Communications Act, 18 U.S.C.
    §§ 2701, et seq.;

(i) Whether Defendants' conduct was an unlawful or unfair business practice under Cal.
    Bus. & Prof. Code § 17200, et seq.;

(j) Whether Class Members are entitled to actual damages, statutory damages, and/or
    punitive damages; and

(k) Whether Class Members are entitled to injunctive relief.

40.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the proposed
Class because, among other things, Plaintiff and Class Members sustained similar injuries as a result of
Defendants' substantially uniform wrongful conduct. Plaintiff is advancing the same claims and legal
theories on behalf of herself and all other Class Members, and there are no defenses that are unique to
Plaintiff. Likewise, Plaintiff's legal claims all arise from the same operative facts and are based on the
same legal theories.

41.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the proposed
Class. Plaintiff's interests do not conflict with Class Members' interests, and she has retained counsel
experienced in complex class action and complex class action and privacy litigation to prosecute this
case on behalf of the Class.

42.     **Rule 23(b)(3).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies
the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact
predominate over any questions affecting only individual Class Members, and a class action is superior

12                                    CLASS ACTION COMPLAINT

to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

43.    **Rule 23(b)(2).**  Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

44.    **Rule 23(c)(4).**  This action also satisfies the requirements for maintaining a class action under Rule 23(c)(4).  The claims of Class Members involve particular issues that are common to all Class Members and capable of class wide resolution that will significantly advance the litigation.

## VII.    CAUSES OF ACTION

### COUNT I — VIOLATION OF THE FEDERAL WIRETAP ACT, TITLE I OF THE ECPA (18 U.S.C. § 2510, et seq.) (Against All Defendants)

45.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

46.    Plaintiff, individually, and on behalf of Class Members, asserts violations of 18 U.S.C. §§ 2511(1)(a), (1)(b), and (1)(d).

47.    The Federal Wiretap Act, Title I of the Electronic Communications Privacy Act (the "Wiretap Act" or the "Act") prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

48.    Section 2511(a) of the Wiretap Act provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . ."

49.    Section 2511(1)(b) of the Wiretap Act provides a private right of action against any

13                                                    CLASS ACTION COMPLAINT

person who:

. . . intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States; . . . .

50.     Section 2511(1)(d) of the Wiretap Act provides a private right of action against any person who:

. . . intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the subsection . . . .

51.     Section 2502(a) of the Wiretap Act authorizes that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

52.     Section 2502(b) of the Wiretap Act provides that appropriate relief for violations under this section includes:

    (1)     such preliminary and other equitable or declaratory relief as may be appropriate;

    (2)     damages under subsection (c) and punitive damages in appropriate cases; and

    (3)     a reasonable attorneys' fee and other litigation costs reasonably incurred.

14                                        CLASS ACTION COMPLAINT

53. Section 2502(c)(2) of the Wiretap Act provides that a court may assess damages for any violation under the section as follows:

    (A)   the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

    (B)   statutory damages of whichever is greater of $100 a day for each day of violation or $10,000.

54. Plaintiff's use of Facebook to convey and store Personal Information, and the transmission of that Personal Information to and from Plaintiff's Facebook account, is considered "electronic communications" within the meaning of the Act. 18 U.S.C. § 2510(12).

55. Facebook, Cambridge Analytica, and Doe Defendants are each considered a "person" within the meaning of the Act. 18 U.S.C. § 2510(6).

56. Defendants used one or more devices comprising an "electronic, mechanical or other device or apparatus" within the meaning of the Act, 18 U.S.C. § 2510(5), to unlawfully acquire the contents of Plaintiff's Personal Information stored in and transmitted to and from Plaintiff's Facebook account.

57. Facebook knowingly and purposefully "intercepted" or "endeavored to intercept" Plaintiff's electronic communications in transit to and from Plaintiff's Facebook account and provided those communications to Cambridge Analytica and Doe Defendants without obtaining actual consent from any authorized party within the meaning of the Act. 18 U.S.C. § 2510(4). Likewise, Facebook intentionally used, or endeavored to use, the contents of Plaintiff's communications, knowing or having reason to know that the information was obtained through the interception of electronic communications.

58. Cambridge Analytica and Doe Defendants knowingly and purposefully "intercepted" or "endeavored to intercept" Plaintiff's Personal Information in transit to and from Plaintiff's Facebook account without obtaining actual consent from any authorized party within the meaning of the Act. *See* 18 U.S.C. § 2510(4). Likewise, Cambridge Analytica and Doe Defendants intentionally used, or endeavored to use, the contents of Plaintiff's communications, knowing or having reason to know that the information was obtained through the interception of electronic communications.

59.    On information and belief, Facebook unlawfully intercepted, or endeavored to intercept, the content of these communications for the purpose of generating profit from Cambridge Analytica and Doe Defendants. This conduct was not performed by any employees within the ordinary course of Facebook's business and is not an instrumental part of Facebook's operation or incidental to the operation of Facebook or the provision of Facebook's electronic communication services, nor is it for the protection of Facebook's rights or property.

60.    On information and belief, Cambridge Analytica and Doe Defendants unlawfully intercepted, or endeavored to intercept, the content of these communications for the purpose of generating profit. This conduct was not performed by any employees of Cambridge Analytica or Doe Defendants engaged in any activity necessary for the rendition of their respective electronic communication services nor for the protection of their respective rights or property nor the rights or property of Facebook.

61.    As a result of Defendants' violations of the Act, Plaintiff and Class Members have suffered injury, which includes, but is not limited to, knowing and reckless impermissible interception and misuse of their electronic communications made to and from their Facebook accounts by Defendants in violation of the Act. Pursuant to the Act, Plaintiff and Class Members are entitled to statutory damages, actual damages, punitive damages, reasonable attorney's fees and litigation costs, as well as declaratory and injunctive relief.

## COUNT II — VIOLATION OF THE STORED COMMUNICATIONS ACT, TITLE II OF THE ECPA (18 U.S.C. § 2701, et seq.)
### (Against All Defendants)

62.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

63.    Plaintiff, individually, and on behalf of Class Members, asserts violations of 18 U.S.C. § 2702.

64.    The Stored Communications Act ("SCA") prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage." 18 U.S.C. §§ 2701(a) and 2702(a).

65.    Section 2701(a)(1) of the SCA authorizes a private right of action against any person who

16                                      CLASS ACTION COMPLAINT

1 "intentionally accesses without authorization a facility through which an electronic communication

2 service is provided . . . and thereby obtains . . . access to wire or electronic communication while it is in

3 electronic storage in such system . . . ."

4     66.    Section 2701(a)(2) of the SCA authorizes a private right of action against any person who

5 "intentionally exceeds an authorization to access [a facility through which an electronic communication

6 service is provided] . . . and thereby obtains . . . access to wire or electronic communication while it is in

7 electronic storage in such system . . . ."

8     67.    Section 2702(a) of the SCA provides:

9         (1) a person or entity providing an electronic communication service to the public shall

10         not knowingly divulge to any person or entity the contents of a communication while in

11         electronic storage by that service; and

12         (2) a person or entity providing remote computing service to the public shall not

13         knowingly divulge to any person or entity the contents of any communication which is

14         carried or maintained on that service;

15             (A) on behalf of, and received by means of electronic transmission from (or

16             created by means of computer processing of communications received by means

17             of electronic transmission from), a subscriber or customer of such service;

18             (B) solely for the purpose of providing storage or computer processing services to

19             such subscriber or customer, if the provider is not authorized to access the

20             contents of any such communications for purposes of providing any services other

21             than storage or computer processing; . . . .

22     68.    Section 2707(b) of the SCA provides that Plaintiff and Class Members are entitled to:

23         (1)    such preliminary and other equitable or declaratory relief as may be appropriate;

24         (2)    damages under subsection (c); and

25         (3)    a reasonable attorneys' fee and other litigation costs reasonably incurred.

26     69.    Section 2707(c) of the SCA provides that:

27         . . . a court may assess damages suffered by the plaintiff and any profits made by
        the violators as a result of the violation, but in no case shall a person entitled to
28         recover receive less than the sum of $1,000. If the violation is willful or

intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

70. The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

71. Facebook, Cambridge Analytica, and Doe Defendants are each considered a "person" within the meaning of the SCA. 18 U.S.C. § 2510(6).

72. Facebook, Cambridge Analytica, and Doe Defendants each provide "electronic communication service" within the meaning of the SCA. 18 U.S.C. § 2510(15)

73. Plaintiff's use of Facebook to convey and store Personal Information and transmission of that Personal Information to and from Plaintiff's Facebook account is considered "electronic communications" within the meaning of the Act. 18 U.S.C. § 2510(12).

74. The servers Defendants use to provide their respective electronic communications services to Plaintiff and Class Members are a "facility" within the meaning of the SCA.

75. Defendants intentionally accessed without authorization or, alternatively, intentionally exceeded authorization to access, Plaintiff's and Class Members' stored electronic communications, which contained highly sensitive Personal Information.

76. Facebook knowingly divulged Plaintiff's and Class Members' stored electronic communications to Cambridge Analytica and Doe Defendants, which contained highly sensitive Personal Information.

77. As a result of Defendants' violations of the SCA, Plaintiff and Class Members have suffered injury, which includes, but is not limited to, Defendants' intentionally accessing Plaintiff's and Class Members' stored electronic communications without (or in excess of) authorization and by Defendant Facebook's divulging to Cambridge and Doe Defendants the contents of Plaintiff's and Class Members' stored electronic communications, which contained sensitive Personal Information.

78. Pursuant to the Act, Plaintiff and Class Members are entitled to statutory damages, actual

18                                    CLASS ACTION COMPLAINT

1    damages, reasonable attorney's fees and litigation costs, as well as declaratory and injunctive relief.

### COUNT III — NEGLIGENCE
### (Against Defendant Facebook)

4    79.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

5    80.    Facebook owed a duty to Plaintiff and Class Members to exercise reasonable care in

6    safeguarding their sensitive Personal Information, including protecting it from being compromised, lost,

7    stolen, misused, and/or disclosed to unauthorized parties without or in excess of authorization provided.

8    This duty included Facebook ensuring that no third-party apps, including the MyDigitalLife app, were

9    improperly collecting, storing, and/or obtaining Plaintiff's and Class Members' Personal Information.

10   81.    Facebook knew Plaintiff and Class Members consider their Personal Information to be

11   sensitive and valuable, and that Plaintiff and Class Members had entrusted Facebook to safeguard their

12   Personal Information.

13   82.    Facebook acknowledged in its Data Use Policy that it had a duty to adequately protect

14   Class Members' Personal Information.

15   83.    Facebook had a special relationship with Plaintiff and Class Members as a result of being

16   entrusted with their Personal Information, which provided an independent duty of care.  Plaintiff's and

17   Class Members' willingness to entrust Facebook with their Personal Information was predicated on the

18   understanding that Facebook would take appropriate measures to protect it.  Moreover, Facebook was

19   capable of protecting Plaintiff and Class Members' Personal Information.

20   84.    Facebook owed a duty to timely disclose to Plaintiff and Class Members that Facebook

21   had allowed their Personal Information to be accessed by Cambridge and Doe Defendants without Class

22   Members' authorization.  Plaintiff and Class Members had a reasonable expectation that Facebook

23   would inform them of any misuse of their Personal Information in a timely manner.

24   85.    Facebook breached its duties by, among other things: (a) failing to implement and

25   maintain adequate data security practices to safeguard and prevent impermissible disclosure of

26   Plaintiff's and Class Members' Personal Information; (b) failing to disclose that its data security

27   practices were inadequate to safeguard and prevent impermissible disclosure of Plaintiff's and Class

28   Members' Personal Information; and (c) failing to provide adequate and timely notice that Plaintiff's

1   and Class Members' Personal Information had been improperly obtained by Cambridge Analytica and
2   Doe Defendants.

3       86.    But for Facebook's breach of its duties, including its duty to use reasonable care to
4   protect and secure Plaintiff's and Class Members' Personal Information, Plaintiff's and Class Members'
5   Personal Information would not have been impermissibly disclosed to unauthorized parties, which
6   resulted in misuse of Plaintiff's and Class Members' Personal Information.

7       87.    Plaintiff and Class Members were foreseeable victims of Facebook's inadequate data
8   security practices. Facebook knew or should have known that allowing unauthorized parties to access
9   Plaintiff's and Class Members' Personal Information would cause damage to Plaintiff and Class
10  Members.

11      88.    As a result of Facebook's negligent failure to safeguard Plaintiff's and Class Members'
12  Personal Information, Plaintiff and Class Members have suffered injury, which includes but is not
13  limited to impermissible disclosure of their Personal Information, both directly and indirectly by
14  Facebook, and exposure to a heightened, imminent risk of misuse, fraud, identity theft, and financial and
15  other harm.

16      89.    The injury to Plaintiff and Class Members was a proximate, reasonably foreseeable result
17  of Facebook's breaches of its aforementioned duties.

18      90.    Therefore, Plaintiff and Class Members are entitled to damages in an amount to be
19  proven at trial.

20
21                          **COUNT IV — UNJUST ENRICHMENT**
                                  **(Against All Defendants)**

22      91.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

23      92.    Plaintiff and Class Members conferred a monetary benefit on Defendants in the form of
24  Personal Information that they provided to Facebook, through the use of which Defendants obtained
25  millions of dollars in revenue.

26      93.    For instance, Facebook collected, maintained, and stored the Personal Information of
27  Plaintiff and Class Members, and used this information to obtain millions of dollars in revenue.

28      94.    Similarly, Cambridge Analytica improperly obtained the Personal Information of Plaintiff

                                    20                    CLASS ACTION COMPLAINT

and Class Members, and used this information to obtain millions of dollars in revenue.

95.     Likewise, Doe Defendants improperly obtained the Personal Information of Plaintiff and Class Members, and used this information to obtain millions of dollars in revenue.

96.     Plaintiff and Class Members also conferred a monetary benefit on Defendant Facebook by viewing and/or clicking on advertisements provided by Facebook.

97.     Defendants had knowledge of the monetary benefits conferred by Plaintiff and Class Members.

98.     Defendant Facebook improperly stored and failed to monitor the Personal Information with which it was entrusted by Plaintiff and Class Members, and Defendants improperly obtained and misused the Personal Information of Plaintiff and Class Members for their own benefit.

99.     Defendants were therefore unjustly enriched through their improper use of Plaintiff's and Class Members' Personal Information, through which they obtained millions of dollars in revenue, in an amount to be proven at trial.

100.    Because Defendants will be unjustly enriched if they are allowed to retain the revenue that they improperly obtained through the misuse of Plaintiff's and Class Members' Personal Information, Plaintiff and Class Members are entitled to recover the amount by which Defendants were unjustly enriched at their expense.

101.    Accordingly, Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable amounts by which Defendants have been unjustly enriched at the expense of Plaintiff and Class Members, in addition to such other relief as this Court deems just and proper.

## COUNT V — INVASION OF PRIVACY – INTRUSION UPON SECLUSION
### (Against All Defendants)

102.    Plaintiff incorporates each and every allegation above as if fully set forth herein.

103.    Plaintiff and Class Members reasonably expected that their Personal Information would be protected and secured from unauthorized parties and would not be disclosed to or obtained by any unauthorized parties, or disclosed or obtained for any improper purpose.

104.    Defendant Facebook unlawfully invaded the privacy rights of Plaintiff and Class

1  Members by (a) failing to adequately secure their Personal Information from disclosure to unauthorized

2  parties for improper purposes; (b) disclosing their Personal Information to unauthorized parties in a

3  manner that is highly offensive to a reasonable person; and (c) disclosing their Personal Information to

4  unauthorized parties without the informed and clear consent of Plaintiff and Class Members.

5      105.    Defendant Cambridge Analytica and Doe Defendants unlawfully invaded the privacy

6  rights of Plaintiff and Class Members by (a) wrongfully obtaining their Personal Information for

7  improper purposes; (b) using their Personal Information for improper and unauthorized purposes, in a

8  manner that is highly offensive to a reasonable person; (c) disclosing their Personal Information to

9  unauthorized parties in a manner that is highly offensive to a reasonable person; and (d) disclosing their

10 Personal Information to unauthorized parties without the informed and clear consent of Plaintiff and

11 Class Members.

12     106.    Defendants thus intentionally intruded upon Plaintiff's and Class Members' solitude,

13 seclusion, and/or private affairs, in a manner that was malicious, oppressive, and willful.

14     107.    Defendants knew or should have known that their violations of Plaintiff's and Class

15 Members' privacy rights would be highly offensive to a reasonable person in the same position as

16 Plaintiff and Class Members.

17     108.    By their actions and omissions, Defendants acted in a manner that was calculated to

18 injure Plaintiff and Class Members, and was in conscious disregard of their privacy rights.

19     109.    Defendants thus violated Plaintiff's and Class Members' rights to privacy under the

20 common law as well as under state law, including but not limited to the California Constitution,

21 Article I, Section I.

22     110.    As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's

23 and Class Members' sensitive Personal Information has been viewed or is at imminent risk of being

24 viewed by unauthorized parties, and Plaintiff's and Class Members' reasonable expectations of privacy,

25 solitude, and seclusion have been intruded upon and frustrated. Plaintiff and Class Members have

26 suffered injury as a result of Defendants' unlawful invasions of privacy and are entitled to appropriate

27 relief, including injunctive relief and punitive damages.

28

22                                    CLASS ACTION COMPLAINT

1

2

**COUNT VI — VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(Against All Defendants)**

3

111.   Plaintiff incorporates each and every allegation above as if fully set forth herein.

4

112.   Defendants engaged in unlawful, unfair, and fraudulent business practices in violation of

5

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL").

6

113.   The conduct alleged herein is a "business practice" within the meaning of the UCL.

7

114.   Defendants' acts, omissions and conduct constitute unlawful, unfair, and fraudulent

8

business practices under the UCL.

9

115.   Defendants' acts, omissions, and conduct were unlawful, because they violated the

10

Wiretap Act and the SCA, and because they were negligent.

11

116.   Defendants' acts, omissions, and conduct alleged herein constitute a violation of the

12

unlawful prong of the UCL, because Defendants failed to comport with a reasonable standard of care

13

and public policy.

14

117.   Defendants' acts, omissions, and conduct also constitute "unfair" business acts or

15

practices, because they offend public policy and constitute immoral, unethical, and unscrupulous

16

activities that caused substantial injury, including to Plaintiff and Class Members.

17

118.   Cambridge Analytica and Doe Defendants have engaged in fraudulent business practices

18

by obtaining Plaintiff's and Class Members' Personal Information without authorization or in excess of

19

authorization they, or their agents, may have obtained.

20

119.   Facebook has engaged in fraudulent business practices by making material

21

misrepresentations and by failing to disclose material information regarding Facebook's deficient

22

security policies and practices, the security of Plaintiff's and Class Members' Personal Information, and

23

by failing to provide adequate and timely notice that Plaintiff's and Class Members' Personal

24

Information had been improperly obtained by Cambridge Analytica and Doe Defendants.

25

120.   Facebook had exclusive knowledge of material information regarding its deficient

26

security policies and practices, as well as regarding the security of Plaintiff's and Class Members'

27

Personal Information.

28

121.   Facebook also had exclusive knowledge about the misuse of Plaintiff's and Class

23                                          CLASS ACTION COMPLAINT

1  Members' Personal Information, including knowledge that Plaintiff's and Class Members' Personal
2  Information had been improperly obtained by Cambridge Analytica and Doe Defendants.

3       122.    Plaintiff and Class Members were misled by Facebook's misrepresentations and
4  omissions about Facebook's data security, and they reasonably relied upon these misrepresentations and
5  omissions to their detriment. But for Facebook's misrepresentations and omissions, Plaintiff and Class
6  Members would not have provided their Personal Information to Facebook and/or would have insisted
7  that their Personal Information be more securely protected.

8       123.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business
9  practices as alleged herein, Plaintiff and Class Members have suffered injury in fact. Plaintiff and Class
10  Members have been injured, in that their Personal Information has been misused and/or is at risk for
11  imminent future misuse, including identity theft and fraud.

12       124.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business
13  practices as alleged herein, Plaintiff and Class Members have already suffered from identity theft,
14  identity fraud, and/or a continuing increased risk of identity theft and identity fraud due to the
15  compromise and/or unauthorized use of their Personal Information. Plaintiff and Class Members have
16  also been injured by, among other things: (1) the loss of the opportunity to control how their Personal
17  Information is used; (2) the diminution in the value and/or use of their Personal Information entrusted to
18  Facebook with the understanding that Facebook would safeguard their Personal Information against
19  theft and not allow access and misuse of their Personal Information by others; (3) the compromise
20  and/or misuse of their Personal Information; (4) the continued risk to their Personal Information, which
21  remains in Facebook's possession and is subject to further misuse; and (5) costs associated with time,
22  effort, and money that Class Members have expended or will expend, to prevent, detect, contest, and
23  repair the impact of the Personal Information compromised as alleged herein.

24       125.    Because of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and
25  Class Members are entitled to relief, including attorneys' fees and costs, restitution, declaratory relief,
26  and a permanent injunction enjoining Defendants from their unlawful and unfair practices. Plaintiff also
27  seeks reasonable attorneys' fees and costs under applicable law, including Federal Rule of Civil
28  Procedure 23 and California Code of Civil Procedure § 1021.5.

1                             **VIII.  PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully

3 requests that this Court:

4          a.  Certify the Class and appoint Plaintiff as Class Representative;

5          b.  Enter Judgment against Defendants for Plaintiff's and Class Members' asserted

6              causes of action;

7          c.  Award Plaintiff and Class Members appropriate relief, including actual and statutory

8              damages, restitution, disgorgement, and punitive damages;

9          d.  Award equitable, injunctive, and declaratory relief as may be appropriate;

10          e.  Award all costs, including experts' fees and attorneys' fees, as well as the costs of

11              prosecuting this action;

12          f.  Award pre-judgment and post-judgment interest as prescribed by law; and

13          g.  Grant additional legal and equitable relief as this Court may find just and proper.

14                              **JURY TRIAL DEMANDED**

15      Plaintiff hereby demands a trial by jury on all issues so triable.

16      DATED this 30th day of March, 2018.

17                               KELLER ROHRBACK L.L.P.

18

19                              By  */s/ Christopher Springer*
                                   Christopher Springer (291180)

20                                cspringer@kellerrohrback.com
                               801 Garden Street, Suite 301

21                                Santa Barbara, CA 93101
                               (805) 456-1496, Fax (805) 456-1497

22

23                                Lynn Lincoln Sarko, *pro hac vice forthcoming*
                               Gretchen Freeman Cappio, *pro hac vice forthcoming*
                               Cari Campen Laufenberg, *pro hac vice forthcoming*

24                                KELLER ROHRBACK L.L.P.
                               1201 Third Avenue, Suite 3200

25                                Seattle, WA 98101

26                                (206) 623-1900, Fax (206) 623-3384
                               lsarko@kellerrohrback.com

27                                gcappio@kellerrohrback.com
                               claufenberg@kellerrohrback.com

28
                             *Attorneys for Plaintiff*

          25                              CLASS ACTION COMPLAINT

JS-CAND 44 (Rev. 06/17) **CIVIL COVER SHEET**

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| 1 | U.S. Government Plaintiff | 3 | Federal Question *(U.S. Government Not a Party)* |
| 2 | U.S. Government Defendant | 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent–Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities–Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation–Transfer | 8 Multidistrict Litigation–Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** Yes ☐ No ☐

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)* **SAN FRANCISCO/OAKLAND** **SAN JOSE** **EUREKA-MCKINLEYVILLE**

**DATE** **SIGNATURE OF ATTORNEY OF RECORD**

## Related Cases

| Case Name | Number | Judge |
|---|---|---|
| Price v. Facebook, Inc. | 18-cv-01732-VC | Vince Chhabria |
| Gennock v. Facebook, Inc. | 18-cv-01891-DMR | Donna M. Ryu |
| Williams v. Facebook, Inc. | 18-cv-01881-MEJ | Maria-Elena James |
| O'Kelly v. Facebook, Inc. | 18-cv-01915-EDL | Elizabeth D. Laporte |
| Renken v. Facebook, Inc. | 18-cv-01896-YGR | Yvonne Gonzalez Rogers |
| Beiner v. Facebook, Inc. | 18-cv-01953-JSC | Joseph C. Spero |

# EXHIBIT B

ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:18-cv-02009-EDL

Kooser et al v. Facebook, Inc. et al                    Date Filed: 04/02/2018
Assigned to: Magistrate Judge Elizabeth D. Laporte       Jury Demand: Plaintiff
Demand: $500,000,000,000                                 Nature of Suit: 360 P.I.: Other
Cause: 28:1332 Diversity-Tort/Non-Motor Vehicle          Jurisdiction: Diversity

### Plaintiff

**Debra Kooser**                          represented by **Joshua Haakon Watson**
                                          Clayeo C. Arnold, A Professional Law
                                          Corporation
                                          865 Howe Avenue
                                          Sacramento, CA 95825
                                          916 777-7777
                                          Fax: 916-924-1829
                                          Email: jwatson@justice4you.com
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

### Plaintiff

**Margaret Frankiewicz**                  represented by **Joshua Haakon Watson**
*on behalf of themselves and all others*                 (See above for address)
*similarly situated*                                     *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

### Defendant

**Facebook, Inc.**

### Defendant

**Cambridge Analytica**

### Defendant

**SCL Group, Limited**

### Defendant

**Global Science Research Ltd.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/02/2018 | 1 | CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED; against All Defendants ( Filing fee $ 400, receipt number 0971-12239989.). Filed byDebra Kooser, Margaret Frankiewicz. (Attachments: # 1 Civil Cover Sheet)(Watson, Joshua) (Filed on 4/2/2018) Modified on 4/3/2018 (aaaS, COURT STAFF). (Entered: 04/02/2018) |

4/5/2018

| 04/02/2018 | 2 | Proposed Summons. (Watson, Joshua) (Filed on 4/2/2018) (Entered: 04/02/2018) |
|---|---|---|
| 04/03/2018 | 3 | Case assigned to Magistrate Judge Elizabeth D. Laporte. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 4/17/2018. (srnS, COURT STAFF) (Filed on 4/3/2018) (Entered: 04/03/2018) |
| 04/03/2018 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines:** Case Management Statement due by 6/26/2018. Initial Case Management Conference set for 7/3/2018 10:00 AM. Signed by Magistrate Judge Elizabeth D. Laporte on 4/3/18. (aaaS, COURT STAFF) (Filed on 4/3/2018) (Entered: 04/03/2018) |
| 04/03/2018 | 5 | Summons Issued as to Cambridge Analytica, Facebook, Inc., Global Science Research Ltd., SCL Group, Limited. (aaaS, COURT STAFF) (Filed on 4/3/2018) (Entered: 04/03/2018) |
| 04/04/2018 | 6 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Margaret Frankiewicz, Debra Kooser.. (Watson, Joshua) (Filed on 4/4/2018) (Entered: 04/04/2018) |
| 04/04/2018 | 7 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. *This is a text only docket entry; there is no document associated with this notice.* (shyS, COURT STAFF) (Filed on 4/4/2018) (Entered: 04/04/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/05/2018 08:37:42 | | | |
| **PACER Login:** | gi000234:2554876:4036719 | **Client Code:** | 30993-00083 |
| **Description:** | Docket Report | **Search Criteria:** | 3:18-cv-02009-EDL |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Joshua H. Watson, California SBN 238058
Email: jwatson@justice4you.com
**CLAYEO C. ARNOLD, A**
**PROFESSIONAL LAW**
**CORPORATION**
865 Howe Avenue
Sacramento, California 95825
916-777-7777 Telephone
916-924-1829 Facsimile

Kevin S. Hannon (Pro Hac Vice to be filed)
Colo. Bar No. 16015
Email: khannon@hannonlaw.com
**THE HANNON LAW FIRM, LLC**.
1641 Downing Street
Denver, CO 80218
303-861-8800 Telephone
303-861-8855 Facsimile

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Debra Kooser and Margaret Frankiewicz on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>Facebook, Inc., Cambridge Analytica, SCL Group, Limited, and Global Science Research LTD,<br><br>                Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Debra Kooser and Margaret Frankiewicz , on behalf of themselves and all others similarly situated, allege the following against Defendants Facebook, Inc. ("Facebook"), Cambridge Analytica ("CA"), SCL Group, Limited ("SCL"), and Global Science Research ("GSR") ("Defendants"):

## SUMMARY OF THE CASE

1.     Facebook operates a social networking website through which owners of Facebook accounts can communicate with family, friends, and coworkers that they choose and can access services promoted and allowed by Facebook. Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos

1    and allows others to promote services on Facebook with restrictions that Facebook

2    determines.  Facebook users have the ability to share and restrict information based on

3    specific criteria that Facebook determines.  By the end of 2017, Facebook had more than 2.2

4    billion active users.

5         2.    Defendant Cambridge Analytica is a privately held company that combines

6    data mining and data analysis with strategic communication for use in the electoral process

7    and perhaps other uses.  Defendant SCL Group created and operated Cambridge Analytica

8    during the time it committed the acts alleged herein, and/or directly committed those acts.

9    Defendant Cambridge Analytica used software developed by Defendant Global Science

10·   Research to conduct the unauthorized mining of the personal information of Plaintiffs and the

11   Class Members.

12        3.    As part of the sign up process and while interacting through Facebook,

13   Facebook users create profiles containing significant amounts of personal information,

14   including their name, birthdate, hometown, address, location, interests, relationships, email

15   address, photos, and videos, among other personal data, referred to herein as "Personal

16   Information."

17        4.    Facebook's Terms of Service state properly that the Facebook user is the

18   owner of all of their data.

19        5.    This case involves the absolute disregard with which Defendants have chosen

20   to access, use, and manipulate Plaintiffs' and Class Members' Personal Information and

21   allow such access, use, and manipulation.  Facebook allowed CA to use the Facebook

22   platform to collect Facebook users' Personal Information, which Personal Information was

23   owned by users.  While this information was represented by Facebook to be protected as

24   private, and used for only expressly disclosed and limited purposes, Defendants SCA, SCL

25   and GSR, without authorization, or by exceeding whatever limited authorization they or their

26   agents received from the Facebook user, improperly collected the Personal Information of

27   Plaintiffs and Class Members, nearly 50 million Facebook users, again for their own

28

1

financial benefit.  Facebook knew this improper data aggregation was occurring and failed to stop it, and/or negligently and recklessly chose not to monitor the use of its platform to mine users' Personal Information.  Plaintiffs brings this suit to protect their privacy interests and those of the Class Members.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper under 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Facebook to permit the information aggregation and collection of the information by Defendants CA, SCL and GSR.

## PARTIES

### A.     Plaintiffs and Class Representatives

8.     Plaintiff Margaret Frankiewicz is a citizen and resident of Twin Falls, Idaho. Plaintiff Frankiewicz has owned a Facebook account for approximately ten years.

9.     Plaintiff Debra Kooser is a citizen and resident of Arvada, Colorado.  Plaintiff Kooser has owned a Facebook account for approximately seven years.

### B.     Defendants

10.    Facebook, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

11.  Cambridge Analytica ("CA") is a privately held Delaware Corporation that combines data mining and data analysis with strategic communication for the electoral process.  CA was created in 2013 by its British parent company SCL Group, Limited and incorporated in Delaware on December 31, 2013.  Rebekah Mercer sits on CA's Board of Directors.[1]  CA co-founder Christopher Wylie stated the company's mission as: "… to fight a culture war in America."[2]  In 2016, CA worked for the Donald Trump presidential campaign among other campaigns.[3]  An interview with CA's CEO (Alexander Nix) confirms that the Trump campaign paid for CA's services.[4]

12.  Defendant SCL (Strategic Communications Laboratories) Group, Limited ("SCL") is a private behavioral research company organized, located and operated in the United Kingdom that created, owns and operates Defendant Cambridge Analytica for profit.  On information and belief, SCL has done significant business in California.

13.  Defendant Global Science Research LTD ("GSR") is a company organized, located and operated in the United Kingdom which mined and sold private information of Facebook users for profit, including to Defendants SCL and CA.

**FACTUAL BACKGROUND**

14.  On March 17, 2018, both the *New York Times* and *The Guardian* reported on CA's use of Personal Information obtained from Facebook without permission, and under the pretext of claiming to be collecting and using it for academic purposes.  The reports revealed that Cambridge Analytica, a firm brought on by presidential campaigns to target voters online, used the data of 50 million people obtained from Facebook without proper disclosures or permission.  The report further stated, in part:

[1] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.  Last accessed March 31, 2018.
[2] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.  Last accessed March 31, 2018.
[3] https://en.wikipedia.org/wiki/Cambridge_Analytica.  Last accessed March 31, 2018.
[4] https://www.forbes.com/sites/parmyolson/2018/03/20/cambridge-analytica-suspends-ceo-alexander-nix-over-facebook-scandal/#27d19db87e71  Last accessed March 31, 2018.

3

Case 3:18-cv-03394 Document 13-4 Filed 04/02/18 Page 5 of 31

> **[T]he firm harvested private information from the Facebook profiles of more than 50 million users without their permission**, according to former Cambridge employees, associates and documents, making it one of the largest data leaks in the social network's history. The breach allowed the company to exploit the private social media activity of a huge swath of the American electorate, developing techniques that underpinned its work on President Trump's campaign in 2016.
>
> ***
>
> **But the full scale of the data leak involving Americans has not been previously disclosed — and Facebook, until now, has not acknowledged it**. Interviews with a half-dozen former employees and contractors, and a review of the firm's emails and documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.

(emphases added.).

15.     Cambridge Analytica obtained Plaintiffs' and Class Members' Personal Information by posting a survey app on Facebook called "thisisyourdigitallife" in 2014. Represented on Facebook as a "research app used by psychologists" designed by a Cambridge academic, CA represented that the app would help users better understand their own personalities.

16.     Upon information and belief, Cambridge Analytica's parent, SCL, was first introduced to the concept of using social media data to model human personality traits in early 2014 by an Aleksandr Kogan, a lecturer at Cambridge University's renowned psychology department.

17.     Upon information and belief, Defendant SCL, with the knowledge and approval of CA, entered into a written agreement with GSR providing that GSR would mine and process Facebook data so that SCL and its entity CA could analyze it for use in targeting Facebook users in the Presidential and other political races in the United States, and do so for their own profit. Upon information and belief, GSR was paid for these services by SCL and/or CA, who were in turn paid through electronic or wire transfers by political campaigns in the United States.

18. In June 2014, Dr. Kogan built his own app and began harvesting data for Cambridge Analytica. Defendants CA and/or SCL covered the costs — more than $800,000 — and allowed him to keep a copy for his own research, according to company emails and financial records. Kogan's work on behalf of SCL and CA involved collecting data from survey participants' networks of Facebook friends, individuals who had not themselves consented to give their data to Global Science Research and were not aware that they were the objects of Kogan's political research.[5]

19. The data was collected through an app called "thisisyourdigitallife," built by Kogan, separately from his work at Cambridge University. Through Kogan's U.K. company Global Science Research (GSR), in collaboration with Cambridge Analytica, hundreds of thousands of users were paid to take the "thisisyourdigitallife" personality test and agreed to have their data collected for academic use. GSR eventually gave Cambridge Analytica a list of millions of people in the U.S., with their names, locations, genders, ages and predicted test scores.

20. Upon information and belief, contracts won by Cambridge Analytica were serviced by London-based SCL and overseen by Mr. Nix, a British citizen who held dual appointments at Cambridge Analytica and SCL.

21. Upon information and belief Defendants SCL and/or CA wrote the terms of service for the thisisyourdigitallife app.

22. Relying on CA's representations, approximately 270,000 people downloaded the thisisyourdigitallife app, giving Cambridge Analytica access to their data and that of all their Facebook friends, likely more than 50 million other people, without obtaining permission to access the full extent of the data accessed.[6]

---

[5] See https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data. Last accessed March 31, 2018.
[6] See https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/#674008da535f. Last accessed March 31, 2018.

5

23.     A former contractor with Cambridge Analytica, Christopher Wylie, revealed how the data mining worked: "With their profiles, likes, even private messages, [Cambridge Analytica] could build a personality profile on each person and know how best to target them with messages."[7]

24.     Mr. Wylie stated that he had receipts, invoices, emails, legal letters and records that "showed how, between June and August 2014, the profiles of more than 50 million Facebook users had been harvested."[8]  These profiles "contained enough information, including places of residence, that [CA] could match users to other records and build psychographic profiles."[9]

25.     Cambridge Analytica used the data collected from Plaintiffs' and Class Members' Facebook accounts to build a massive targeted marketing database based on each user's individual likes and interests.  Its misrepresented research provided a treasure trove of Facebook "likes", allowing it to match individuals' traits with existing voter datasets, such as who owned a gun.  These profiles "contained enough information, including places of residence, that Cambridge Analytica could match users to other records and build psychographic profiles."[8]

26.     In effect, CA was mounting a campaign of psychological warfare on millions of hapless victims, without their knowledge or consent.  Indeed, of the 50 million Facebook users victimized by this scheme, "only about 270,000 users – those who had participated in the [thisisyourdigitallife] survey"[10] – had even given limited consent to allowing their data to be used, and then only for research purposes, and without any authorization to having their data used to promote CA's political targeting business, let alone access the data of their

---

[7] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump. Last accessed March 31, 2018.
[8] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump. Last accessed March 31, 2018
[9] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html. Last accessed March 31, 2018.
[10] *Id.*

Class Action Complaint

1   Facebook friends.  Mr. Wylie stated that "… the Facebook data … was 'the saving grace'

2   that let his team deliver the models it had promised."[11]

3       27.     Using this personality profiling methodology, the company offered its

4   profiling system to dozens of political campaigns so that potential voters could be

5   targeted with precision.  For example, Ted Cruz's presidential campaign paid at least

6   $750,000 to Cambridge Analytica for its behavioral micro-targeting research.  The company

7   has also received millions of dollars from political Super PACS.[9]

8       28.     Facebook has joint responsibility for the theft of the data of the Class

9   Members.

10      29.     Sandy Parakilas, a "former Facebook platforms operations manager for

11  policing data breaches by third party software developers between 2011 and 2012," stated

12  that as many as hundreds of millions of Facebook users are likely to have had their private

13  information harvested by companies that exploited the same terms as the firm that collected

14  data and passed it on to Cambridge Analytica.[12]

15      30.     Parakilas stated that he warned senior executives at the company that its lax

16  approach to data protection risked a major breach: "[Parakila's] concerns were that all of the

17  data that left Facebook servers to developers could not be monitored by Facebook, so

18  [Facebook] had no idea what developers were doing with the data" and that the company did

19  not use enforcement mechanisms, including audits of external developers, to ensure data was

20  not being misused.[13]

21      31.     Facebook's "trust model" was rife with security vulnerabilities and a near

22  total abnegation of its responsibility to audit its own rules limiting use of Facebook data

23  owned by Facebook users by third parties.  Or, in Parakilas' own words, "[Facebook] felt that

24  it was better not to know."[14]

25  ───────────────
    [11] *Id.*

26  [12] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-
    sandy-parakilas.  Last accessed March 31, 2018.

27  [13] *Id.*
    [14] *Id.*

28                                      7

32.     Facebook's representation to Plaintiffs and Class Members that "Protecting people's information is at the heart of everything we do"[15] was in fact a misrepresentation, one which Plaintiffs and Class Members relied upon.  In fact, Facebook had known about this security breach for two years, but did little or nothing to protect its users.[16]

33.     Facebook represents to its users that: "you have control over who sees what you share on Facebook."[17]  Facebook represents to its users that: "We have top-rate security measures in place to help protect you and your data when you use Facebook."[18]  Facebook represents to its users that: "Your activity (ex: posting a status or sending a message) is encrypted, which means it's turned into code so people can't access it without your permission."[19]  Facebook represents to its users that: "When it comes to your personal information, we don't share it without your permission (unless required by law)."[20]  Facebook represents to its users that: "Facebook gives people control over what they share, who they share it with, the content they see and experience, and who can contact them."[21]

34.     At all relevant times, Facebook has maintained a Data Use Policy on its website.  At all relevant times, the Data Use Policy advised Facebook users, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. *Your trust is important to us, which is why we don't share information we receive about you with others unless*

---

[15] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html. Last accessed March 31, 2018.

[16] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html; https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas. Last accessed March 31, 2018.

[17] https://www.facebook.com/about/basics. Last accessed March 31, 2018.

[18] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected. Last accessed March 31, 2018.

[19] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected#2. Last accessed March 31, 2018.

[20] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected#4. Last accessed March 31, 2018.

[21] https://www.facebook.com/safety. Last accessed March 31, 2018.

8

*we have:*
- *received your permission*
- *given you notice,* such as by telling you about it in this policy; or
- removed your name and any other personally identifying information from it.

(emphases added).[22]

35.     Facebook users, including Plaintiffs and the Class Members reasonably relied on Facebook's representations for the security of their Personal Information in using Facebook and posting Personal Information on Facebook.

36.     Facebook's allowing Cambridge Analytica to access and misuse Facebook Users' Personal Information has violated the privacy of millions of people in every state. The data owned by Plaintiffs and the Class Members has been stolen by CA, SCL and GSR with the agreement of Facebook for Defendants' financial benefit. Plaintiffs and Class Members suffered annoyance and interference in their use of their Facebook accounts by the manipulation of the information presented to them on their pages by CA, SCL and GSR with agreement of Facebook. Plaintiffs and Class Members suffered annoyance and interference in their use of their Facebook accounts by the use of their Facebook Friends' personal information for the benefit of Defendants, and in their loss of privacy. The privacy and personal, sensitive information of Plaintiffs and the Class Members is now at high risk for identity theft and compromise, and will continue to be at risk as a direct result of the acts of Defendants.

37.     Upon information and belief, the stolen Personal Information is likely to remain in the possession of Defendants CA, SCL, or GSR and has been released to others.[23] The Cambridge Analytica dataset suggests copies of the Facebook-derived data still exists.[24] The data is also believed to have been passed around using generic, non-corporate email systems, outside of the servers of Cambridge Analytica, and linked company SCL.[25]

---

[22] https://www.facebook.com/full_data_use_policy.  Last accessed March 31, 2018.
[23] https://www.channel4.com/news/revealed-cambridge-analytica-data-on-thousands-of-facebook-users-still-not-deleted.  Last accessed on April 2, 2018.
[24] *Id.*
[25] https://www.channel4.com/news/revealed-cambridge-analytica-data-on-thousands-of-facebook-users-still-not-deleted.  Last accessed April 2, 2018.

9

38.     Plaintiff Debra Kooser owned and was a user of her Facebook account during the 2014 midterm and 2016 presidential campaign season.  During these campaign seasons, Plaintiff Kooser began experienced political posts and advertisements Plaintiff had not experienced previously.  On or about March 24, 2018, Plaintiff Kooser was visited at her home by a news reporter from London TV station Channel 4 News.  Channel 4 News presented Plaintiff Kooser with the dossier on her developed by Cambridge Analytica represented to be from 2014.[26]  The dossier contained multiple points of information about her that were accurate.  Separately, the dossier had content concerning political views, a personality profile, and personality characteristics.[27]  Plaintiff did not consent to the access of her Personal Information by Defendants CA, SCL and GSR, and did not consent to Defendant Facebook to allow such access.  Plaintiff suffered annoyance and interference by the manipulation of her Facebook account by Defendants, is concerned about the privacy of her Facebook data, of which she is the owner, and has suffered injuries, damages, and losses by the unauthorized taking of her private data.

39.     Plaintiff Margaret Frankiewicz owned and was a user of her Facebook account during the 2016 presidential campaign season.  During the campaign season, Plaintiff Frankiewicz began experiencing an influx of political posts and advertisements Plaintiff had not experienced previously.  This interference included negative messaging about the candidate for whom by party affiliation Plaintiff would be likely to vote, even though her party affiliation was hidden from public view.  Plaintiff then selected the privacy setting not to see ads or posts like the disruptive ads and posts in the future.  Even with that setting, Plaintiff was inundated with similar ads and posts.  As a result, Plaintiff was dissuaded from voting in the 2016 presidential election.  Plaintiff did not consent to the access of her Personal Information by Defendants CA, SCL and GSR, and did not consent to Defendant Facebook to allow such access.  Plaintiff suffered annoyance and interference by

---

[26] *Id.*

[27] http://theaviationweek.net/2018/03/31/british-lawmakers-publish-evidence-from-cambridge-analytica.html.  Last accessed April 2, 2018

10

the manipulation of her Facebook account by Defendants, is concerned about the privacy of her Facebook data, of which she is the owner, and has suffered injuries, damages and losses by the unauthorized taking of her private data.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who own Facebook accounts in the United States and whose
> Personal Information was obtained by Defendants CA, SCL and/or GSR.

(referred herein as "Class Members.")

41.     Excluded from the Class are Defendants and any entities in which any Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees.  Also excluded from the Class are the judge assigned to this action, and any member of the judge's immediate family.

42.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  Plaintiffs reasonably believe that Class members number fifty (50) million people or more in the aggregate.  The names and addresses of Class Members are identifiable through documents maintained by Defendants.

43.     **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including, but not limited to:

> i.      Whether Facebook represented that it would safeguard Plaintiffs' and
>         Class Members' Personal Information and not disclose it without
>         consent;
>
> ii.     Whether CA, SCL and GSR improperly obtained Plaintiffs' and Class
>         members' Personal Information without authorization or in excess of any
>         authorization;

11

iii. Whether Facebook was aware of CA's, SCL's and GSR's improper collection of Plaintiffs' and Class Members' Personal Information;

iv. Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

v. Whether Defendants breached a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

vi. Whether Class Members' Personal Information was obtained by CA;

vii. Whether Defendants' conduct violated Cal. Civ. Code § 1750, *et seq.*;

viii. Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

ix. Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

x. Whether Plaintiffs and the Class Members suffered annoyance and interference in the use of their Personal Information.

xi. Whether Plaintiffs and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

xii. Whether Plaintiffs and the Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

xiii. Whether Defendants were unjustly enriched by the use of Plaintiffs' and Class Members' Personal Information.

44.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

Class Action Complaint

45. **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, Plaintiffs and the other Class Members were injured through the substantially uniform misconduct by Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class Members arise from the same operative facts and are based on the same legal theories.

46. **Adequacy of Representation:** Plaintiffs are adequate representatives of the class, because their interests do not conflict with the interests of the other Class Members they seeks to represent; they have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

47. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other members of the Class are relatively small when compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

48. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Class Action Complaint

49.     Likewise, particular issues under Rule 23(c)(4) are appropriate for
certification, because such claims present only particular, common issues, the resolution of
which would advance the disposition of this matter and the parties' interests therein.  Such
particular issues include, but are not limited to:

    a.     Whether Plaintiffs' and Class Members' Personal Information was obtained
by CA, SCL, and GSR;

    b.     Whether (and when) Facebook knew about the improper collection of
Personal Information;

    c.     Whether Defendants' conduct was an unlawful or unfair business practice
under Cal. Bus. & Prof. Code § 17200, *et seq.*;

    d.     Whether Facebook's representations that they would secure and not disclose
without consent the Personal Information of Plaintiffs and members of the
Class were facts that reasonable persons could be expected to rely upon when
deciding whether to use Facebook's services;

    e.     Whether Facebook misrepresented the safety of its many systems and
services, specifically the security thereof, and their ability to safely store
Plaintiffs' and Class Members' Personal Information;

    f.     Whether Facebook failed to comply with its own policies and applicable laws,
regulations, and industry standards relating to data security;

    g.     Whether Defendants' acts, omissions, misrepresentations, and practices were
and are likely to deceive consumers;

    h.     Whether Defendants' conduct violated Cal. Bus. & Prof. Code § 22575, *et
seq.*;

    i.     Whether Defendants failed to adhere to their posted privacy policy concerning
the care they would take to safeguard Plaintiffs' and Class Members' Personal
Information in violation of California Business and Professions Code § 22576;
and

14

j.    Whether Defendants negligently and materially failed to adhere to their posted

privacy policy with respect to the extent of their disclosure of users' data, in

violation of California Business and Professions Code § 22576.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASS MEMBERS

### First Claim for Relief
**Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice - (Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**All Defendants**

50.    Plaintiffs incorporate the substantive allegations above as if fully set forth

herein.

51.    By reason of the conduct alleged herein, Defendants engaged in unlawful

practices within the meaning of the UCL. The conduct alleged herein is a "business practice"

within the meaning of the UCL.

52.    Facebook represented that it would not disclose users' Personal Information

without consent and/or notice. It also required application developers, like CA, to obtain and

utilize users' Personal Information in specified, limited ways.

53.    Defendants failed to abide by these representations. Facebook did not prevent

improper disclosure of Plaintiffs' and the Class Members' Personal Information.

54.    CA, managed and operated by SLC, obtained Plaintiffs' and the Class

Members' Personal Information using an application created by GSR either without

authorization or in excess of any authorization it—or its agents—may have obtained.

55.    Defendants' acts, omissions, and misrepresentations as alleged herein were

unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the

Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a

result of Facebook failing to comply with its own posted policies).

56.    Plaintiffs and the Class Members suffered injury-in-fact and lost money or

property as the result of Defendants' unlawful business practices. In particular, Plaintiffs'

and Class Members' Personal Information was taken and is in the hands of those who will

15

use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

57.   As a result of Defendants' unlawful business practices, Plaintiffs and the Class Members are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Second Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*) All Defendants

58.   Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

59.   By reason of the conduct alleged herein, Defendants engaged in unfair "business practices" within the meaning of the UCL.

60.   Facebook stored the Personal Information of Plaintiffs and the Class Members in its electronic and consumer information databases.  Defendants represented to Plaintiffs and the Class Members that their Personal Information would remain private. Defendants engaged in unfair acts and business practices by representing that they would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

61.   Plaintiffs and the Class Members suffered injury-in-fact and lost money or property as the result of Defendants' unfair business practices.  In particular, Plaintiffs' and Class Members' Personal Information was taken by Defendants and is in the hands of those who have used it and will use it for their own advantage, or has been sold and is being sold for value, making it clear that the hacked information is of tangible value.

62.   As a result of Defendants' unfair business practices, violations of the UCL, Plaintiffs and the Class Members are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Third Claim for Relief

16

Case 3:18-cv-03394-VC Document 13-4 Filed 04/02/18 Page 42 of 31

**Violation of California's Unfair Competition Law ("UCL") –
Fraudulent Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*)
All Defendants**

63.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

64.     By reason of the conduct alleged herein, Defendants engaged in fraudulent business practices within the meaning of the UCL.

65.     Facebook stored the personal information of Plaintiffs and the Class Members in its electronic and consumer information databases.  Facebook falsely and knowingly represented to Plaintiffs and the Class Members that their personal information would remain private.  Facebook engaged in fraudulent business practices by representing that they would not disclose Plaintiffs' and Class Members' Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

66.     Facebook's statements that it would maintain the confidentiality of Plaintiffs' and Class Members' private information were false because Facebook knowingly and intentional provided that information to CA, SCL and GSR, which it used for its own advantage for commercial profit, without any permission or sufficient permission from Plaintiffs and Class Members.  Defendants CA, SCL and GSR knowingly and intentionally obtained and misused data obtained from Facebook in excess of any alleged authorizations granted to them, which authorization was based on its fraudulent misrepresentations, which CA, SCL and GSR used for their own advantage for commercial profit, without any permission or sufficient permission from Plaintiffs and Class Members

67.     Plaintiffs and Class Members suffered injury-in-fact and lost money or property as the proximate result of Defendants' unfair business practices.  In particular, Plaintiffs' and Class Members' Personal Information was taken and it is in the possession of those who have used and will use it for their own advantage, including financial advantage, or was and is being sold for value, making it clear that the stolen information has tangible value.

68. Plaintiffs and the Class Members justifiably relied on the representations Facebook made in its privacy policy and elsewhere that it would not "share information we receive about you with others unless we have: received your permission [and] given you notice ..."

69. As a result of Defendants' fraudulent business practices and violations of the UCL, Plaintiffs and Class Members are entitled to restitution, disgorgement of profits and injunctive relief.

## Fourth Claim for Relief
### Negligence – Facebook

70. Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

71. Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

72. Defendant knew that the Plaintiffs' and Class Members' Personal Information was valuable personal and sensitive information.

73. By being entrusted by Plaintiffs and the Class Members to safeguard their Personal Information, Facebook had a special relationship with Plaintiffs and the Class Members. Plaintiffs and Class Members signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiffs and Class Members of any breaches or other security concerns that might call for action by Plaintiffs and Class Members. Facebook did not. Facebook failed to prevent CA's, SCL's, and GSR's improper obtaining of Plaintiffs' and the Class Members' Personal Information.

74. Defendant breached its duty by failing to adopt, implement, and maintain adequate security measures to safeguard the Plaintiffs' and the Class Members' Personal Information, or by obtaining that Personal Information without authorization. Defendant

18

1  negligently failed to verify the claims of CA, SCL, and GSR that they were using the data for

2  scientific research.  Defendant negligently failed to investigate the data mining activities of

3  CA, SCL, and GSR, and negligently failed to retrieve the Facebook data gathered by

4  Defendants CA, SCL, and GSR and negligently failed to ensure that Defendants destroyed

5  the stolen data.

6          75.     Facebook also breached their duty to timely disclose that Plaintiffs' and Class

7  Members' Personal Information had been, or was reasonably believed to have been,

8  improperly obtained.

9          76.     But for Defendant's wrongful and negligent breach of their duties owed to

10  Plaintiffs and Class Members, their Personal Information would not have been improperly

11  obtained.  Defendant's negligence was a direct and legal cause of the theft of the Personal

12  Information of Plaintiffs and the Class Members and all damages resulting therefrom.

13          77.     The injury and harm suffered by Plaintiffs and the Class Members was the

14  reasonably foreseeable result of Defendants' failure to exercise reasonable care in

15  safeguarding and protecting Plaintiffs' and the other Class Members' Personal Information.

16          78.     As a direct and proximate result of Defendant's negligence, Plaintiffs and

17  Class Members suffered injuries, damages, losses or harm, including but not limited to

18  annoyance, interference, concern, lost time, the loss of personal property, and the need for

19  the cost of effective credit and privacy security, justifying an award of compensatory and

20  punitive damages.

21                              **Fifth Claim for Relief**
22                    **Intentional Misrepresentation - Facebook**

23          79.     Plaintiffs incorporate the substantive allegations above as if fully set forth

    herein.
24
25          80.     Defendant Facebook intentionally misrepresented the use and access to the

26  data that Plaintiffs and Class Members owned on their Facebook sites.  Defendant Facebook

27

28                                       19

intentionally misrepresented that it would not disclose Plaintiffs' and the Class Members' Personal Information without authorization.

81.     Defendant Facebook intentionally misrepresented to the Plaintiffs and the Class Members the protection and privacy of their Facebook data as described in paragraphs 32 and 33 above, and in other means.  In addition, Defendant Facebook intentionally failed to disclose that information was available to data miners such as CA, SCL and GSR for profit with Plaintiffs' and the Class Members' permission.

82.     Defendant's representations were false, because Defendant Facebook knowingly and intentionally provided the Personal Information of Plaintiffs and Class Members to CA, SCL, and GSR, and did so for Facebook's financial and commercial advantage without either permission or sufficient information from Plaintiffs and Class Members.

83.     Facebook's representations were material to Plaintiffs' and Class Members' decision to post Personal Information on Facebook and the thisisyourdigitallife app.

84.     Plaintiffs and the Class Members justifiably relied on the representations Facebook made in their Privacy Policy and elsewhere on their website and acted in reliance on those representations by placing Personal Information in the thisisyourdigitallife app and on Facebook itself.

85.     Defendant Facebook new of the falsity of its representations, and its representations were made to deceive Plaintiffs and Class Members into providing Personal Information that could be used for its financial and marketing advantage.

86.     Defendant Facebook knew it did not have permission to allow CA, SCL, and GSR to disclose Personal Information because it did not attempt to obtain permission from Plaintiffs and the Class Members.

87.     Plaintiffs and the Class Members suffered injury-in-fact and lost property as a proximate result of Defendant Facebook's intentional misrepresentation.

88.     As a direct and proximate result of Defendant Facebook's intentional misrepresentation, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

<div align="center">

**Sixth Claim for Relief**
**Intentional Misrepresentation – Defendants CA, SCL and GSR**

</div>

89.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

90.     Defendants CA, SCL, and GSR intentionally misrepresented the use and access of the data that Plaintiffs and Class Members owned on their Facebook sites.

91.     Defendant CA, SCL, and GSR intentionally misrepresented that the data that Class Members provided for the thisisyourdigitallife application was to be used for academic research. Defendant CA, SCL, and GSR intentionally withheld the information that the data they collected from users would be used for their purposes for financial profit, intentionally withheld that the data mined would be used for influencing political campaigns, and intentionally withheld the information that use of the app would be a gateway to mining the data of the users' Facebook Friends.

92.     Defendants' representations were false because Defendant CA, SCL, and GSR knew that the use of the data was not for academic research, but instead its own commercial and political advantage. Defendants further knew that they did not have the consent of owners of the Personal Information, Plaintiffs and Class Members, to use Plaintiffs' and Class Members' Personal Information for commercial and political purposes. Defendants further knew that they did not have the consent of owners of the Personal Information, Plaintiffs and Class Members, to use their Friends' data for any purposes.

<div align="center">

21

Class Action Complaint

</div>

93.     The intentional and false misrepresentations of CA, SCL, and GSR were material to Plaintiffs' and Class Members' decision to post Personal Information in the thisisyourdigitallife app.

94.     Plaintiffs and the Class Members justifiably relied on the representations CA, GSR and SCL made in encouraging users to use the thisisyourdigitallife app and acted in reliance on those representations by placing Personal Information in the thisisyourdigitallife app.

95.     Defendants CA, GSR, and SCL knew of the falsity of its representations, and its representations were made to deceive Plaintiffs and the Class Members into providing Personal Information that could be used for Defendants' financial and marketing advantage.

96.     Plaintiffs and the Class Members suffered injury-in-fact and lost property as a proximate result of Defendants CA's, SCL's, and GSR's intentional misrepresentation.

97.     As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

### Seventh Claim for Relief
### Unjust Enrichment – All Defendants

98.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

99.     Defendants have received and retained moneys by using and marketing Personal Information owned by Plaintiffs and Class Members without their consent. Defendants thus profited by the taking of the property of Plaintiffs and Class Members without compensating Plaintiffs and Class Members.

22

1    100.    Defendants have thus received a benefit at the expense of Plaintiffs and Class

2  Members, and not by mistake but by intentional conduct. It would be unconscionable and

3  contrary to equity for Defendants to retain that benefit.

4    101.    The Court should award as a remedy the monies obtained by Defendants as a

5  result of the use of Plaintiffs' and Class Members' property (their Personal Information), and

6  the reasonable value of that property.

7

8  ## Eighth Claim for Relief
   ## Invasion of Right of Privacy – All Defendants

9    102.    Plaintiffs incorporate the substantive allegations above as if fully set forth

10  herein.

11    103.    Article 1, Section 1 of the California Constitution expressly provides a right to

12  privacy. This right is enforced through the tort of the invasion of privacy.

13    104.    Facebook's terms of service provide that its users' Personal Information

14  would not be released to third parties without permission and notice.

15    105.    Facebook's users reasonably believed that they would communicate with their

16  family and friends through Facebook without their Personal Information being released to

17  third parties without permission or notice.

18    106.    Plaintiffs and Class Members have an interest in preventing the unauthorized

19  disclosure and/or misuse of their Personal Information and in conducting their personal

20  activities without intrusion or interference. This includes the right not to have their Personal

21  Information stolen and used by Defendants CA, SCL, and GSR and others for others' benefit.

22    107.    Defendants intentionally intruded on Plaintiffs' and Class Members' private

23  place, conversation, matter, seclusion, solitude and relationships and otherwise invaded their

24  right to privacy without consent and permission.

25    108.    Defendants' intrusive conduct was and is highly objectionable to reasonable

26  persons and constitutes an egregious intrusion on Plaintiffs' and Class Members' rights to

27  privacy.

28

23

109. Plaintiffs and Class Members were harmed by Defendants' invasion of their rights to privacy.

110. As a direct and proximate result of Defendants' invasion of Plaintiffs' and Class Members' privacy, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

**Ninth Claim for Relief**
**Violations of the Stored Communications Act**
**18 U.S.C. §§ 2701, et seq. – All Defendants**

111. Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

112. By unlawfully accessing and disclosing, and or divulging the content of Plaintiffs' and Class Members' communications to third parties, Defendants violated the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*

113. The Stored Communications Act ("SCA") defines electronic storage as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

114. The servers Defendants used to provide electronic communications service to Plaintiffs and Class Members are a "facility" within the meaning of the SCA.

115. Defendants are "persons" within the meaning of the SCA.

116. Defendants' provision of Plaintiffs' and Class Members' personal data with third parties exceeded authorization from any party to the personal data at issue.

117. Defendants' sharing of personal data resulted in and constitutes interstate data transmissions in violation of the SCA.

24

Class Action Complaint

118.    As a direct and proximate result of Defendants' violations of the SCA,
pursuant to 18 U.S.C § 2707(c), Plaintiffs and Class Members are entitled to 1) minimum
statutory damages of $100 per person; 2) punitive damages, costs, and 3) reasonable attorney
fees.

### Tenth Claim for Relief
### Conversion –All Defendants

119.    Plaintiffs incorporate the substantive allegations above as if fully set forth
herein.

120.    As Facebook's terms of service admit, Plaintiffs and Class Members were the
owners and possessors of private data in the form of their Personal Information. As a result
of their wrongful conduct, Defendants have interfered with the Plaintiffs' and Class
Members' right of possession and control of such property and taken that property for their
own use, property to which Plaintiffs and Class Members had a superior right of possession
and control at the time of conversion.

121.    In converting Plaintiffs' and Class Members' Private Information Defendants
acted with malice, oppression, and in conscious disregard of the rights of Plaintiffs and Class
Members.

122.    As a direct and proximate result of Defendants' conversion of Plaintiffs' and
Class Members' property, Plaintiffs and Class Members suffered injuries, damages, losses or
harm, including but not limited to annoyance, interference, concern, lost time, the loss of
personal property, and the need for the cost of effective credit and privacy security, justifying
an award of compensatory and punitive damages.

### Eleventh Claim for Relief
### Civil Conspiracy –All Defendants

123.    Plaintiffs incorporate the substantive allegations above as if fully set forth
herein.

Class Action Complaint

124.     As described above, Defendants knew or had reason to know that Plaintiffs' and Class Members' Personal Information was being used in violation of the terms of Facebook's agreement with Plaintiffs and Class Members.

125.     Defendants knew that invasive misuse of Personal Information was occurring.

126.     The acts and evidence identified in this complaint and elsewhere evidence cooperation and agreement among the Defendants.

127.     Defendants acted with a common plan or design and in furtherance of a direct conspiracy to wrongfully use Plaintiffs' and Class Members' Personal Information for profit, to violate the UCL and the SCA, to commit conversion, to invade Plaintiffs' and Class Members' privacy and to commit such action knowingly and without authorization.

128.     As a direct and proximate result of Defendants' active participation in a common plan or design to convert and misuse Plaintiffs' and Class Members' property, Plaintiffs and Class Members suffered injury, damage, loss or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, respectfully request that this Court enter an Order:

(a)     Certifying the Class and appointing Plaintiffs as Class Representatives and their counsel as counsel for the class;

(b)     Finding that Defendants' conduct was negligent, fraudulent, deceptive, unfair, and unlawful as alleged herein;

(c)     Enjoining Defendants from engaging in further negligent, deceptive, unfair, and unlawful business practices alleged herein;

(d)     Awarding Plaintiffs and the Class Members nominal, actual, compensatory, and consequential and punitive damages;

26

(e)     Awarding Plaintiffs and the Class Members statutory damages and penalties, as allowed by law;

(f)     Awarding Plaintiffs and the Class Members restitution and disgorgement;

(g)     Awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest;

(h)     Awarding Plaintiffs and the Class Members reasonable attorneys' fees costs and expenses; and

(i)     Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Complaint so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: April 2, 2018

/s/ *Joshua H. Watson*
Joshua H. Watson

*Attorney for Plaintiffs and the Class*

---

27

Class Action Complaint

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:18-cv-00571

O'Hara et al v. Facebook, Inc. et al
Assigned to:
Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 04/04/2018
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Jordan O'Hara**

represented by **Helen I Zeldes**
Coast Law Group LLC
1140 South Coast Highway 101
Encinitas, CA 92024
760-942-8505
Fax: 760-942-8515
Email: helen@coastlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brent Collins**

represented by **Helen I Zeldes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Olivia Johnston**

represented by **Helen I Zeldes**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
**Facebook, Inc.**

**Defendant**
**Cambridge Analytica, LLC**

**Defendant**
**Aleksandr Kogan**

**Defendant**
**Bannon K Stephen**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2018 | 1 | COMPLAINT Receipt No: 0973-21532202 - Fee: $400, filed by Plaintiffs Jordan O'Hara, Olivia Johnston, Brent Collins. (Attorney Helen I Zeldes added to party Brent |

| | | |
|---|---|---|
| | | Collins(pty:pla), Attorney Helen I Zeldes added to party Olivia Johnston(pty:pla), Attorney Helen I Zeldes added to party Jordan O'Hara(pty:pla))(Zeldes, Helen) (Entered: 04/04/2018) |
| 04/04/2018 | 2 | CIVIL COVER SHEET filed by Plaintiffs Brent Collins, Olivia Johnston, Jordan O'Hara. (Zeldes, Helen) (Entered: 04/04/2018) |
| 04/04/2018 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiffs Brent Collins, Olivia Johnston, Jordan O'Hara. (Zeldes, Helen) (Entered: 04/04/2018) |
| 04/04/2018 | 4 | NOTICE of Interested Parties filed by Plaintiffs All Plaintiffs, (Zeldes, Helen) (Entered: 04/04/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/05/2018 08:36:20 | | | |
| **PACER Login:** | gi000234:2554876:4036719 | **Client Code:** | 30993-00083 |
| **Description:** | Docket Report | **Search Criteria:** | 8:18-cv-00571 End date: 4/5/2018 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

COAST LAW GROUP LLP
HELEN I. ZELDES (220051)
helen@coastlaw.com
AMY C. JOHNSGARD (279795)
amy@coastlaw.com
ANDREW J. KUBIK (246902)
andy@coastlaw.com
BEN TRAVIS (305641)
ben@coastlaw.com
1140 S. Coast Highway 101
Encinitas, California 92024
Telephone: 760-942-8505
Facsimile: 760-942-8515

CUNEO GILBERT & LaDUCA LLP
CHARLES J. LADUCA
charles@cuneolaw.com
4725 Wisconsin Ave., NW
Suite 200
Washington, D.C. 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
tblood@bholaw.com
THOMAS J. O'REARDON II (247952)
toreardon@bholaw.com
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619-339-1100
Facsimile: 619-338-1101

*Attorneys for Plaintiffs and the Proposed Class*
[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| JORDAN O'HARA, BRENT COLLINS, and OLIVIA JOHNSTON, individually and on behalf of all others similarly situated, | CASE NO.: 8:18-cv-00571 |
| | **CLASS ACTION COMPLAINT** |
|     Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| FACEBOOK, INC., a Delaware corporation; CAMBRIDGE ANALYTICA, LLC, a Delaware limited liability company; (continued…) | |

COAST LAW GROUP LLP

1    ALEKSANDR KOGAN, an individual,
2    STEPHEN K. BANNON, an individual,
      and DOES 1-10, Inclusive,
3
       Defendants.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COAST LAW GROUP LLP

CLASS ACTION COMPLAINT            CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1       Plaintiffs JORDAN O'HARA, BRENT COLLINS, and OLIVIA JOHNSTON
2  (hereinafter "Plaintiffs"), by and through their attorneys, bring this action on behalf of
3  themselves and all others similarly situated against FACEBOOK, INC., a Delaware
4  corporation; CAMBRIDGE ANALYTICA, LLC, a Delaware limited liability
5  company; ALEKSANDR KOGAN, an individual; STEPHEN K. BANNON, an
6  individual; and Does 1 through 10 (Defendants Cambridge Analytica, LLC; Alexandr
7  Kogan; and Stephen K. Bannon are hereafter collectively referred to as the "Co-
8  Conspirator Defendants".) Plaintiffs hereby allege, on information and belief, except
9  as to those allegations which pertain to the named Plaintiffs, which allegations are
10  based on personal knowledge, as follows:

11                    **NATURE OF THE ACTION**

12    1.     Defendants Cambridge Analytica LLC, Alexander Kogan and Stephen
13  K. Bannon conspired—with Defendant Facebook's help—to steal vast amounts of
14  personal data of some 87 million American Facebook users in an illegal effort to
15  manipulate public opinion and elections throughout the United States, including the
16  2016 Presidential election. The breach has only recently made headlines, yet Facebook
17  has been aware of this and other breaches similar in scope and purpose for years. In
18  response to public outcry, Facebook has done next to nothing, including failing to
19  notify the consumers whose personal information has been taken, in violation of a
20  California law.

21    2.     The tens of millions of Americans who use Facebook have entrusted
22  Facebook to protect their personal data. For good reason, Facebook expressly assures
23  users that, **"You own all of the content and information you post on Facebook, and**
24  **you can control how it is shared through your privacy and application settings."**[1]
25  This is false and misleading.

26

27  ————————————————

28  [1] Facebook Terms of Service, January 30, 2015–present.
https://www.facebook.com/terms.php

1

<div style="margin-left: auto;">COAST LAW GROUP LLP</div>

1    3.      For years, Facebook has been aware of the faults in the system it created:

2    "Sandy Parakilas, the platform operations manager at Facebook responsible for

3    policing data breaches by third-party software developers between 2011 and 2012 . . .

4    warned senior executives at the company that its lax approach to data protection risked

5    a major breach, 'My concerns were that all of the data that left Facebook servers to

6    developers could not be monitored by Facebook, so we had no idea what developers

7    were doing with the data,' he said. Parakilas said Facebook had terms of service and

8    settings that 'people didn't read or understand' *and the company did not use its*

9    *enforcement mechanisms, including audits of external developers, to ensure data*

10   *was not being misused.*"[2] "It has been painful watching," he said, "because I know

11   that they could have prevented it."

12   4.      Facebook's proposed remedial measures*, announced only after the*

13   *breach made headlines*, have been feeble and hollow. Facebook promises to "review

14   our platform"; "tell people about data misuse"; and "encourage people to manage the

15   apps they use." In fact, none of Facebook's stopgap measures adequately remedy or

16   prevent the improper and illegal course of conduct alleged: in fact, users' data remains

17   dangerously unprotected and open to further abuse. And none of Facebook's measures

18   constitute adequate notice to affected consumers.

19   5.      Plaintiffs are Facebook users who believed that the valuable personal

20   information they entered on the social media application was protected and would not

21   be exploited for any illicit purposes. Reasonable consumers were unaware and could

22   not be expected to know that Facebook's platform could be scraped to collect vast

23   amounts of personal information that could then be aggregated and used in the way the

24   Co-Conspirator Defendants used the data. Nonetheless, Facebook and the Co-

25   Conspirator Defendants did just that: Facebook's failure to adequately protect

26

27   [2] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-

28   analytica-sandy-parakilas.

2

1   Plaintiffs' and the Class members' data allowed Co-Conspirator Defendants to engage
2   in an illicit and illegal appropriation of the data, the purpose of which was, at least in
3   part, to disrupt the 2016 American presidential race. The means by which this
4   conspiracy was accomplished reads like an international crime novel, except that it
5   actually happened. Contrary to Facebook's assurances that Plaintiffs' data would be
6   protected, the Co-Conspirator Defendants, in the course of their unlawful conspiracy,
7   accessed, harvested and sold the data of millions of individuals, including Plaintiffs,
8   for, among other things, use in their efforts to undermine the democratic process during
9   the 2016 U.S. presidential election. The personal information of Plaintiffs and the
10  Class members and, with it, the right to a free and fair election, was sold for
11  approximately $7 million. Plaintiffs bring this action to remedy the data breach that
12  has already occurred, to prevent this from happening in the future and to seek damages
13  on behalf of the Class.

14          6.      Plaintiffs bring this class action on behalf of themselves and all others
15  similarly situated nationwide, asserting claims under the Stored Communications Act
16  (18 U.S.C. §§ 2701, *et seq.*); Racketeer Influenced and Corrupt Organizations Act
17  ("RICO" or 18 U.S.C. § 1962(c)), Intrusion Upon Seclusion; Negligence; Negligence
18  Per Se; and Breach of Written Contract; California's Unfair Competition Law ("UCL"
19  Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and, on behalf of all those similarly situated,
20  for violations of the California Invasion of Privacy Act (Cal. Pen. Code § 637.3); and
21  violations of California's Consumer Records Act (Cal. Civ. Code §§ 1798.80, *et seq.*).

22          7.      Plaintiffs seek damages on behalf of the Class; injunctive relief;
23  restitution; disgorgement; statutory penalties; costs and expenses, including attorneys'
24  fees and expert fees; declaratory relief; and any additional relief that this Court
25  determines to be necessary to provide complete relief to Plaintiffs and the Class.

26                              **JURISDICTION AND VENUE**

27          8.      This Court has original jurisdiction over this action under the Class
28  Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named

*COAST LAW GROUP LLP*

3

COAST LAW GROUP LLP

1  Plaintiffs and every member of the Class, because the proposed Class contains more
2  than 100 members, the aggregate amount in controversy exceeds $5 million, and
3  members of the Class reside across the United States and are therefore diverse from
4  Defendants.

5      9.    This Court also has original jurisdiction over this action pursuant to 28
6  U.S.C. §1331. The Court also has supplemental jurisdiction over the state law claims
7  pursuant to 28 U.S.C. § 1367.

8      10.    This Court has jurisdiction over Defendants because they conduct
9  business in California, both in connection with the facts giving rise to this lawsuit and
10  generally, and have sufficient minimum contacts in California, or otherwise
11  intentionally avail themselves of the markets within California, through the promotion,
12  sale, marketing and distribution of their services and products in California, to render
13  the exercise of jurisdiction by this Court proper and necessary.

14      11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2),
15  because a substantial part of the events or omissions giving rise to Plaintiff's claims
16  occurred in this District.

17      12.    Venue is also proper in this District pursuant to 28 U.S.C. §1391(d)
18  because Defendant Facebook, Inc. resides in this district by virtue of its contacts within
19  this District.

20                       **THE PARTIES**
21  **Class Representatives**

22      13.    Plaintiff Jordan O'Hara is a resident of the city of San Diego, California,
23  a registered voter, and has maintained a Facebook profile at all relevant times herein.

24      14.    Plaintiff Brent Collins is a resident of the city of Newport Beach,
25  California, a registered voter, and maintained a Facebook profile at all relevant times
26  herein.

27      15.    Plaintiff Olivia Johnston is a resident of Culver City, California, a
28  registered voter, and has maintained a Facebook profile at all relevant times herein.

4

CLASS ACTION COMPLAINT                  CASE NO.: 8:18-cv-00571

1    16.    Plaintiffs O'Hara, Collins, and Johnston are referred to herein as
2    "Plaintiffs."

3    **Defendants**

4    17.    Defendant FACEBOOK, INC. ("Facebook") is a Delaware corporation
5    with its principal place of business in Menlo Park, California. Facebook operates a
6    social networking website which allows its users to interact and communicate with
7    other individuals.

8    18.    Defendant CAMBRIDGE ANALYTICA LLC ("Cambridge") is a
9    Delaware limited liability company involved in data mining and data analysis. The
10   parent company of Cambridge is U.K. company SCL GROUP ("SCL Group")
11   formerly Strategic Communication Laboratories). It maintains offices in New York
12   and Washington D.C.

13   19.    Defendant   DR.   ALEKSANDR   KOGAN   a/k/a   ALEKSANDR
14   SPECTRE ("Kogan") is a resident of the state of California. Kogan was a founder of
15   Global Science Research, Ltd. ("GSR"). At all relevant times, Kogan had decision-
16   making authority at GSR and directed, approved, or otherwise ratified the actions taken
17   by GSR as alleged herein.

18   20.    Defendant STEPHEN K. BANNON is a resident of the state of
19   California. At all relevant times, Bannon was a part owner, Vice President, and
20   Secretary of Defendant Cambridge until he resigned from those positions to act as the
21   chief executive of Donald Trump's presidential campaign. At all relevant times,
22   Bannon had decision-making authority at Cambridge and directed and approved the
23   actions taken by Cambridge as alleged herein.

24   21.    Defendants Cambridge, Kogan, and Bannon are referred to from time to
25   time collectively hereafter as the "Co-Conspirator Defendants," and individually from
26   time to time as a "Co-Conspirator."

27

28

COAST LAW GROUP LLP

5

1    **Unnamed Co-Conspirators**

2        22.    Various corporations and individuals not named as defendants in this

3    Complaint participated as co-conspirators in the conduct alleged herein and performed

4    acts and made statements in furtherance thereof.

5        23.    On information and belief, other actors participated with Defendants in

6    the conspiracy described in this Complaint. All allegations against Defendants are also

7    alleged against the unnamed co-conspirators as if they were set forth in this Complaint.

8    Each of these DOE defendants is responsible in some manner for the conduct alleged

9    herein. Plaintiffs will amend this Complaint to show their true names and capacities

10   when they have been ascertained.

11   <div align="center">

**FACTUAL BACKGROUND**
</div>

12   **Facebook's Vast Treasure Trove of Data**

13       24.    Since its inception in 2004, Facebook has become synonymous with

14   interconnectedness in the age of social media. Facebook now has over two billion

15   monthly active users, with over 200 million in the United States alone. Facebook has

16   become one of the world's leading repository of personal data.

17       25.    A virtual tsunami of private information of each of Facebook's billions

18   of users is regularly recorded into their unique Facebook profiles and stored by

19   Facebook, including: all manner of biographical information (e.g., current and former

20   names; alternate names; hometown; birthdate; gender; family connections; education;

21   email address; relationship status; education and work history; interests; hobbies;

22   religious and political affiliations; phone number; spoken languages); current and

23   former addresses; dates and times of active sessions on Facebook; dates and times and

24   titles of any advertisements that were "clicked" by the Facebook user; connections

25   with other Facebook users; communications with other Facebook users through the

26   integrated Facebook "Messenger" application and the user Facebook inbox; current

27   and last location; attendance at events and social gatherings; stored credit card

28   information used to make purchases on Facebook; people the Facebook user is

<div align="center">6</div>

CLASS ACTION COMPLAINT               CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1    "friends" with or follows; Facebook groups the user is a member of; a list of IP
2    addresses where the user has logged into and out of his or her account; posts or sites
3    the user has "liked"; searches conducted by the user on Facebook; photographs and
4    videos documenting all aspects of their lives and the lives of their friends and family;
5    and their activity in Facebook-connected applications ("User Information").

6         26.    It is unclear exactly how much User Information is out there – Facebook
7    announced today that it collects user data across Instagram, Messenger and
8    Whatsapp—three other massive social media/mobile apps it owns.[3] Facebook also
9    admitted that "Malicious actors have also abused these features [Facebook's "friend"
10   search function] to scrape public profile information by submitting phone numbers or
11   email addresses they already have through search and account recovery. Given the
12   scale and sophistication of the activity we've seen, we believe most people on
13   Facebook could have had their public profile scraped in this way . . . . 'Most people on
14   Facebook' means that we're talking about *at least* a billion users whose public
15   Facebook information has been spirited away into databases unknown."[4]

16        27.    In February 2016, Mark Zuckerberg, the Chief Executive Officer of
17   Facebook, reported the average Facebook user spends 50 minutes a day collectively
18   on the company's Facebook, Instagram, and Messenger platforms.

19        28.    A vital feature of the viral spread of Facebook is the appearance of
20   control users have over their sensitive User Information. Facebook's privacy settings
21   purport to offer users control over the dissemination of various categories of their User
22   Information, whether it be privately with particular individuals, with all of their
23   Facebook friends, with friends of friends, or with all Facebook users. Users thus

24

25

26   [3] https://www.cnbc.com/2018/04/04/facebook-updates-its-terms-of-service-to-
27   include-messenger-instagram.html.
28   [4] https://www.theatlantic.com/technology/archive/2018/04/most-people-on-facebook-
     may-have-had-their-accounts-scraped/557285/.

COAST LAW GROUP LLP

7

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

1 | reasonably expect User Information will only be accessible to the extent they authorize
2 | such access.

3 |     29.    In reality, the personal information of at least 87 million Facebook users
4 | were not within the control of the respective individual consumers, but instead had
5 | been improperly and illicitly harvested by Defendant Cambridge to, among other
6 | things, improperly influence and otherwise disrupt the outcome of the 2016
7 | Presidential election.

8 |     30.    What made the breach giving rise to this action so alarmingly effective
9 | is the vast collection Facebook has of personal data and control over purportedly
10 | private communications across this country and the globe.

11 |     31.    Facebook and the Co-Conspirator Defendants unlawfully appropriated
12 | this vast store of data, and then the Co-Conspirator Defendants used it to further their
13 | own improper purposes, i.e., to improperly and surreptitiously influence the 2016
14 | presidential election. Beyond those efforts to undermine a fundamental right of citizens
15 | to vote in a valid, transparent election or to otherwise destabilize democratic
16 | institutions, the nefarious uses of this data could have other far-reaching implications,
17 | as identity theft, ransomware, and other on-line threats continue to multiply on a daily
18 | basis. This action seeks to hold these Defendants to account for their improper and
19 | unlawful actions.

20 | **Facebook's Predators: The Birth of Cambridge Analytica**

21 |     32.    Cambridge is "Steve Bannon's psychological warfare tool"—his
22 | brainchild with "secretive US hedge-fund billionaire and Republican donor" Robert
23 | Mercer. Together, in 2013, the "then executive chairman of the 'alt-right' news
24 | network Breitbart (Bannon) and Cambridge Analytica's primary investor (Mercer)

*COAST LAW GROUP LLP*

CLASS ACTION COMPLAINT          CASE NO.: 8:18-cv-00571

1  joined forces to 'bring big data and social media to an established military
2  methodology—'information operations'—then turn it on the US electorate."[5]

3      33.    Cambridge's parent company, SCL Group, is a military contractor
4  known as "a British psy-ops company."[6] Defendant Bannon in conjunction with SCL
5  created a new company called Cambridge Analytica. Investor Robert Mercer funded
6  the company with $15 million, and Bannon was installed as Vice President and
7  Secretary. British citizen Alexander Nix was installed as Chief of Executive Officer.[7]
8  Cambridge was created with the primary goal of shaping U.S. elections.[8]

9      34.    **Defendant Bannon Oversaw Cambridge Analytica's Harvesting of**
10 **User Information**. "Conservative strategist Stephen K. Bannon oversaw Cambridge
11 Analytica's early efforts to collect troves of Facebook data as part of an ambitious
12 program to build detailed profiles of millions of American voters, a former employee
13 of the data-science firm said Tuesday . . . . The 2014 effort was part of a high-tech
14 form of voter persuasion touted by the company, which under Bannon identified and
15 tested the power of anti-establishment messages that later would emerge as central
16 themes in President Trump's campaign speeches . . . ."[9]

17     35.    **To Effectuate the Illegal Scheme, Bannon and Cambridge Hire**
18 **Defendant Kogan**. In furtherance of its mission, in June 2014, Cambridge set out to
19 acquire behavioral data of American citizens. Cambridge reached an agreement with

20

21 _____

22 [5] The Guardian March 18, 2018 at 1.
   https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-
23 christopher-wylie-faceook-nix-bannon-trump.
   [6] https://www.theguardian.com/uk-news/2018/mar/23/former-cambridge-analytica-
24 executive-brittany-kaiser-wants-to-stop-lies.
25 [7]https://en.wikipedia.org/wiki/Cambridge_Analytica.
   [8] https://www.washingtonpost.com/2018/03/22/330b188e-2c7d-11e8-8688-
26 e053ba58f1e4_story.html?utm_term=.aa71902b296d.
27 [9] https://www.washingtonpost.com/politics/bannon-oversaw-cambridge-analyticas-
   collection-of-facebook-data-according-to-former-employee/2018/03/20/8fb369a6-
28 2c55-11e8-b0b0-f706877db618_story.html?utm_term=.468d326c84e6.

COAST LAW GROUP LLP

COAST LAW GROUP LLP

1   Kogan, a researcher at Cambridge University, to harvest Facebook data "so that it

2   could be matched to personality traits and voter rolls."[10]

3       36.   **Kogan's Artifice: Global Science Research Ltd. is Born.** To

4   perpetuate this illegal harvesting of data, Kogan needed to create a scheme to dupe

5   users into providing their User Information. Kogan created a U.K. company called

6   Global Science Research, Ltd. ("GSR") for this purpose. Kogan, through GSR, created

7   a Facebook app called "ThisIsYourDigitalLife" ("YDL") which consisted of a

8   personality quiz. Kogan utilized Amazon Mechanical Turk's ("MTurk") program to

9   recruit participants (known as "Turkers") to complete the personality quiz. Kogan

10  offered the Turkers $0.50-$2.00 to complete the quiz.

11      37.   The fees paid to quiz participants were made via transfer or other

12  electronic means via the Internet.

13      38.   When Turkers responded to Kogan's request and expressed interest in

14  completing the personality quiz, Kogan sent them a link to his Facebook application.

15  Participants then completed the personality quiz, but in order to receive payment they

16  were told that they needed to allow the quiz app access to their Facebook data for

17  academic purposes. "And not just theirs, but their friends' too. On average, each

18  'seeder'—the people who had taken the personality test, around 320,000 in total—

19  unwittingly gave access to at least 160 other people's profiles, none of whom would

20  have known or had reason to suspect. What the email correspondence between

21  Cambridge Analytica employees and Kogan shows is that Kogan had collected

22  millions of profiles in a matter of weeks."[11] But no one "at Cambridge Analytica had

23  checked that it was legal."[12]

24

25

26  [10] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-
    christopher-wylie-faceook-nix-bannon-trump.

27  [11] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-
    christopher-wylie-faceook-nix-bannon-trump.

28  [12] *Id.*

10

COAST LAW GROUP LLP

39.     At no time did GSR inform the Turkers that they were sharing their User Information with others or request authorization to share their User Information.

40.     **Cambridge's Big Data Sweep.** Kogan's "quiz" was highly successful: 270,000 people completed the quiz and allowed GSR access to their User Information,[13] unwittingly also providing information of their friends, for a sweep of over 87 million Facebook users' profile information ("the YDL Breach").

41.     Kogan provided the improperly obtained data to Cambridge under the terms of their contract. In turn, Cambridge used the data to create "psychographic" profiles that could be used to design targeted political ads.

42.     Christopher Wylie, a former employee of Cambridge and now whistleblower, explained, "We exploited Facebook to harvest millions of people's profiles. And built models to exploit what we knew about them and target their inner demons. That was the basis the entire company was built on."[14]

43.     Brittany Kaiser, a former executive at Cambridge and another whistleblower, explained, "The kind of personality questionnaires conducted by the Cambridge psychologist Aleksandr Kogan on Facebook were particularly important…as they allowed the company's data scientists to build models connecting data to behavioral traits and build 'a very in-depth picture on those individuals.'"[15]

44.     "Around mid-2015, Kaiser says, the company knew Facebook was changing its API rules to restrict the data that could be harvested through questionnaires like Kogan's. This appears to have prompted a last-minute grab for data. In one internal email seen by the Guardian, employees are asked to identify which

---

[13] https://www.cbsnews.com/news/cambridge-analytica-facebook-was-used-to-scrape-millions-of-peoples-personal-data/.

[14] https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.

[15] https://www.theguardian.com/uk-news/2018/mar/23/former-cambridge-analytica-executive-brittany-kaiser-wants-to-stop-lies.

11

1  issues on a list of 500 Facebook 'like' items would be most 'useful for political

2  modeling or commercial sales.'"[16]

3      45.    A contract between SCL Elections Limited and GSR, signed by

4  Defendant Kogan and Cambridge CEO Alexander Nix, reveals an intent to circumvent

5  Facebook restrictions to obtain the User Information. It notes that the benefit to GSR's

6  method is that it uses an application under Facebook's old terms of service as new

7  applications could not access friend networks. The contract also notes that data will be

8  gathered on the Turkers' Facebook friends as well.[17]

9      46.    The contract further notes that the data was collected in order to target

10  voters in eleven states: Arkansas, Colorado, Florida, Iowa, Louisiana, Nevada, New

11  Hampshire, North Carolina, Oregon, South Carolina and West Virginia.[18]

12      47.    GSR was to make reasonable efforts under the contract to provide two

13  million records for those eleven states.[19]

14      48.    The payments to GSR as well as the payments to the survey respondents,

15  were made through wire transfer or other electronic payment method.

16      49.    Bannon was directly involved in the contract with GSR, had full

17  knowledge of how GSR was going to acquire the information, ratified it, and was in

18  support of it.[20]

19

20

21

22

23

---

[16] https://www.theguardian.com/uk-news/2018/mar/23/former-cambridge-analytica-executive-brittany-kaiser-wants-to-stop-lies.

[17] https://www.parliament.uk/documents/commons-committees/culture-media-and-sport/Chris%20Wylie%20Background%20papers.pdf

[18] *Id.*

[19] *Id.*

[20] https://www.cnn.com/2018/03/20/politics/steve-bannon-cambridge-analytica/index.html.

12

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

COAST LAW GROUP LLP

1    50.    **Cambridge's Scheme was Successful**: targeted political ads were

2    published across the United States (without any disclaimers in violation of Federal

3    Election laws).[21]

4    51.    **Cambridge's CEO Confirms the Scheme**. On March 20, 2018,

5    Cambridge announced that it was suspending Nix as its CEO "after British television

6    released secret recordings that appeared to show him talking about entrapping political

7    opponents."[22] In the recording, Nix describes the many illicit techniques utilized by

8    Cambridge to influence campaigns[23]. He brags to a potential client about Cambridge's

9    extensive experience in entrapping political candidates by deploying spies to offer

10   bribes:



11

12

13

14

15

16

17

18

19

20

21   _____

22   [21] "Any public communication made by a political committee—including
     communications that do not expressly advocate the election or defeat of a clearly
23   identified federal candidate or solicit a contribution—must display a disclaimer." "A
     'disclaimer' notice is a statement that identifies the person(s) who paid for the
24   communication and whether the communication was authorized by one or more
     candidates. 52 U.S.C. § 30120.
25
     [22] https://www.theguardian.com/uk-news/2018/mar/20/cambridge-analytica-
26   suspends-ceo-alexander-nix

27   [23] https://www.washingtonpost.com/politics/bannon-oversaw-cambridge-analyticas-
     collection-of-facebook-data-according-to-former-employee/2018/03/20/8fb369a6-
28   2c55-11e8-b0b0-f706877db618_story.html?utm_term=.468d326c84e6.

CLASS ACTION COMPLAINT                          CASE NO.: 8:18-cv-00571

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COAST LAW GROUP LLP



14

52.     Nix and his partner, Mark Turnbull, detail their practice of operating through different entities, with different names, "so that no record exists with our name attached to this at all" and propaganda can be disseminated with no verification of its source:



53.     **Facebook's Security Practices are Negligent, if not Reckless.** Facebook's negligent data security practices and systematic failure to enforce its own ineffective data security policies were exploited for financial and political gain by the Co-Conspirator Defendants.

54.     As early as 2011, Facebook's executives were apprised of its data vulnerabilities. Sandy Parakilas, a former operations manager responsible for data policy violations, provided a detailed presentation outlining the data vulnerabilities and exposure to users to senior Facebook executives. His warnings were met with "little to no response."[24]

_____

[24] https://www.washingtonpost.com/opinions/i-worked-at-facebook-i-know-how-cambridge-analytica-could-have-happened/2018/03/20/edc7ef8a-2bc4-11e8-8ad6-fbc50284fce8_story.html?utm_term=.faaca3c6d7b4.

15

COAST LAW GROUP LLP

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

1      55.     After those early unheeded warnings, in the spring of 2012 Facebook

2 held its initial public offering ("IPO"). It was the third-largest IPO in U.S. history. At

3 $38 per share, the social networking giant was valued at $104.2 billion.[25]

4      56.     Privacy is very important to Facebook users. Facebook's CEO, Mark

5 Zuckerberg has publicly acknowledged that people share on Facebook because "they

6 know their privacy is going to be protected."[26] The security of privacy allows Facebook

7 users to feely "engage and share their content and feel free to connect because they

8 know that their privacy is going to be protected."[27]

9      57.     Facebook sets forth its data security policies in a Statement of Rights and

10 Responsibilities and in a separate Data Policy.

11      58.     The opening line of Facebook's Statement of Rights and Responsibilities

12 is unambiguous:

13 **1.    Privacy**

14 Your privacy is very important to us. We designed our Data Policy to

15 make important disclosures about how you can use Facebook to share

16 with others and how we collect and can use your content and information.

17 We encourage you to read the Data Policy, and to use it to help you make

18 informed decisions.

COAST LAW GROUP LLP

---

[25] https://www.forbes.com/sites/tomiogeron/2012/05/17/facebook-prices-ipo-at-38-per-share/#70689bbc728a.

[26] *Id.*

[27] https://www.cnbc.com/2018/04/03/zuckerberg-on-facebook-and-privacy-before-cambridge-analytica-scandal.html

CLASS ACTION COMPLAINT              CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

2. **Sharing Your Content and Information**

You own all of the content and information you post on Facebook, and
you can control how it is shared through your privacy and application
settings. [28]

59. Facebook thus explicitly misleads its users into believing it is their right
to control their User Information.

60. Facebook's policies further prohibit "any action…that infringes or
violates someone else's rights or otherwise violates the law."[29] However, as Mr.
Parakilas later revealed, Facebook lacked the means and the motive to enforce this
seemingly strict policy.

61. By way of illustration, Mr. Parakilas described an infringement by an
application called Klout, which was creating unauthorized profiles of children. Mr.
Parakilas was tasked with calling the Klout executive to ask whether it was violating
any Facebook policies, because Facebook had no independent way of verifying a
violation. Klout assured Mr. Parakilas it was not infringing. Facebook took no further
action.[30]

62. In Mr. Parakilas's opinion, Facebook systematically failed to enforce its
own policies in order to avoid drawing attention to its vulnerabilities.[31] Luring its
consumers into a false sense of security and privacy is a key feature to Facebook's
proliferation and, by extension, its value.

---

[28] https://www.facebook.com/terms.php (emphasis added).
[29] *Ibid.*
[30] https://www.washingtonpost.com/opinions/i-worked-at-facebook-i-know-how-
cambridge-analytica-could-have-happened/2018/03/20/edc7ef8a-2bc4-11e8-8ad6-
fbc50284fce8_story.html?utm_term=.c67894fcb689.
[31] https://www.washingtonpost.com/opinions/i-worked-at-facebook-i-know-how-
cambridge-analytica-could-have-happened/2018/03/20/edc7ef8a-2bc4-11e8-8ad6-
fbc50284fce8_story.html?utm_term=.32eca9809e8d.

17

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

1    63.    In December 2015, *The Guardian* published an article which exposed the

2    unauthorized harvesting of tens of millions of Facebook users by Defendants

3    Cambridge and Kogan on behalf of Senator Ted Cruz's presidential campaign.[32]

4    Facebook's attorneys reportedly informed Cambridge that:

5        "[M]isleading people or misusing their information is a direct violation

6        of our policies and we will take swift action against companies that do,

7        including banning those companies from Facebook and requiring them

8        to destroy all improperly collected data."[33]

9    64.    But Facebook did neither.[34] As with the Klout application, they took no

10   further action.

11   65.    Facebook admits it had knowledge that User Information had been

12   extracted by Kogan and Cambridge in 2015.[35] But when it finally took any steps in

13   mid-2016, it merely wrote to Cambridge stating that the data could not be used and

14   asked Cambridge to delete the data.[36]

15   66.    Christopher Wylie, who responded to Facebook's request to delete the

16   illicitly obtained data, was astonished by Facebook's lackluster response. Facebook

17   did nothing to confirm whether the data had been deleted. "All they asked me to do

18   was tick a box on a form and post it back." To date, all data still has not been deleted.[37]

19   67.    In June 2016, a Facebook Vice President Andrew Bosworth circulated a

20   memorandum entitled "The Ugly." The memo highlights many of Facebook's

21

22   [32] https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-
23   campaign-facebook-user-data.

     [33] http://billmoyers.com/story/kushner-timeline/.
24   [34] https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/.

25   [35] See Mark Zuckerberg statement on Facebook, March 21, 2018.
     https://www.facebook.com/zuck/posts/10104712037900071
26   [36] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-
27   christopher-wylie-faceook-nix-bannon-trump.

     [37] https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-
28   influence-us-election.

18

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1  questionable practices putting infinite growth above all else, even the security, privacy
2  and safety of its users.[38] An excerpt from the memo has proven illustrative:

> So we connect more people
>
> That can be bad if they make it negative. Maybe it costs
> a life by exposing someone to bullies. Maybe someone dies
> in a terrorist attack coordinated on our tools.
>
> And still we connect people.
>
> The ugly truth is that we believe in connecting people
> so deeply that anything that allows us to connect more
> people more often is *de facto* good. It is perhaps
> the only area where the metrics do tell the true story as
> far as we are concerned.
>
> ANDREW BOSWORTH, FACEBOOK
> JUNE 18, 2016

14      68.     In the weeks leading up to the November 2016 election, Mark
15  Zuckerberg's trusted mentor and longtime investor, Roger McNamee, sounded the
16  alarm about platform manipulation. Facebook executives brushed his concerns aside.[39]
17      69.     It was not until whistleblowers came forward mere weeks ago that
18  Facebook finally suspended Cambridge and Kogan from using Facebook, reportedly
19  because "[p]rotecting people's information is at the heart of everything we do, and we
20  require the same from people who operate aps on Facebook."[40] Yet Facebook
21  continues to deny the YDL Breach was a data breach since "everyone involved gave
22  their consent" and "no systems were infiltrated."[41]

23

24  [38] https://www.buzzfeed.com/ryanmac/growth-at-any-cost-top-facebook-executive-
25  defended-data?utm_term=.gt3GMx2wQ5#.olr8JBAkEN.
26  [39] https://work.qz.com/1233606/maybe-facebook-ceo-mark-zuckerberg-shouldnt-
    have-blown-off-his-mentor-roger-mcnamee/.
27  [40] http://money.cnn.com/2018/03/19/technology/business/facebook-data-privacy-
    crisis/index.html
28  [41] https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/.

19

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1       70.     Facebook cannot have it both ways. It cannot mislead users into believing
2  they have control over the privacy of their User Information while simultaneously
3  granting unfettered access to that information to third parties under the guise of
4  "consent."

5             To date, Facebook has failed to notify the over 87 million users whose
6             User Information was compromised by the YDL Breach. In fact, it denies
7             there ever was a data breach.[42]

8       71.     Affected Facebook users have been injured because: (i) they no longer
9  have control over their User Information and how it is used, as promised by Facebook,
10  (ii) the value of their User Information, which there is a well-established market for,
11  has diminished because it is no longer private, (iii) their User Information has been
12  misused and is vulnerable to continued misuse; (iv) they will have to spend time and
13  money securing their User Information, protecting their identities and mitigating
14  misuse of their User Information; and (v) they were denied an opportunity to equally
15  participate in the political process by virtue of being improperly targeted with illegal
16  campaign advertisements. They will need to monitor their accounts and credit and will
17  have to pay for further identity theft protection services in the wake of the data breach,
18  to make sure their identities were not stolen.

19       72.    **Facebook Has Provided No Notice of the Breach.** Injunctive relief is
20  particularly urgent here, where Facebook has not only failed to provide any notice of
21  the YDL Breach to its users, but instead has steadfastly denied there ever was a
22  breach.[43] As such, the YDL Breach is unprecedented even compared to the recent
23  notorious Equifax breach, as Equifax disseminated notice to its customers of the breach
24  and provided a way to verify whether consumer information was potentially breached.

25

26  [42] https://economictimes.indiatimes.com/tech/internet/data-breach-claims-false-
27  facebook/articleshow/63353256.cms.
28  [43] https://economictimes.indiatimes.com/tech/internet/data-breach-claims-false-
     facebook/articleshow/63353256.cms.

COAST LAW GROUP LLP

20

CLASS ACTION COMPLAINT              CASE NO.: 8:18-cv-00571

1   73.  Only in the aftermath of news of the YDL Breach, Facebook has been

2 attempting to salvage its brand and rebuild consumer trust by revamping its privacy

3 policies.  In a March 26, 2018 letter from Facebook's Head of Public Policy, Rebecca

4 Stimson promises Facebook will, e.g. "review our platform"; "tell people about data

5 misuse"; and "encourage people to manage the apps they use."[44]  The following day,

6 CEO Zuckerberg publicly refused to appear before Parliament to answer questions

7 regarding the YDL Breach.[45]  On the afternoon of April 4, 2018, after rebuffing

8 Parliament, Facebook published a new data policy on its website.[46]  The new data

9 policy is wholly inadequate and sufficiently vague to allow ongoing breaches.  For

10 example, included under the heading, "What kinds of information do we collect" are

11 the following categories of information: "things you do and information you provide;

12 things others do and information they provide; information about payments;

13 information from third-party partners; and Facebook companies."  The heading, "How

14 is this information shared" includes "apps, websites and third-party integrations on or

15 using our Services; sharing within Facebook companies; and vendors, service

16 providers and other partners."[47]

17   74.  Facebook's stopgap measures fail to provide an adequate remedy or

18 prevent further improper and illegal conduct.  For one thing, User Information already

19 compromised remains dangerously vulnerable and open to further abuse. And none of

20 Facebook's measures constitute adequate notice to affected consumers. Further,

21 Facebook is not legally bound by any of the public relations promises it has made.

22 Indeed, historically Facebook has a long history of failing to enforce its own data

23 security policies.

24

25 [44] https://regmedia.co.uk/2018/03/27/letter_damian_collins_
26 from_facebook_26_macrh_2018.pdf.
  [45] https://nypost.com/2018/03/27/mark-zuckerberg-refuses-to-testify-before-british-
27 parliament/.
  [46] https://www.facebook.com/about/privacy.
28 [47] https://newsroom.fb.com/news/2018/04/terms-and-data-policy.

CLASS ACTION COMPLAINT      CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

## PLAINTIFFS' ADDITIONAL ALLEGATIONS

**Plaintiff Jordan O'Hara**

75.     Mr. O'Hara is a veteran who served in the United States Navy. He has maintained profiles on Facebook and Instagram for several years. He has regularly conducted online searches related to some aspect of the military.

76.     During the Presidential campaign and 2016 election season, Mr. O'Hara noticed that his Instagram search feed in particular contained a high percentage of right-wing propaganda. This propaganda included, for example, memes mocking Hillary Clinton. This seemed odd to Mr. O'Hara because he is a registered Democrat. He would not have intentionally sought out any anti-Clinton propaganda or humor. His sense at the time was that he was in some way being targeted to receive this propaganda because there was an assumption that he was active in the military and thus a Republican.

77.     In recent days and weeks, Mr. O'Hara has discovered that his personal information likely has been knowingly mined by the Defendants for the purpose of improper campaigning.

78.     Plaintiff O'Hara provided his valuable personal data as consideration for use of Facebook. Plaintiff O'Hara relied on Facebook's promises to secure his data as stated in the Privacy Policy.

**Plaintiff Brent Collins**

79.     Mr. Collins has been an avid user of social media, in particular Facebook and Instagram, for many years. During the relevant time period, he had approximately 700 Facebook "friends." Facebook was his primary means of communicating with his family members, former classmates, and coworkers, among other people.

80.     Like so many others, during the 2016 Presidential election season, Mr. Collins was dismayed by the amount of divisiveness he observed on social media. He saw what he thought was an unusually large amount of highly negative and politically divisive posts.

22

COAST LAW GROUP LLP

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

81.     In addition to being inundated with false and misleading information, during the 2016 Presidential election season, Mr. Collins recalled being frequently targeted with political ads while using Facebook.

82.     After the news broke about Defendant Cambridge harvesting Facebook's user's personal data, Mr. Collins felt he could no longer in good conscience use this platform. He posted a March 20, 2018 *New York Times* article entitled "Facebook Faces Growing Pressure Over Data and Privacy Inquiries" dated accompanied by this comment:

Tuesday, March 20, 2018 at 10:25pm PDT

> I have decided that I will delete my Facebook account. It is unfathomable that the company can have so much power to be misused and take so little responsibility. The consequences could not have been more serious and with 2018 elections around the corner, there is no time for their excuses, which is pretty much all I have seen from Zuckerburg. I encourage others to take the same action. New Investigations Into Facebook Add New Pressures - The New York Times

83.     Shortly thereafter, he deleted his Facebook account.

84.     Plaintiff Collins provided his valuable personal data as consideration for use of Facebook. Plaintiff Collins relied on Facebook's promises to secure his data as stated in the Privacy Policy.

**Plaintiff Olivia Johnston**

85.     Ms. Johnston is a young professional and resident of Los Angeles. She has maintained profiles on Facebook and Instagram for several years.

86.     Plaintiff Johnston provided her valuable personal data as consideration for use of Facebook. Plaintiff Johnston relied on Facebook's promises to secure her data as stated in the Privacy Policy.

87.     At all relevant times hereto, Facebook collected and stored User Information from the Plaintiffs, including their biographical information, educational

23

COAST LAW GROUP LLP

1   background, work history, birthday, hometown, family and relationship status,
2   interests, religious and political views, history of websites visited, timeline posts,
3   "likes," current location, online status, and activity in other applications including
4   those controlled and maintained by Facebook.

5       88.    The Plaintiffs have been regular Facebook users at all relevant times. To
6   their knowledge, the Named Plaintiffs never consented to allowing GSR, SCL, or
7   Cambridge access to their User Information.

8       89.    Plaintiffs believe they are among the more than 87 million Americans
9   whose private User Information was misappropriated and compromised by the
10  defendant Co-Conspirators.

11      90.    As a direct result of the YDL Breach, the Plaintiffs have incurred
12  damages including time, expense, and fear and anxiety in securing their personal
13  information and protecting their identities by, for example, instituting security freezes
14  and purchasing identity theft protection because they no longer have control over their
15  User Information. The Plaintiffs have further suffered a loss of the value in their User
16  Information by virtue of the dissemination of the same to Facebook and the Co-
17  Conspirators. Moreover, now that the Plaintiffs' User Information is in the hands of
18  the Co-Conspirators, they face a real and imminent threat of ongoing identity theft and
19  other issues associated with the disclosure of their private information including
20  further dilution in the value of their User Information. They will incur ongoing credit
21  monitoring expenses for the indefinite future.

22      **CLASS ACTION ALLEGATIONS**

23      91.    Plaintiffs bring this class action on behalf of themselves individually and
24  all others similarly situated, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules
25  of Civil Procedure.

26      92.    The proposed nationwide class is defined as follows:
27
28

CLASS ACTION COMPLAINT          CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

COAST LAW GROUP LLP

1    **All persons in the United States with Facebook accounts whose**
2    **personal information was obtained by Cambridge Analytica, LLC**
3    **without or in excess of authorization.**

4    93.    The proposed California class is defined as follows:

5    **All residents in the State of California with Facebook accounts**
6    **whose personal information was obtained by Cambridge Analytica,**
7    **LLC without or in excess of authorization.**

8    94.    Excluded from the Class are Defendants and any entities in which any
9 Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants'
10 officers, agents, and employees. Also excluded from the Class are the judge assigned
11 to this action and any member of the judge's immediate family.

12    95.    This action is properly brought as a class action for the following reasons:

13    (a)    the proposed Class is so numerous and geographically dispersed
14 throughout the United States that the joinder of all Class members is impracticable.
15 While Plaintiffs do not know the exact number and identity of all Class members,
16 Plaintiffs are informed and believes that there are over fifty million Class members.
17 The precise number of Class members can be ascertained through discovery, which
18 will include Facebook's business records;

19    (b)    the disposition of Plaintiffs' and proposed Class members' claims
20 in a class action will provide substantial benefits to both the parties and the Court;

21    (c)    the proposed Class is ascertainable and there is a well-defined
22 community of interest in the questions of law or fact alleged herein since the rights of
23 each proposed Class member were infringed or violated in the same fashion;

24    (d)    there are questions of law and fact common to the proposed Class
25 which predominate over any questions that may affect particular Class members. Such
26 common questions of law and fact include, but are not limited to:

27    i.    Whether Facebook represented that it would safeguard
28 Plaintiffs' and Class members' User Information and not disclose it without consent;

25

CLASS ACTION COMPLAINT          CASE NO.: 8:18-cv-00571

ii.     Whether Defendants improperly obtained Plaintiffs' and Class members' User Information without authorization or in excess of any authorization;

iii.    Whether Facebook was aware of Cambridge's improper collection of Plaintiffs' and Class members' User Information;

iv.     Whether Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their User Information;

v.      Whether Defendants breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their User Information;

vi.     Whether Class members' User Information was obtained by Cambridge;

vii.    Whether Defendants' conduct violated Cal. Civ. Code § 1750, *et seq.*;

viii.   Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

ix.     Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

x.      Whether Plaintiffs and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief;

xi.     Whether Plaintiffs and Class members have been harmed and the proper measure of relief; and

xii.    Whether Plaintiffs and proposed Class members are entitled to an award of attorneys' fees and expenses against Defendants.

(e)     Plaintiffs' claims are typical of the claims of the members of the proposed class. Plaintiffs and all class members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and

26

COAST LAW GROUP LLP

1    conduct that give rise to the claims of all class members and are based on the same
2    legal theories;

3        (f)    Plaintiffs will fairly and adequately protect the interests of the
4    proposed class in that he has no interests antagonistic to those of the other proposed
5    class members, and Plaintiffs have retained attorneys experienced in consumer class
6    actions and complex litigation as counsel;

7        (g)    A class action is superior to other available methods for the fair
8    and efficient adjudication of this controversy for at least the following reasons:

9        i.    Given the size of individual proposed Class members'
10   claims and the expense of litigating those claims, few, if any, proposed Class members
11   could afford to or would seek legal redress individually for the wrongs Defendants
12   committed against them and absent proposed Class members have no substantial
13   interest in individually controlling the prosecution of individual actions;

14       ii.    This action will promote an orderly and expeditious
15   administration and adjudication of the proposed Class claims, economies of time,
16   effort and resources will be fostered, and uniformity of decisions will be insured;

17       iii.    Without a class action, proposed Class members will
18   continue to suffer damages, and Defendants' violations of law will proceed without
19   remedy while Defendants continues to reap and retain the substantial proceeds of their
20   wrongful conduct; and

21       iv.    Plaintiffs know of no difficulty that will be encountered in
22   the management of this litigation which would preclude its maintenance as a class
23   action.

24       96.    Defendants have, or have access to, address information for the Class
25   members, which may be used for the purpose of providing notice of the pendency of
26   this class action.

27       97.    Plaintiffs seek relief on behalf of the proposed Class on grounds
28   generally applicable to the entire proposed Class.

COAST LAW GROUP LLP

27

# FIRST CAUSE OF ACTION
**Violation of Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.***
**(Against Co-Conspirator Defendants Cambridge, Kogan, and Bannon on behalf of the Nationwide Class)**

98.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

99.    The Stored Communications Act ("SCA") provides a private right of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ." *See* 18 U.S.C. §§ 2701(a) and 2707(a).

100.    The Co-Conspirator Defendants are "persons" within the meaning of the SCA.[48]

101.    The User Information stored by Facebook and compromised by the YDL Breach is encompassed within the definition of "electronic storage" under the SCA.[49]

102.    Cambridge, which was hired by the other Co-Conspirator Defendants, has admitted exceeding its authorization by accessing the User Information for the first time in 2015.[50] Facebook executives have since made statements indicating it learned that Cambridge did *not* delete all illicitly obtained User Information in 2015 despite its "certification" that it had done so.[51] Certain "whistleblowers," including former Cambridge employee Christopher Wylie, have since given interviews detailing how the User Information of over 87 million Facebook users was accessed without authorization.

---

[48] "[P]erson" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation. (18 U.S.C.A. § 2510(6)).

[49] 18 U.S.C. § 2510(17).

[50] https://ca-commercial.com/news/message-acting-ceo-dr-alexander-tayler

[51] https://www.facebook.com/zuck/posts/10104712037900071

28

COAST LAW GROUP LLP

103. The court may award damages under the SCA including "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c).

104. Defendant Cambridge exceeded its authorization to access Facebook's servers, and thereby obtained users' electronic communications while they were stored electronically on Facebook's system, network, and/or servers.

105. Defendants Kogan and Bannon funded, oversaw, ratified, and facilitated Cambridge's unauthorized access and collection of User Information.

106. As a result of Defendants' actions, Plaintiffs and the Class are entitled to statutory damages of $1,000 per violation and injunctive relief from Defendants GSR and Cambridge for violating Plaintiffs' and Class members' privacy rights under the SCA, as well as costs and attorneys' fees pursuant to 18 U.S.C § 2707.

## SECOND CAUSE OF ACTION
### Violation of Stored Communications Act, 18 U.S.C. §§ 2702, *et seq.*
### (Against Defendant Facebook on behalf of the Nationwide Class)

107. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

108. Defendant Facebook is liable under the SCA (18 U.S.C. § 2702(a)) for unlawfully divulging the contents of Plaintiffs' and Class members' communications to third parties, including but not limited to the Co-Conspirator Defendants.

109. The SCA prohibits a "person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." (18 U.S.C. § 2702(a)).

COAST LAW GROUP LLP

29

110.  Facebook is a "person" within the meaning of the SCA.[52] It provides an "electronic communication service" as that term is defined in the code.[53] The User Information stored by Facebook and compromised by the YDL Breach is encompassed within the definition of "electronic storage" under the SCA.[54]

111.  Facebook's provision of the User Information to the Co-Conspirator Defendants exceeded any authorization by any of the Plaintiffs or Class members. Moreover, Facebook was aware of its divulging of these communications as evidenced by, first, its acknowledgment of the 2015 unauthorized harvesting of tens of millions of Facebook users' information by Cambridge and Kogan on behalf of Senator Ted Cruz's presidential campaign.[55] After Facebook had knowledge of the 2015 breach by Cambridge, it failed to ban Defendant Cambridge from Facebook, as its own policy required.[56] In fact, Facebook did not ban Cambridge until after a whistleblower leaked the story of the YDL Breach in the press on or about March 16, 2018.[57]

112.  As a result of Defendant Facebook's actions, Plaintiffs and the Class are entitled to statutory damages of $1,000 per violation and preliminary and equitable relief from Defendant Facebook for violating Plaintiffs' and Class members' privacy rights under the SCA, as well as costs and attorneys' fees pursuant to 18 U.S.C § 2707.

---

[52] "[P]erson" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation. (18 U.S.C.A. § 2510(6)).

[53] "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications.

[54] 18 U.S.C. § 2510(17).

[55] https://www.facebook.com/zuck/posts/10104712037900071.

[56] http://billmoyers.com/story/kushner-timeline/.

[57] https://www.cnbc.com/2018/03/16/facebook-bans-cambridge-analytica.html

30

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

**THIRD CAUSE OF ACTION**
**For Violation of the California Customer Records Act,**
**California Civil Code §§ 1798.80,** *et seq.*
**(Against Facebook on behalf of the California Class)**

113.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

114.    Plaintiffs bring this cause of action on behalf of the California Class whose personal User Information is maintained by Facebook and which was compromised.

115.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b).

116.    Facebook is a "business" within the meaning of Civil Code § 1798.80(a).

117.    Plaintiffs and members of the class are "individual[s]" within the meaning of the Civil Code § 1798.80(d). Pursuant to Civil Code § 1798.80(e), the User Information is "personal information," which includes, but is not limited to, an individual's name, physical characteristics or description, address, telephone number, education, employment, employment history, and medical information.

118.    The breach of the personal User Information of tens of millions of Facebook customers constituted a "breach of the security system" of Facebook pursuant to Civil Code § 1798.82(g).

119.    By failing to implement reasonable measures to protect its customers' personal User Information, Facebook violated Civil Code § 1798.81.5.

120.    In addition, by failing to promptly notify all affected California residents that their personal User Information had been acquired (or was reasonably believed to

31

COAST LAW GROUP LLP

1   have been acquired) by unauthorized persons in the YDL Breach, including by the Co-
2   Conspirator Defendants, Facebook violated Civil Code § 1798.82. Facebook's failure
3   to timely and adequately notify users of the breach leaves Class members vulnerable
4   to continued misuse of their User Information and prevents Class members from taking
5   adequate steps to protect their identities.

6       121.    By violating Civil Code §§ 1798.81.5 and 1798.82, Facebook "may be
7   enjoined" pursuant to Civil Code § 1798.84(e).

8       122.    Accordingly, Plaintiffs request that the Court enter an injunction
9   requiring Facebook to implement and maintain reasonable security procedures to
10  protect customers' User Information in compliance with the California Customer
11  Records Act, including, but not limited to: (1) ordering that Facebook, consistent with
12  industry standard practices, engage third party security auditors/penetration testers as
13  well as internal security personnel to conduct testing, including simulated attacks,
14  penetration tests, and audits on Facebook's systems on a periodic basis; (2) ordering
15  that Facebook engage third party security auditors and internal personnel, consistent
16  with industry standard practices, to run automated security monitoring; (3) ordering
17  that Facebook audit, test, and train its security personnel regarding any new or
18  modified procedures; (4) ordering that Facebook, consistent with industry standard
19  practices, conduct regular database scanning and securing checks; (5) ordering that
20  Facebook, consistent with industry standard practices, periodically conduct internal
21  training and education to inform internal security personnel how to identify and contain
22  a breach when it occurs and what to do in response to a breach; (6) ordering that
23  Facebook meaningfully educate its former and current users and employees about the
24  threats they face as a result of the loss of their personal User Information to third
25  parties, as well as the steps they must take to protect themselves; and (7) ordering
26  Facebook to encrypt sensitive personal information.

27      123.    Plaintiffs further request that the Court require Facebook to (1) identify
28  and notify all members of the Class who have not yet been informed of the breach; and

COAST LAW GROUP LLP

32

CLASS ACTION COMPLAINT                          CASE NO.: 8:18-cv-00571

1   (2) notify affected former and current users and employees of any future data breaches

2   by email within 24 hours of Facebook's discovery of a breach or possible breach and

3   by mail within 72 hours.

4       124.   As a result of Facebook's violation of Civil Code §§ 1798.81.5, and

5   1798.82, Plaintiffs and members of the Class have and will incur economic damages

6   relating to time and money spent remedying the breach, including, but not limited to,

7   monitoring their online presence to ensure that their identity has not been stolen or

8   coopted for an illicit purpose, any unauthorized charges made on financial accounts,

9   lack of access to funds while banks issue new cards, tax fraud, as well as the costs of

10  credit monitoring and purchasing credit reports.

11      125.   Plaintiffs, for themselves and on behalf of the members of the Class, seek

12  all remedies available under Civil Code § 1798.84, including, but not limited to: (a)

13  damages suffered by members of the Class; and (b) equitable relief.

14      126.   Plaintiffs, for themselves and on behalf of the members of the Class, also

15  seek reasonable attorneys' fees and costs under applicable law including California

16  Code of Civil Procedure § 1021.5 and Federal Rule of Civil Procedure 23.

17  **FOURTH CAUSE OF ACTION**

18  **For Violations of Racketeer Influenced and Corrupt Organizations Act,
    18 U.S.C. § 1962(c)**

19  **(Against Co-Conspirator Defendants on behalf of the Nationwide Class)**

20      127.   Plaintiffs re-allege and incorporate by reference the allegations contained

21  in the paragraphs above as if fully set forth herein.

22      128.   Upon information and belief, the Co-Conspirator Defendants associated

23  with one another for the purpose of utilizing illicitly obtained User Information for the

24  targeting of digital political propaganda (the "Digital Political Propaganda

25  Enterprise"). The Co-Conspirator Defendants therefore constitute a RICO enterprise

26  pursuant to 18 U.S.C. § 1961(4). In the alternative, these individuals and entities

27  constitute an enterprise because they associated together for the common purpose of

28

COAST LAW GROUP LLP

33

CLASS ACTION COMPLAINT      CASE NO.: 8:18-cv-00571

1   utilizing illicitly obtained personally identifiable information for the targeting of digital
2   political propaganda.

3       129.   The association-in-fact Digital Political Propaganda Enterprise consisted
4   of the following structure: the Co-Conspirator Defendants – Cambridge Analytica,
5   Aleksandr Kogan and Stephen K. Bannon – along with other individuals and entities,
6   including unknown third parties involved in data mining and data analysis, operated
7   an association-in-fact enterprise, which was formed for the purpose of utilizing illicitly
8   obtained User Information for the targeting of digital political propaganda. Each of the
9   Co-Conspirator Defendants was employed by or associated with, and conducted or
10  participated in the affairs of the Digital Political Propaganda Enterprise:

11          (a)    Cambridge Analytica participated in, operated and/or directed the
12  Digital Political Propaganda Enterprise by, among other things: (i) illicitly gathering
13  and otherwise improperly harvesting personally User Information from millions of
14  unsuspecting consumers, for the purposes of targeting those same consumers with
15  digital political propaganda; (ii) providing the necessary funding and personnel
16  necessary to gather the User Information from millions of American consumers;

17          (b)    Aleksandr Kogan participated in, operated and/or directed the
18  Digital Political Propaganda Enterprise by, among other things: (i) creating a U.K.
19  company called Global Science Research, Ltd. ("GSR") which was part of a scheme
20  to dupe users into providing their User Information, which was part of the broader
21  scheme of illegally harvesting of data; (ii) through GSR, creating a Facebook app
22  called "ThisIsYourDigitalLife" ("YDL") which consisted of a personality quiz; (iii)
23  utilizing Amazon Mechanical Turk's ("MTurk") program to recruit participants
24  (known as "Turkers") to complete the personality quiz; and (iv) utilizing the data
25  gathered through the quiz to improperly harvest the data of millions of Facebook
26  subscribers;

27          (c)    Stephen K. Bannon participated in, operated and/or directed the
28  Digital Political Propaganda Enterprise by, among other things: (i) founded Cambridge

COAST LAW GROUP LLP

34

1  Analytica; (ii) obtained funding for the efforts of Cambridge Analytica; (iii) acted as a
2  Vice-President of Cambridge Analytica and (iv) oversaw the efforts of Cambridge
3  Analytica to collect troves of Facebook data.

4  130.  The Co-Conspirator Defendants worked together to accomplish their
5  scheme or common course of conduct. This enterprise has been in operation since at
6  least 2014.

7  131.  The racketeering activity committed by each of the members of the
8  Digital Political Propaganda Enterprise affected interstate commerce.

9  132.  On information and belief, the Co-Conspirator Defendants agreed to and
10 did conduct and participate, directly and indirectly, in the conduct of the Digital
11 Political Political Propaganda Enterprise's affairs in a pattern of racketeering activity targeted
12 at intentionally defrauding Facebook users including, without limitation, via nominal
13 payments and numerous intentionally false representations averred herein with the
14 specific intent of inducing Facebook users to unwittingly share other users' private
15 User Information.

16 133.  Pursuant to and in furtherance of their corrupt scheme, the Co-
17 Conspirator Defendants did in fact induce Facebook users to unwittingly share other
18 Facebook users' User Information via hundreds of thousands of separate electronic
19 monetary transfers.

20 134.  The Co-Conspirator Defendants willfully and knowingly devised a
21 scheme with artifice to defraud Facebook users and to obtain, sell, and use personal
22 User Information by false pretenses and representations, including, but not limited to,
23 the representation that the data would only be used for academic purposes.

24 135.  The payments made or directed by the Co-Conspirator Defendants or any
25 other entity to obtain Facebook data compromised in the YDL Breach were in
26 furtherance of the fraudulent scheme. On information and belief, those payments were
27 made by wire transfer or other electronic means through interstate or foreign
28 commerce.

35

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1      136.    The payments made from any of the Co-Conspirator Defendants or

2 directed by any Co-Conspirator to takers of the YDL quiz were in furtherance of the

3 fraudulent scheme. On information and belief, those payments were made by wire

4 transfer or other electronic means through interstate or foreign commerce.

5      137.    The acts of wire fraud averred herein constitute a pattern of racketeering

6 activity pursuant to 18 U.S.C. § 1961(5).

7      138.    The Co-Conspirator Defendants have directly and indirectly participated

8 in the conduct of the Conspiracy's affairs through the pattern of racketeering and

9 activity alleged herein, in violation of 18 U.S.C. § 1962(c). Facebook aided and abetted

10 the Co-Conspirator Defendants by misleading its users to believe that their data was

11 safe, while permitting third-party apps like GSR's to access and use the data of non-

12 consenting users without their permission and knowledge, and the other Co-

13 Conspirator Defendants directly participated in the conspiracy by misleading quiz-

14 takers that they were allowing Co-Conspirator Defendants' access to only their

15 personal data for academic purposes, when in fact they were allowing access to their

16 friends' data, and by fraudulently obtaining the data, selling it in interstate and foreign

17 commerce, and using it to influence elections.

18      139.    Plaintiffs and Class members were harmed by the Co-Conspirator

19 Defendants' conduct because the private information they did not intend to become

20 public or disclose to third parties was acquired by companies who intended to and did

21 use it illicitly for manipulating elections and other as yet unknown purposes.

22 Furthermore, the security breach put Plaintiffs and Class members in imminent and

23 real danger of having their identities stolen by anyone willing to pay these

24 unscrupulous companies for the data. In addition, Plaintiffs and class members spent

25 time and money securing their personal information and protecting their identities, by,

26 for instance, purchasing identity theft protection. The harm and value of the User

27 Information is made plain by the fact that Cambridge paid $7 million to acquire the

28 information.

COAST LAW GROUP LLP

36

1       140.   As a direct and proximate result of the Co-Conspirator Defendants'

2 racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and the Class

3 have been injured.

4       141.   Plaintiffs demand judgment in their favor and against the Co-Conspirator

5 Defendants jointly and severally for compensatory, treble, and punitive damages with

6 interest, the costs of suit and attorneys' fees, and other and further relief as this Court

7 deems just and proper.

8       142.   The actions of the Co-Conspirator Defendants were undertaken with

9 fraud, malice, or oppression, or with a willful and conscious disregard of the rights or

10 safety of Plaintiffs and class members. As such, Plaintiffs and each of the Class

11 members are entitled to an award of exemplary and punitive damages against each of

12 the Co-Conspirator Defendants in an amount according to proof at trial.

### FIFTH CAUSE OF ACTION
#### Intrusion Upon Seclusion
#### (Against All Defendants on behalf of the Nationwide Class)

16       143.   Plaintiffs re-allege and incorporate by reference the allegations contained

17 in the paragraphs above as if fully set forth herein.

18       144.   Plaintiffs and Class members input their private User Information onto

19 their individual Facebook profiles.

20       145.   Plaintiffs and Class members were given a false sense of security in their

21 private User Information by believing they had control over their Facebook profile

22 "privacy settings." Those settings prompt users to select who can see their posts, their

23 friend requests, their lists of friends, who can locate their profiles using their

24 designated email address and/or phone number, and whether search engines outside of

25 Facebook are permitted to link to their profiles. The categories of individuals who are

26 purportedly given access to the aforementioned information are Facebook friends,

27 "friends of [Facebook] friends," or the public at large.

37

1     146.   By inputting their User Information onto their individual Facebook
2  profiles, Plaintiffs and Class members thus have a reasonable expectation that they can
3  control who may access that information. By extension, they have a reasonable
4  expectation that only the individuals they designate to allow access to this information
5  will in fact have access to it. As Facebook puts it, Plaintiffs and Class members expect
6  to "own all of [their] information." With respect to everyone besides to whom Plaintiffs
7  and Class members give express permission to see particular information, their
8  reasonable expectation is for that information to remain private.

9     147.   By acquiring and using Plaintiffs' and Class members' User Information
10  from their Facebook accounts without their permission as alleged above, Defendants
11  intentionally intruded in Plaintiffs' and Class members' private information.

12     148.   Defendants' intrusion in and theft of Plaintiffs' and class members'
13  personal User Information from their Facebook accounts would be highly offensive to
14  a reasonable person in that (1) the Co-Conspirator Defendants stole a huge amount of
15  personal and private information about each person in order to effectively manipulate
16  American elections; (2) the Co-Conspirator Defendants were motivated by profit and
17  political ambition and their collective goal was to serve their own purposes of
18  manipulating the American political process and preying on people's fears and
19  subliminal motivations to distort their beliefs and ultimately undermine American
20  democracy; and (3) the intrusion occurred in the setting of Facebook, a social
21  networking platform which lured its users into a false sense of security because of
22  Facebook's own representations and policies which appeared to protect the data its
23  users share with their friends and family (and not with corporations attempting to
24  manipulate political elections through the use of misinformation and targeting of
25  digital political propaganda).

26     149.   Plaintiffs and Class members were harmed by Defendants' conduct
27  because the User Information they did not intend to become public was acquired by
28  entities and individuals for the illicit purpose of targeting digital political propaganda

COAST LAW GROUP LLP

38

CLASS ACTION COMPLAINT           CASE NO.: 8:18-cv-00571

1    to manipulate elections. Furthermore, the YDL Breach put Plaintiffs and class
2    members in imminent and real danger of having their identities stolen by anyone
3    willing to pay these unscrupulous companies for the use of the data. The magnitude of
4    harm to and the value of Plaintiffs' and class members' User Information is also
5    demonstrated by the fact that Cambridge paid $7 million to illicitly acquire the User
6    Information. Plaintiffs and members of the class have and will incur economic
7    damages relating to time and money spent remedying the breach, including, but not
8    limited to, monitoring their online presence to ensure that their identity has not been
9    stolen or coopted for an illicit purpose, any unauthorized charges made on financial
10   accounts, lack of access to funds while banks issue new cards, tax fraud, as well as the
11   costs of credit monitoring and purchasing credit reports.

12         150.   Defendants' conduct was a substantial factor in causing Plaintiffs' and
13   Class members' harm.

14         151.   Facebook and the Co-Conspirator Defendants aided and abetted
15   Cambridge's intrusion into Plaintiffs and Class members' private affairs because they
16   (1) knew or should have known about this intrusion; (2) gave substantial assistance to
17   the Co-Conspirators by allowing applications like those utilized by Kogan to access
18   user's friends' User Information without their consent and failing to notify their users
19   of the YDL Breach or otherwise attempting to stop the breach or control the User
20   Information leaked as a result thereof for at least two years; (3) Facebook's actions and
21   failure to act was a substantial factor in causing harm to Plaintiffs and Class members
22   because it had the capability of stopping the intrusion at any time, but knowingly failed
23   to do so.

24         152.   The actions of these Defendants were undertaken with fraud, malice, or
25   oppression, or with a willful and conscious disregard of the rights or safety of Plaintiffs
26   and Class members. As such, Plaintiffs and each of the Class members are entitled to
27   an award of exemplary and punitive damages against each of the Defendants in an
28   amount according to proof at trial.

39

CLASS ACTION COMPLAINT                          CASE NO.: 8:18-cv-00571

**SIXTH CAUSE OF ACTION**
**Violation of California Constitution Article I, Section I**
**(Against All Defendants on behalf of the California Class)**

153.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

154.   Plaintiffs and the Class members have reasonable expectations of privacy in their User Information.

155.   The reasonableness of such expectations of privacy is supported by Facebook's own data privacy policy set forth in its Statement of Rights and Responsibilities. As set forth above, those policies expressly inform users that they own all of their User Information and "can control how it is shared through [their] privacy and application settings." It is further supported by the clandestine and highly technical means utilized by the Defendants to gain access to User Information through the YDL Breach as discussed in detail above.

156.   Defendants intentionally intruded on and into Plaintiffs' and the Class members' solitude, seclusion, or private affairs. Facebook designed the application with corresponding privacy and application settings in such a way to lure its users into a false sense of comfort to expand their network of "friends" and thus increase users.

157.   These intrusions are highly offensive to a reasonable person. This is evidenced by, among other things, the sharp drop in Facebook stock shares following the whistleblowers' revelations of the acts described herein;[58] the calls by lawmakers in the United States and United Kingdom for Facebook CEO Mark Zuckerberg to answer regarding the YDL Breach; and the #deletefacebook movement by many to remove their Facebook accounts due to fear caused by the YDL Breach.

---

[58] https://www.thesun.co.uk/tech/5853280/facebook-share-price-value-latest-cambridge-analytica-stock-price/.

40

COAST LAW GROUP LLP

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1      158.   Plaintiffs and the Class members were harmed by the intrusion into their

2   private affairs as further detailed herein.

3      159.   Defendants' actions as alleged herein were a substantial factor in causing

4   the harm suffered by Plaintiffs and the Class members.

5      160.   As a result of Defendants' actions, Plaintiffs and the Class members seek

6   injunctive relief, as detailed in the prayer below and as set forth further in Plaintiffs'

7   accompanying Motion for Preliminary Injunction.

8      161.   As a result of Defendants' actions, Plaintiffs and the Class members

9   further seek nominal and punitive damages in amounts to be determined at trial. The

10   actions of these Defendants were undertaken with fraud, malice, or oppression, or with

11   a willful and conscious disregard of the rights or safety of Plaintiffs and class members.

12   As such, Plaintiffs and each of the Class members are entitled to an award of exemplary

13   and punitive damages against each of the Defendants in an amount according to proof

14   at trial.

15

16                        **SEVENTH CAUSE OF ACTION**
          **Violation of California Invasion of Privacy Act (Cal. Pen. Code § 637.7)**
17              **(Against All Defendants on behalf of the California Class)**

18      162.   Plaintiffs re-allege and incorporate by reference the allegations contained

19   in the paragraphs above as if fully set forth herein.

20      163.   Plaintiffs allege against all Defendants violations of California Penal

21   Code §§ 630, *et seq.*, the California Invasion of Privacy Act ("CIPA"), specifically

22   California Penal Code § 637.7 for the unlawful acquisition of Plaintiffs' and Class

23   members' User Information without their consent.

24      164.   The intent of the CIPA is set forth in California Penal Code § 630: "The

25   Legislature hereby declares that advances in science and technology have led to the

26   development of new devices and techniques for the purpose of eavesdropping upon

27   private communications and that the invasion of privacy resulting from the continual

28   and increasing use of such devices and techniques has created a serious threat to the

41

CLASS ACTION COMPLAINT                              CASE NO.: 8:18-cv-00571

1    free exercise of personal liberties and cannot be tolerated in a free and civilized
2    society."

3        165.    California Penal Code § 637.7 specifically prohibits the "electronic
4    tracking device to determine the location or movement of a person." "Electronic
5    tracking device" is defined as "any device attached to a vehicle or other movable thing
6    that reveals its location or movement by the transmission of electronic signals."

7        166.    Among the myriad of User Information maintained by Facebook and
8    harvested by the Co-Conspirators was the location of Plaintiffs and the Class members
9    while those individuals were running the Facebook application on their smartphone
10   devices.

11       167.    Plaintiffs and the Class members did not consent to the acquisition of
12   their location or movement information by Facebook or the Co-Conspirator
13   Defendants.

14       168.    Defendants' violations of CIPA occurred in California as Facebook is a
15   California business entity, and the agreement between Facebook and its users provides
16   for the application of California law.

17       169.    As a result of the Defendants' violations of California Penal Code §
18   637.7, Plaintiffs and the Class members are entitled to monetary relief in the amount
19   set forth in California Penal Code § 637.2(a) for each Class member.

20       170.    Pursuant to California Penal Code § 637.2(b), as a result of Defendants'
21   violations of California Penal Code § 637.7, Plaintiffs and the Class members are
22   further entitled to preliminary and permanent injunctive relief as set forth herein and
23   in the accompanying Motion for Injunctive Relief; declaratory relief; attorney's fees;
24   and costs of litigation.

25
26
27
28

COAST LAW GROUP LLP

42

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

1

2

3

**EIGHTH CAUSE OF ACTION**
Conversion
**(Against All Defendants on behalf of the Nationwide Class)**

4    171.    Plaintiffs re-allege and incorporate by reference the allegations contained

5  in the paragraphs above as if fully set forth herein.

6    172.    Plaintiff and Class members were the owners and possessors of their

7  User Information. As a result of the Defendants' wrongful conduct, Defendants have

8  interfered with the Plaintiffs' and Class members' right to possess and control such

9  property, to which they had a superior right of possession and control at the time of

10  conversion.

11    173.    As a direct and proximate result of Defendants' conduct, Plaintiffs and

12  Class members suffered injury, damage, loss or harm and therefore seek compensatory

13  damages.

14    174.    In converting Plaintiffs' User Information, Defendants acted with

15  malice, oppression, and in conscious disregard of the Plaintiffs' and Class members'

16  rights. Plaintiffs, therefore, seek an award of punitive damages on behalf of the Class.

17

18

19

**NINTH CAUSE OF ACTION**
**Unfair, Unlawful, and Fraudulent Business Acts and Practices Under**
**California Business & Professions Code §§ 17200, *et seq*.**
**(Against All Defendants on behalf of the Nationwide Class)**

20    175.    Plaintiffs re-allege and incorporate by reference the allegations contained

21  in the paragraphs above as if fully set forth herein.

22    176.    Defendants' acts and practices, as alleged in this Complaint, constitute

23  unfair, unlawful, and fraudulent business practices, in violation of the Unfair

24  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.

25    177.    Facebook represented that it would not disclose user's Personal

26  Information without consent and/or notice. Specifically, Facebook represented in the

27  Statement of Rights and Responsibilities to which even account holder is required to

28  assent at the time of registration that: "You own all of the content and information you

COAST LAW GROUP LLP

43

1   post on Facebook, and you can control how it is shared through your privacy and
2   application settings."

3       178.   Facebook also required application developers, like Cambridge, to obtain
4   and utilize users' Personal Information in specified, limited ways.

5       179.   Facebook failed to abide by these representations. Facebook did not
6   prevent improper disclosure of Plaintiffs' and the Class' Personal Information.

7       180.   Cambridge obtained Plaintiffs' and the Class' Personal Information
8   either wholly without authorization or in excess of any authorization it may have
9   obtained.

10      181.   As more fully described above, Defendants' acts of falsely portraying
11  themselves as collecting data for academic purposes constitutes an unfair business act
12  or practice within the meaning of Bus. & Prof. Code §§17200, *et seq.*, in that the
13  justification for Defendants' conduct is outweighed by the gravity of the consequences
14  to the general public. There were reasonable available alternatives for Defendants to
15  further their business interests than misleading the public about their true intent.
16  Indeed, the burden and expense of disclosing the actual reason for seeking User
17  Information would be minimal while the negative impact on the Class on the aggregate
18  is significant. Such conduct is also contrary to public policy, immoral, unethical,
19  oppressive, unscrupulous or substantially injurious to consumers.

20      182.   Defendants' conduct further constitutes "unfair" business acts and
21  practices because the practices are "likely to cause substantial injury" to Plaintiffs and
22  Class members, which are not "reasonably avoidable" by Plaintiffs and the Class and
23  the injury is "not outweighed" by the practice's benefits to Plaintiffs and the Class.
24  Such conduct is ongoing and continues to this date.

25      183.   Defendants' acts, omissions, and misrepresentations as alleged herein
26  also constitute a violation of the unlawful prong of the UCL as they failed to comport
27  with a reasonable standard of care and public policy as reflected in statutes such as:
28  Stored Communications Act, 18 U.S.C. §§ 2701; Cal. Pen. Code § 637.7; California

COAST LAW GROUP LLP

44

1    Civil Code § 1798.81.5(b); Section 5(a) of the Federal Trade Commission Act, 15
2    U.S.C. § 45(a); Violations of Racketeer Influenced and Corrupt Organizations Act, 18
3    U.S.C. § 1962(c); California Business & Professions Code § 22576 (as a result of
4    Facebook failing to comply with its own posted policies), and the California Customer
5    Records Act.

6        184.    Plaintiffs reserve the right to allege other violations of law that constitute
7    unlawful business acts or practices based upon the above-described conduct. Such
8    conduct is ongoing and continues to this date.

9        185.    As more fully described above, Defendants' acts and practices with
10   respect to their misrepresentations and omissions in falsely advertising the privacy of
11   the Facebook user information, have a tendency to deceive Plaintiffs and members of
12   the Class, thus constituting a fraudulent business act or practice. Plaintiffs allege on
13   information and belief such conduct is ongoing and continues to this date.

14       186.    Defendants knew, recklessly disregarded, or should have known that
15   their representations, omissions, and non-disclosures were false, misleading, untrue,
16   deceptive, or likely to deceive or mislead the public.

17       187.    Plaintiffs and the Class relied upon Defendants' material representations,
18   omissions, and non-disclosures to their detriment in that they would not have
19   downloaded the Facebook application and/or registered for Facebook accounts or
20   would not have continued to use their Facebook accounts had they known that
21   Facebook was disseminating and/or sharing their User Information in a manner
22   inconsistent with the Privacy Policy.

23       188.    Plaintiffs and the Class members suffered injury in fact and lost money
24   or property as the result of Defendants' unfair, unlawful, and fraudulent business
25   practices. In particular, Plaintiffs and Class members' Personal Information was taken
26   and is in the hands of those who will use it for their own advantage, or is being sold
27   for value, making it clear that the information is of tangible value. Plaintiffs and Class

28

45

COAST LAW GROUP LLP

1  members are therefore entitled to injunctive relief available under Business &
2  Professions Code § 17200, *et seq.*

3      189.    As a result of Defendants' unlawful business practices, Plaintiffs and the
4  Class are entitled to restitution, disgorgement of wrongfully obtained profits and
5  injunctive relief.

6      190.    Plaintiffs and the Class also seek recovery of their attorneys' fees
7  pursuant to California Code of Civil Procedure § 1021.5.

8
<div align="center">

**TENTH CAUSE OF ACTION**
**Negligence**
**(Against Facebook on behalf of the Nationwide Class)**
</div>

9
10

11      191.    Plaintiffs re-allege and incorporate by reference the allegations contained
12  in the paragraphs above as if fully set forth herein.

13      192.    Facebook owed Plaintiffs and members of the Class a legal duty to
14  exercise reasonable care in safeguarding and protecting the User Information it
15  collected and maintained of its users. This duty included, among other things,
16  maintaining and testing Facebook's security systems and taking other reasonable
17  security measures to protect and adequately secure the personal data of Plaintiffs and
18  the class from unauthorized access and use. Facebook's security system and
19  procedures for handling the personal User Information were intended to affect
20  Plaintiffs and the Class. Facebook was aware that by taking such sensitive information
21  of users, it had a responsibility to take reasonable security measures to protect the data
22  from being stolen and, in the event of theft, easily accessed.

23      193.    The duty Facebook owed to Plaintiffs and members of the class to protect
24  their personal User Information is also underscored by the California Customer
25  Records Act.

26      194.    Additionally, Facebook had a duty to timely disclose to Plaintiffs and
27  members of the Class that their personal User Information had been or was reasonably
28  believed to have been compromised and made accessible to unauthorized third parties,

<div align="center">46</div>

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1   including Cambridge. Timely disclosure is appropriate to enable Plaintiffs and
2   members of the Class to, among other things, monitor their online presence to ensure
3   it has not been coopted for illicit purposes; undertake appropriate measures to avoid
4   unauthorized charges on their debit card or credit card accounts; purchase credit
5   monitoring services; change or cancel their debit or credit card PINs (personal
6   identification numbers) to prevent or mitigate the risk of fraudulent cash withdrawals
7   or unauthorized transactions; and opt to delete their accounts entirely to insulate
8   themselves or their minor children from being targeted by misleading, manipulative,
9   or otherwise unwanted misinformation or political propaganda.

10      195.    There is a very close connection between Facebook's failure to take
11   reasonable security standards to protect its users' data and the injury to Plaintiffs and
12   the Class. If not for Facebook's negligence, the Co-Conspirator Defendants would not
13   have been able to steal Plaintiffs' and the Class's information and use it for their own
14   political purposes.

15      196.    Facebook is to blame for not protecting the User Information,
16   misrepresenting to its users how secure their User Information was, and by failing to
17   take reasonable security measures. If Facebook had taken reasonable security
18   measures, data thieves, like Cambridge, would not have been able to take the personal
19   User Information of over 87 million Americans and, in concert with the Co-
20   Conspirator Defendants, use it to manipulate the American people and undermine
21   American democracy.

22      197.    The policy of preventing future harm weighs in favor of finding a special
23   relationship between Facebook and the class. Facebook's users count on Facebook to
24   take reasonable efforts to secure their sensitive User Information and in fact are
25   encouraged to share such sensitive personal data with Facebook. If companies are not
26   held accountable for failing to take reasonable security measures to protect their
27   customers' personal information, they will not take the necessary steps to protect
28   against future breaches.

COAST LAW GROUP LLP

47

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1    198.   It was foreseeable that Facebook's failure to take reasonable security
2    measures would lead to the misappropriation of Plaintiffs' and class members' User
3    Information. In fact, on information and belief, Facebook had actual knowledge that
4    third-party applications including the YDL survey could and did steal the User
5    Information of users without those users' knowledge or consent. Large companies,
6    particularly social networking sites with millions of users such as Facebook, face a
7    significant threat of security breaches due in part to the large volume and type of data
8    they possess. Facebook should have known to take precautions to secure its users' User
9    Information, especially in light of the massive volume of data accumulated by
10   Facebook from its users.

11   199.   Facebook breached its duty to exercise reasonable care in protecting the
12   User Information of Plaintiffs and the Class by failing to implement and maintain
13   adequate security measures to safeguard its users' User Information, failing to
14   monitor its systems to identify suspicious activity or act on identified suspicious
15   activity, allowing unauthorized access to the personal information of Plaintiffs and
16   the Class, and failing to encrypt or otherwise prevent unauthorized reading of such
17   User Information.

18   200.   Facebook further breached its duty to timely notify Plaintiffs and the
19   Class about the data breach. Additionally, Facebook was, or should have been, aware
20   of unauthorized access to its users' User Information as early as 2014.

21   201.   But for Facebook's failure to implement and maintain adequate security
22   measures to protect its users' personal User Information and failure to monitor its
23   systems to identify suspicious activity or act on identified suspicious activity, the
24   User Information of Plaintiffs and members of the Class would not have been stolen,
25   and they would not be at a heightened risk of identity theft in the future.

26   202.   Facebook's negligence was a substantial factor in causing harm to
27   Plaintiffs and members of the Class.

28

48

CLASS ACTION COMPLAINT                              CASE NO.: 8:18-cv-00571

1    203.    As a direct and proximate result of Facebook's failure to exercise
2  reasonable care and use commercially reasonable security measures, the User
3  Information of current and former Facebook users was accessed by unauthorized
4  individuals who could use the information to commit identity fraud, medical fraud, or
5  debit and credit card fraud. Plaintiffs and the Class face a heightened risk of identity
6  theft in the future.

7    204.    As a further direct and proximate result of Facebook's failure to exercise
8  reasonable care and use commercially reasonable security measures, User Information
9  of millions of current and former Facebook users such as Plaintiffs' was disclosed
10 without their authorization. This illicit disclosure of Plaintiffs' and the Class members'
11 User Information constituted an injury as said personal information has an actual and
12 ascertainable value. The inherent value of the User Information is substantiated by the
13 $7 million Cambridge and SCL Group paid to acquire the data, in addition to $1 million
14 paid to GSR.

15   205.    Plaintiffs and members of the Class have also suffered economic
16 damages, including the purchase of credit monitoring services they would not have
17 otherwise purchased.

18   206.    Neither Plaintiffs nor other members of the Class contributed to
19 Facebook's breach(es), nor did they contribute to Facebook's employment of
20 insufficient security measures to safeguard their User Information.

21
22                          **ELEVENTH CAUSE OF ACTION**
                                   **Negligence Per Se**
23                  **(Against Facebook on behalf of the Nationwide Class)**

24   207.    Plaintiffs re-allege and incorporate by reference the allegations contained
25 in the paragraphs above as if fully set forth herein.

26   208.    Plaintiffs allege Facebook owed Plaintiffs and the members of the class
27 the duties of care as set forth in the preceding cause of action.

28

                                        49

COAST LAW GROUP LLP

1    209.   Plaintiffs allege Facebook was and is subject to various California and
2    federal laws pertaining to safeguarding personal data including User Information to
3    the California Consumer Records Act (Cal. Civ. Code §§ 1798.80, *et seq.*); the
4    California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); the
5    Stored Communications Act (18 U.S.C. §§ 2701, *et seq.*); Section 5(a) of the Federal
6    Trade Commission Act (15 U.S.C. § 45(a)); and California Business & Professions
7    Code § 22576 (as a result of Facebook failing to comply with its own posted policies)
8    and that such laws were intended to prevent the type of harm suffered by the Plaintiffs
9    and Class members as alleged herein.

10   210.   Plaintiffs and Class members allege that they are members of a class
11   composed of Facebook users for whose benefit those laws were passed.

12   211.   As further alleged herein, Plaintiffs allege that Facebook did in fact
13   violate one or more of the aforementioned laws and as such breached its duty of care
14   owed to the Plaintiffs and Class members as set forth above.

15   212.   Plaintiffs and the class members suffered the same type of harm that the
16   laws were intended to prevent resulting in harm, including the illicit misappropriation
17   of Plaintiffs' and the Class members' User Information in order to target them with
18   misleading, manipulative, or otherwise unwanted misinformation and political
19   propaganda designed to improperly influence the outcome of elections in America.

20   213.   As a further direct and proximate result of Facebook's failure to exercise
21   reasonable care and use commercially reasonable security measures, the User
22   Information of current and former Facebook users was accessed by unauthorized
23   individuals who could use the information to commit identity fraud, medical fraud, or
24   debit and credit card fraud. Plaintiffs and the class face a heightened risk of identity
25   theft in the future.

26   214.   Facebook's violations of one or more of the aforementioned laws were a
27   substantial factor in bringing about the harms suffered by the Plaintiffs and Class
28   members.

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

## TWELFTH CAUSE OF ACTION
### Breach of Written Contract
### (Against Defendant Facebook on behalf of the Nationwide Class)

215.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

216.    In order to register as users of Facebook, Plaintiffs and the Class were required to, and did, affirmatively assent to its Terms and Conditions and Privacy Policy (the "Agreement").

217.    The Agreement's provisions constitute a valid and enforceable contract between Plaintiffs and the Class on the one hand, and Facebook on the other.

218.    Under the Agreement, Plaintiffs and the Class transmitted sensitive personal information, including personally identifiable information, to Facebook in exchange for use of Facebook and Facebook's promise that it would not share that personal information with third parties, including but not limited to advertisers, without their authorization.

219.    Specifically, the Agreement provides that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings." Facebook breached this provision as alleged herein.

220.    Facebook users effectively pay for Facebook's services through their provision of their sensitive personal information into Facebook's safekeeping.

221.    Facebook's users exchange something valuable, providing Facebook with access to their sensitive and unique personal information, and in return, Facebook's users obtain access to Facebook's services.

222.    A material consideration for Plaintiffs' transmission of their sensitive personal information to Facebook is Facebook's promise to safeguard their sensitive personal information.

COAST LAW GROUP LLP

51

223. In particular, Facebook promised that any personal information submitted by its users would only be disclosed to other users and third parties in the specific ways and circumstances set forth in Facebook's privacy policy and with user consent.

224. Facebook materially breached the terms of the Agreement through its unlawful conduct alleged herein, including its disclosure of Plaintiffs' and the Class's sensitive personal information to Cambridge.

225. As a result of Facebook's misconduct and breach of the Agreement described herein, Plaintiffs and the Class suffered damages.

226. Plaintiffs and the Class members did not receive the benefit of the bargain for which they contracted and for the transmission of their sensitive and unique personal information, which, as alleged above, has ascertainable value to be proven at trial.

227. Plaintiffs and each Class member gave up something of value, their sensitive User Information, in exchange for access to Facebook and Facebook's privacy promises.

228. Facebook materially breached the Agreement by violating its privacy terms, thus depriving Plaintiffs and Class members the benefit of the bargain.

229. Thus, Plaintiffs' and the Class members' actual and appreciable damages consist of the value of their sensitive User Information that Facebook wrongfully shared with Cambridge through Facebook's unauthorized consent, neglect or recklessness.

230. The sensitive personal information captured by Facebook and disclosed to Cambridge was an exceptionally egregious breach of trust between Facebook, Plaintiffs and the Class members because their sensitive User Information included such valuable and personal data as voting preferences, political opinions, psychological profiles and vulnerabilities, preferred news sources related to political

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

1    candidates as well as economic, religious and doctrinal issues that all related to the
2    2016 election cycle.

3       231.    Facebook's breach was exacerbated by Cambridge's efforts to illegally,
4    deceptively, and improperly influence the 2016 Presidential election.

5       232.    Plaintiffs seek damages based on Facebook's breach of the Agreement
6    and disgorgement from Facebook of the proceeds that Facebook wrongfully obtained
7    by breaching the Agreement.

8       233.    Plaintiffs also seek damages which flow directly from Facebook
9    allowing Cambridge to improperly influence the 2016 Presidential election.

10       234.    WHEREFORE, Plaintiffs and a nationwide class of Facebook users are
11    entitled to damages, injunctive relief and equitable relief to remedy the above-
12    described misconduct.

13                   **PRAYER FOR RELIEF**

14       WHEREFORE, Plaintiffs pray this Court for the following relief:

15       A.     That this action be certified and maintained as a class action under Rule
16    23 of the Federal Rules of Civil Procedure and certify the proposed class as defined,
17    appointing Plaintiffs as representatives of the Class, and appointing the attorneys and
18    law firms representing Plaintiffs as counsel for the Class;

19       B.     For an Order declaring Defendants' conduct as detailed above is violative
20    of the law and enjoining Defendants from continuing these acts;

21       C.     For injunctive relief against Facebook pursuant to California Civil Code
22    § 1798.84(e);

23       D.     For a preliminary and permanent injunction enjoining Defendants, and
24    each of them, and their agents, servants, and employees, and all persons acting under,
25    in concert with, or for Requiring disclosure of facts and extent of YDL Breach to all
26    those affected, including "friends of friends" of users;

27

28

COAST LAW GROUP LLP

53

CLASS ACTION COMPLAINT          CASE NO.: 8:18-cv-00571

COAST LAW GROUP LLP

1  E.  For a preliminary and permanent injunction ordering disclosure of all

2 data collected by Defendants from Plaintiffs and proposed class members within ten

3 (10) days upon request thereof;

4  F.  For a preliminary and permanent injunction ordering disgorgement by

5 Defendants of all data collected by Plaintiffs and proposed Class members within ten

6 (10) days upon request;

7  G.  For compensatory, damages, and punitive damages in favor of Plaintiffs

8 and proposed Class members;

9  H.  For statutory damages in the amount of $1,000 for each Plaintiff and

10 proposed Class members pursuant to 18 U.S.C. § 2707(c);

11  I.  For costs of this action, including reasonable attorneys' fees and

12 expenses;

13  J.  For pre-judgment and post-judgment interest at the legal rate; and

14  K.  For such other and further legal and equitable relief as this Court may

15 deem just and proper.

16           **JURY DEMAND**

17   Plaintiffs demand a trial by jury on all issues so triable.

18           Respectfully submitted,

19 Dated: April 4, 2018     **COAST LAW GROUP LLP**

20           HELEN I. ZELDES (220051)

            AMY C. JOHNSGARD (279795)

21           ANDREW J. KUBIK (246902)

22           BEN TRAVIS (305641)

23           _/s/Helen I. Zeldes_

24           HELEN I. ZELDES

25           1140 S. Coast Highway 101

26           Encinitas, California 92024

            Telephone: (760) 942-8505

27           Facsimile: (760) 942-8515

28

CLASS ACTION COMPLAINT      CASE NO.: 8:18-cv-00571

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COAST LAW GROUP LLP

**CUNEO GILBERT & LaDUCA LLP**
CHARLES J. LADUCA
4725 Wisconsin Ave., NW
Suite 200
Washington, D.C. 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813

**CUNEO GILBERT & LaDUCA LLP**
MICHAEL J. FLANNERY (196266)
7733 Forsyth Boulevard,
Suite 1675
St. Louis, MO 63105
Telephone: 314-226-1015
Facsimile: 202-789-1813

**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
PAUL L. HOFFMAN (71244)
AIDAN C. McGLAZE (277270)
11543 W. Olympic Blvd
Los Angeles, CA 90064
Telephone: (310) 396-0731
Facsimile: (310)399-7040

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619-339-1100
Facsimile: 619-338-1101

*Attorneys for Plaintiffs and the Proposed Class*

55

CLASS ACTION COMPLAINT                    CASE NO.: 8:18-cv-00571

# EXHIBIT D

## U.S. District Court
## Northern District of Alabama (Southern)
## CIVIL DOCKET FOR CASE #: 2:18-cv-00535-RDP

Williams v. Facebook Inc et al
Assigned to: Judge R David Proctor
Cause: 42:1983 Civil Rights Act

Date Filed: 04/04/2018
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

### Plaintiff

**Jackie Williams**
*on behalf of herself and all others similarly
situated*

represented by **J Bradley Ponder**
MONTGOMERY PONDER, LLC
2226 1st Avenue South
Unit 105
Birmingham, AL 35233
205-201-0303
Fax: 205-208-9443
Email: brad@montgomeryponder.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucas C Montgomery**
MONTGOMERY PONDER LLC
2421 2nd Ave North, Unit 1
Birmingham, AL 35203
205.419.793/201.0303
Fax: 205.208.9443
Email: luke@montgomeryponder.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant
**Facebook Inc**

### Defendant
**Cambridge Analytica LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2018 | 1 | COMPLAINT against Cambridge Analytica LLC, Facebook Inc, filed by Jackie Williams. (KAM) (Entered: 04/05/2018) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 04/05/2018 12:21:47 | | |
| PACER | gi000234:2554876:4036719 Client | 30993-00083 |

| Login: | | Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:18-cv-00535-RDP |
| Billable Pages: | 1 | Cost: | 0.10 |

FILED

2018 Apr-05  AM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JACKIE WILLIAMS, on behalf of herself and all others similarly situated,** | **Case No.:** _____ |
| **Plaintiff,** | |
| v. | **CLASS ACTION COMPLAINT** |
| **FACEBOOK, INC. and CAMBRIDGE ANALYTICA, LLC,** | |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Jackie Williams, by and through undersigned counsel, files this Class Action Complaint against Defendants Facebook, Inc. ("Facebook") and Cambridge Analytica, LLC ("CA") (collectively "Defendants"), on behalf of herself and all others similarly situated, as described below.

### NATURE OF THE CASE

1.    This case is about an unprecedented attack on democracy.  The Defendants conspired and secretly used Personal Information[1] to influence the numerous elections across the nation, including the 2016 Presidential election.  Facebook allowed CA to "mine" the highly-sensitive profile data from over 50 million Facebook users in order manipulate voters in the hopes of controlling the results of the elections.  CA used this mined Personal Information to unleash a highly-targeted and inflammatory advertisement campaign meant to influence the elections.

---

[1] Personal Information, as used herein, includes at least the following Facebook user data for the Plaintiff and Class Members: about me, actions, activities, birthday, check-ins, education history, events, games activity, groups, hometown, interests, likes, location, notes online presence, photo and video tags, photos, questions, relationship details, relationships, religion, politics, status, subscriptions, website, and work history.

1

2.      Defendants' conduct shows an utter disregard for privacy and protection of Facebook users' Personal Information. To be clear, this Personal Information was supposed to be protected, and used for only expressly disclosed and limited purposes. However, Defendants exceeded whatever limited authorization they had been granted by allowing the improper collection and use of the Personal Information. Facebook knew this improper data collection was occurring and how the Personal Information would eventually be used. However, Facebook failed to stop it, or purposely avoided monitoring the eventual uses of the Personal Information in order to profess ignorance at a later date.

3.      By accessing and unlawfully using this highly sensitive, personal information, the Defendants greatly exceed the limited authorization granted by Facebook users. This conduct constitutes a violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*. ("SCA"), Alabama Deceptive Trade Practices Act ("ADTPA"), and common law.

4.      This case presents a prototypical situation for class treatment. Defendants' conduct—including all relevant authorizations, practices, conduct, representations, and omissions—is uniform among all class members. The application of this common course of conduct to shared law will determine liability for the class as a whole, ensuring that the rights of thousands are vindicated through the efficiency of a single trial.

## PARTIES

5.      Plaintiff Jackie Williams is a citizen of Alabama who resides in Jefferson County, Alabama. Plaintiff's experience with the conduct complained of herein is typical of the experience of the putative class. Plaintiff created a Facebook account on or about 2010, and has maintained the account to the present day. Furthermore, Plaintiff recalls seeing numerous ads on Facebook related to the 2016 elections, including the United States Presidential Election.

2

6. Defendant Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California, and which does business in this judicial district. Its registered agent in Alabama is Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104. Facebook operates an online social media and social networking service that allows people to communicate with their family, friends, and coworkers.

7. Defendant Cambridge Analytica, LLC is a Delaware limited liability company with its principal place of business in New York, New York, and which does business in this judicial district. CA is political consulting group that combines data mining, data brokerage, and data analysis with strategic communication for the electoral process.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, for claims that arise under the Stored Communications Act, 18 U.S.C. § 2701 *et seq*.

9. Furthermore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Defendants are citizens of a state other than the state of which Plaintiff is a citizen. Plaintiff, on behalf of itself and the Class, seeks more than $5,000,000, and has a good faith basis to believe that more than $5,000,000 is at issue in this case.

10. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue in this case is proper under 28 U.S.C. § 1391 in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

12.     The Court has personal jurisdiction because Defendants conduct business in this

District and a substantial part of the events and injuries giving rise to the Plaintiff's claims occurred

in this District.

## FACTUAL ALLEGATIONS

13.     Facebook unlawfully shared the Personal Information from tens of millions of users

with CA, which used this data in excess of any authorization in an effort to manipulate 2016

elections across the nation, including the 2016 Presidential Election. The Washington Post recently

reported that Facebook allowed an app developer working for CA "to gain access to information

about an estimated tens of millions of people. The group included both the 270,000 Facebook users

who downloaded a psychological testing app and the Facebook "friends" of those people."[2]

14.     Facebook announced on April 4, 2018, that most of its 2 billion users likely have

had their personal information scraped by outsiders without the users' explicit permission.[3] The

Washington Post reported:

> As part of the disclosure, Facebook for the first time detailed the scale of the
> improper data collection for Cambridge Analytica, a political data consultancy
> hired by President Trump and other Republican candidates in the last two federal
> election cycles. The political consultancy gained access to Facebook information
> on up to 87 million users, most of them Americans, Facebook said. Cambridge
> Analytica obtained the data to build "psychographic" profiles that would help
> deliver targeted messages intended to shape voter behavior in a wide range of U.S.
> elections.
>
> …

---

[2] Craig Timberg & Tony Romm, *Facebook may have violated FTC privacy deal, say former federal officials,
triggering risk of massive fines*, Wash. Post, March 18, 2018, *available at*
https://www.washingtonpost.com/news/the-switch/wp/2018/03/18/facebook-may-have-violated-ftc-privacy-deal-
say-former-federal-officials-triggering-risk-of-massive-fines/?utm_term=.d94857f6568f.

[3] *See* Craig Timberg, Tony Romm, & Elizabeth Dwoskin, *Facebook said the personal data of most its 2 billion
users has been collected and shared with outsiders*, April 4, 2018, *available at*
https://www.washingtonpost.com/news/the-switch/wp/2018/04/04/facebook-said-the-personal-data-of-most-its-2-
billion-users-has-been-collected-and-shared-with-outsiders/?utm_term=.f383e3303a96.

4

The data obtained by Cambridge Analytica was more detailed and extensive, including the names, home towns, work and educational histories, religious affiliations and Facebook "likes" of users, among other data.

Facebook initially had sought to downplay the problem, saying in March only that 270,000 people had responded to a survey on an app created by the researcher in 2014. That netted Cambridge Analytica the data on the friends of those who responded to the survey, without their permission. But Facebook declined to say at the time how many other users may have had their data collected in the process. The whistleblower, Christopher Wylie, a former researcher for the company, said the real number of affected people was at least 50 million.[4]

15. In another report, The Guardian published a report explaining an elaborate voter targeting program developed and used by CA to influence voter preferences in the 2016 presidential election for the United States for the benefit of then candidate Donald Trump.[5] The Guardian's report details CA's voter targeting techniques using information the newspaper acquired from former CA employee and whistleblower named Christopher Wylie.[6]

16. Wylie has personal knowledge of the scheme, because he was a lead engineer in the project and was employed by CA. Wylie explained the scheme in detail.[7] According to the report, CA used a massive database, filled with Facebook users' covertly acquired Facebook data, to target voters with information that was designed to manipulate or influence their voting preferences.

17. Another report from The Guardian explained exactly how the Personal Information was harvested:

Aleksandr Kogan, separately from his work at Cambridge University. Through his company Global Science Research (GSR), in collaboration with Cambridge Analytica, hundreds of thousands of users were paid to take a personality test and agreed to have their data collected for academic use.

---

[4] *Id.*

[5] *See* Carole Cadwalladr, '*I made Steve Bannon's psychological warfare tool': meet the data war whistleblower,* The Guardian, March 18, 2018, *available at* https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.

[6] *Id.*

[7] *Id.*

5

However, the app also collected the information of the test-takers' Facebook friends, leading to the accumulation of a data pool tens of millions-strong. Facebook's "platform policy" allowed only collection of friends' data to improve user experience in the app and barred it being sold on or used for advertising. The discovery of the unprecedented data harvesting, and the use to which it was put, raises urgent new questions about Facebook's role in targeting voters in the US presidential election. It comes only weeks after indictments of 13 Russians by the special counsel Robert Mueller which stated they had used the platform to perpetrate "information warfare" against the US.[8]

18.     Facebook allowed this activity via its "friends permission" functionality.

"…[Kogan] advertised for people who were willing to be paid to take a personality quiz on Amazon's Mechanical Turk and Qualtrics. At the end of which Kogan's app, called thisismydigitallife, gave him permission to access their Facebook profiles. And not just theirs, but their friends' too. On average, each 'seeder' – the people who had taken the personality test, around 320,000 in total – unwittingly gave access to at least 160 other people's profiles, none of whom would have known or had reason to suspect."[9]

19.     Kogan did all of this in the employ and as an agent of CA to help aggregate a

massive dataset that would allow CA to target users for the purpose of influencing their political

preferences through advertising and misinformation. According to the report, "email

correspondence between CA employees and Kogan, [shows] that Kogan had collected millions of

profiles in a matter of weeks. But neither Wylie nor anyone else at CA had checked that it was

legal."[10]

20.     According to the New York Times,

[Kogan] ultimately provided over 50 million raw profiles to the firm, Mr. Wylie said, a number confirmed by a company email and a former colleague. Of those, roughly 30 million — a number previously reported by The Intercept — contained enough information, including places of residence, that the company could match users to other records and build psychographic profiles. Only about 270,000 users

---

[8] *See* Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 million Facebook profiles harvested for Cambridge Analytica in major data breach,* The Guardian, March 17, 2018, *available at* https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.
[9] Cadwalladr, *supra* note 3.
[10] *Id.*

6

— those who participated in the survey — had consented to having their data harvested. [11]

21.    Facebook knew about the data extraction. According to Wylie, "[Facebook's] security protocols were triggered because Kogan's apps were pulling this enormous amount of data, but apparently Kogan told them it was for academic use. So they were like, 'Fine'." [12] However, the data extraction was not for academic use, it was for commercial use by Kogan and CA.

22.    Facebook first learned that the data extraction was not for academic use when the Guardian published its first report about CA acquiring Facebook data and using it to support Ted Cruz in his campaign to be the United States Republican candidate. [13] This report was published in December 2015, but Facebook failed to take action until months later, "And then, all they did was write a letter." [14] In August 2016, "Facebook lawyers wrote to Wylie, who left CA in 2014, and told him the data had been illicitly obtained and that 'GSR was not authorized to share or sell it'. They said it must be deleted immediately." [15] However, Facebook took made no effort to confirm the data was actually deleted. Wylie told The Guardian, "'I already had. But literally all I had to do was tick a box and sign it and send it back, and that was it,' says Wylie. 'Facebook made zero effort to get the data back.' There were multiple copies of it. It had been emailed in unencrypted files." [16]

---

[11] Matthew Rosenberg, Nicholas Confessore, & Carole Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. Times, March 17, 2018, *available at* https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.

[12] Cadwalladr, *supra* note 3.

[13] Ben Jacobs, "*Ted Cruz using firm that harvested data on millions of unwitting Facebook users*," The Guardian (December 11, 2015), *available at* https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data.

[14] *Id.*

[15] Cadwalladr, *supra* note 3.

[16] *Id.*

23.     A spokesperson for Facebook told the Guardian, "If these reports are true, *it's a serious abuse of our rules.* Both Aleksandr Kogan as well as the SCL Group and CA certified to us that they destroyed the data in question."[17] Mark Zuckerberg, Facebook's CEO, admitted in an interview on CNN on March 21, 2018, "This was a major breach of trust, and I'm really sorry that this happened. You know, we have a basic responsibility to protect people's data and if we can't do that then we don't deserve to have the opportunity to serve people."[18]

24.     Facebook's egregious conduct related to the protection of its users' Personal Information has triggered an investigation by the Federal Trade Commission and Congress. On March 19, 2018, Bloomberg published an article entitled "FTC Probing Facebook For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission ("FTC") is "probing whether Facebook violated terms of a 2011 consent decree of its handling of user data that was transferred to Cambridge Analytica without [user] knowledge."[19] Under the 2011 settlement with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal chargers that is deceived consumers and forced them to share more Personal Information than they intended." The article further stated that "if the FTC finds Facebook violated terms of the consent decree, it has the power to fine the company more than $40,000 a day per violation."[20]

25.     Defendant Facebook's "Data Use Policy," that was effective at the time, stated in part:

---

[17] *Id.*

[18] *See* Danielle Wiener-Bronner, *Mark Zuckerberg has regrets: 'I'm sorry that this happened'*, CNN (March 21, 2018), *available at* http://money.cnn.com/2018/03/21/technology/mark-zuckerberg-apology/index.html.

[19] David McLaughlin, Ben Brody, & Billy House, *Facebook Draws Scrutiny From FTC, Congressional Committees*, Bloomberg (March 20, 2018), available at https://www.bloomberg.com/news/articles/2018-03-20/ftc-said-to-be-probing-facebook-for-use-of-personal-data.

[20] *Id.*

### How we use the information we receive

We use the information we receive about you in connection with the services and features we provide to you and other users like your friends, our partners, the advertisers that purchase ads on the site, and the developers that build the games, applications, and websites you use. For example, in addition to helping people see and find things that you do and share, we may use the information we receive about you:

- as part of our efforts to keep Facebook products, services and integrations safe and secure;
- to protect Facebook's or others' rights or property;
- to provide you with location features and services, like telling you and your friends when something is going on nearby;
- to measure or understand the effectiveness of ads you and others see, including to deliver relevant ads to you;
- to make suggestions to you and other users on Facebook, such as: suggesting that your friend use our contact importer because you found friends using it, suggesting that another user add you as a friend because the user imported the same email address as you did, or suggesting that your friend tag you in a picture they have uploaded with you in it; and
- or internal operations, including troubleshooting, data analysis, testing, research and service improvement.[21]

26.     Defendant Facebook's "Data Use Policy" stated:

While you are allowing us to use the information we receive about you, you always own all of your information. Your trust is important to us, which is why we don't share information we receive about you with others unless we have:

- received your permission;
- given you notice, such as by telling you about it in this policy; or
- removed your name and any other personally identifying information from it.[22]

27.     The Federal Trade Commission issued guidance on how to appropriately respond

to data breaches, titled "Data Breach Response: A Guide for Business," in which it advises, "When

---

[21] *Data Use Policy*, Facebook, Inc. (Date of Last Revision: November 15, 2013), https://www.facebook.com/full_data_use_policy.
[22] *Id.*

your business experiences a data breach, notify law enforcement, other affected businesses, and affected individuals."[23]

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this lawsuit as a putative class action on behalf of herself and all others similarly situated as members of the proposed Class(es), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

29.     The proposed Class is defined as:

> All individuals in the United States who registered for Facebook accounts and whose Personal Information was obtained from Facebook without authorization or in excess of authorization.

30.     The proposed Alabama Subclass is defined as:

> All individuals in Alabama who registered for Facebook accounts and whose Personal Information was obtained from Facebook without authorization or in excess of authorization.

31.     Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's staff; and (3) governmental entities.

32.     Plaintiff maintains the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, further divided into subclasses, or modified in any other way.

### A.     Numerosity

33.     As described above, Plaintiff reasonably believes that there are more than 80 million people who have been affected by Defendants' wrongdoing. The number of potential Class

---

[23] FEDERAL TRADE COMMISSION, "Data Breach Response: A Guide for Business" (2016).

Members is enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits and efficiencies to all parties and to the Court. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, and/or can readily self-identify based upon objective criteria.

**B.    Typicality**

34.    Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff and the Class Members were injured through the uniform misconduct by Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class Members arise from the same operative facts and are based on the same legal theories. The factual bases of Defendants' misconduct are common to all Class Members and represent a common course of misconduct resulting in injury to all Class Members.

**C.    Adequate Representation**

35.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation, including consumer and commercial class actions.

36.    Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has interests adverse to those of the Class.

**D.    Predominance of Common Issues**

37.    There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members, the

answers to which will advance resolution of the litigation as to all Class Members. These common

legal and factual issues include, but are not limited to, the following:

- a.    Whether Facebook had a duty to safeguard the Personal Information of its users;

- b.    Whether CA's use of Personal Information Exceeded Any Authorization by Facebook users;

- c.    Whether Facebook was aware of CA's use of Personal Information;

- d.    Whether CA's use of Personal Information was improper;

- e.    Whether Facebook took reasonable steps to ensure CA's proper use of Personal Information;

- f.    Whether Facebook had a duty to monitor and monitor the use its users Personal Information;

- g.    Whether Defendants' conduct was negligence;

- h.    Whether Defendants' conduct constitutes a civil conspiracy;

- i.    Whether Plaintiff and Class Members were the owners and possessors of their Personal Information;

- j.    Whether Defendants' conduct constitutes a conversion;

- k.    Whether Defendants have engaged in other unconscionable, false, misleading, or deceptive act or practice through the handling of Facebook users' Personal Information;

- l.    Whether Defendants acted knowingly in their deceptive and misleading conduct;

m.  Whether Defendants' conduct violates the Alabama Deceptive Trade
    Practice Act, Alabama Code §§ 8-19-1, *et seq.*;

n.  Whether Defendants' conduct violates the Alabama's Right to Publicity
    Act, Alabama Code § 6-5-770, *et seq.*;

o.  Whether Class Members' Personal Information was obtained by CA;

p.  Whether Defendants' conduct violated the SCA, 18 U.S.C. §§ 2701, *et
    seq.*; and

q.  Whether Plaintiff and Class Members are entitled to actual, statutory, or
    other forms of damages, and other monetary relief.

## E.  Superiority

38.     Plaintiff and Class Members have all suffered and will continue to suffer damages
as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other
available methods for the fair and efficient adjudication of this controversy.

39.     Absent a class action, most Class Members would likely find the cost of litigating
their claims prohibitively high and would therefore have no effective remedy at law. Because of
the relatively small size of an individual Class Member's claims, it is likely that only a few Class
Members could afford to seek legal redress for Defendants' misconduct.

40.     Class treatment of common questions of law and fact would also be a superior
method to multiple individual actions or piecemeal litigation in that class treatment will conserve
the resources of the courts and the litigants, and will promote consistency and efficiency of
adjudication.

## COUNT ONE
### VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq.
### (Against Facebook)

41. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

42. The SCA allows a private right of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." See 18 U.S.C. § 2701(a); *see also* 18 U.S.C. § 2707(a). The court may assess damages under the SCA including "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c).

43. The Stored Communications Act prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage." The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

44. Facebook is a "person" within the meaning of the SCA.

45. The servers Facebook uses to provide its electronic communications service to Facebook users are a "facility" within the meaning of the SCA. Moreover, due to the structure and

14

design of Facebook's servers, the sharing of personal data among Facebook users results in and constitutes interstate data transmissions.

46. Facebook exceeded any authorization it may have had related to Plaintiff and Class Members' stored electronic communications by its unlawful collection, disclosure, and divulging of the content of Plaintiff and Class Members' communication and information to third parties, including CA.

47. As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to statutory damages, actual damages, and reasonable attorney's fees and costs, as well as declaratory and injunctive relief.

## COUNT TWO
## VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq.
## (Against CA)

48. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

49. The Stored Communications Act prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage." The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

50. CA is a "person" within the meaning of the SCA.

51. The servers Facebook uses to provide its electronic communications service to Facebook users are a "facility" within the meaning of the SCA.

15

52. The acquisition of Plaintiff and Class Members' Personal Information, which constitutes a "communication" pursuant to the SCA, by CA exceeded authorization to the Personal Information at issue in this lawsuit.

53. As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to statutory damages, actual damages, and reasonable attorney's fees and costs, as well as declaratory and injunctive relief.

## COUNT THREE
## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT, ALABAMA CODE § 8-19-1, *et seq.* (On Behalf of Alabama Subclass)

54. All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

55. Facebook's marketing, promotion, and advertising of its social networking service constitutes trade or commerce affecting the people of Alabama within the definition of Alabama Code §§ 8-19-3 and 8-19-5.

56. CA's marketing, promotion, and advertising of data unlawfully collected from Facebook and sold campaigns, including Donald Trump's 2016 Presidential Campaign, constitutes trade or commerce affecting the people of Alabama within the definition of Alabama Code §§ 8-19-3 and 8-19-5.

57. Facebook and CA are both considered a "person" as within the definition of Alabama Code § 8-19-3.

58. Plaintiff and each member of the putative Alabama Class is a "consumer" within the definition of Alabama Code § 8-19-3.

59.     As set out herein, Facebook and CA have each engaged in deceptive practices in

the course of its business through the collection, distribution, and selling of its users' Personal

Information, including by:

> a.     exceeded any authorization it may have had related to Plaintiff and Class
> Members' stored electronic communications by its unlawful collection,
> disclosure, use, selling, and divulging of Plaintiff and Class Members'
> Personal Information. Alabama Code § 8-19-5(25, 27));
>
> b.     engaging in other unconscionable, false, misleading, or deceptive acts or
> practices, as described herein. Alabama Code § 8-19-5(27);

60.     Defendants' acted knowingly, with actual awareness or such awareness as a

reasonable person should have considering all the surrounding circumstances.

61.     Defendants do not maintain a place of business and does not keep assets in

Alabama.

62.     Neither Plaintiff, nor any member of the putative Alabama Class, reasonably could

have discovered (or did in fact discover) the nature of the deceptive conduct described herein.

As a direct result of Defendants' violations of the Alabama Deceptive Trade Practices Act, Plaintiff

and each member of the putative class has been damaged.

63.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class

Members suffered injury and are entitled to the damages owed to them, including:

> a.     Any actual damages sustained by Plaintiff, or the sum of $100, whichever
> is greater;
> b.     Three times actual damages;
> c.     Appropriate injunctive relief;
> d.     Statutory interest;
> e.     Attorneys' fees and costs; and
> f.     Such other and further relief as the Court deems proper.

## COUNT FOUR
## VIOLATION OF ALABAMA RIGHT TO PUBLICITY ACT,
## ALABAMA CODE § 6-5-770, *et seq.*
## (On Behalf of Alabama Subclass)

64. All allegations and paragraphs in this complaint are incorporated by reference. To

the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

65. Alabama's Right to Publicity Act (ARPA) protects the right of publicity of any

indicia of identity. An "indicia of identity" is defined as including "those attributes of a person

that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not

limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation

of one or more of those attributes." Ala. Code § 6-5-771(1).

66. Facebook and CA are considered Persons under ARPA. Ala. Code § 6-5-771(2).

67. ARPA prohibits any person or entity from using Personal Information for purposes

of advertising, fund-raising or solicitation of donations. Specifically, the ARPA states:

Liability for use of indicia of identity without consent.

(a) Except as otherwise provided in this article, **any person or entity who uses or causes
the use of the indicia of identity of a person**, on or in products, goods, merchandise, or
services entered into commerce in this state, or **for purposes of advertising** or selling, or
soliciting purchases of, products, goods, merchandise, or services, or **for purposes of
fund-raising or solicitation of donations**, or for false endorsement, **without consent shall
be liable under this article to that person, or to a holder of that person's rights**.

Ala. Code § 6-5-771(2) (emphasis added).

68. The Personal Information sold by Facebook to CA for commercial use includes

indicia of identity as defined by ARPA. The Personal Information is used by the Defendants in the

highly-targeted political advertisements and fund-raising solicitations.

18

69.     Defendants violated the ARPA by using Plaintiff and Class Members' Personal

Information "for purposes of advertising…or for purposes of fund-raising or solicitation of

donations…"

70.     ARPA provides that the Plaintiff shall elect between damages "within a reasonable

time after the close of discovery…." Ala. Code § 6-5-774.

71.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class

Members suffered injury and are entitled to seek damages owed to them, including:

> g.     Statutory damages in the amount of $5,000 per occurrence;
> h.     Compensatory damages, including the profits derived by the Defendants
>        from use of Personal Information;
> i.     Punitive damages;
> j.     Appropriate injunctive relief;
> k.     Injunctive relief;
> l.     Statutory interest; and
> m.     Such other and further relief as the Court deems proper.

## COUNT FIVE
## NEGLIGENCE

72.     All allegations and paragraphs in this complaint are incorporated by reference. To

the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

73.     Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable

care in obtaining and protecting their Personal Information, including keeping it from being

compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. The Defendants

knew that the Personal Information of the Plaintiff and Class Members was personal, sensitive,

and valuable.

74.     As described herein, Defendants breached this duty by negligently exceeding their

authorization related to the use Plaintiff's and Class Members' Personal Information. Furthermore,

Defendants breached their duties by failing to adopt, implement, and maintain adequate security

19

measures to safeguard the Personal Information, or by obtaining that Personal Information without authorization. Said negligence caused the Plaintiff injuries and damages.

75.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## COUNT SIX
## CONVERSION

76.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

77.     Plaintiff and Class Members were the owners and possessors of their Personal Information. As the result of Defendants' wrongful conduct, Defendants have unlawfully deprived or interfered with the Plaintiff and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

78.     Defendants' wrongful conduct is a wrongful taking, wrongful detention, illegal assumption of ownership, and illegal use of the Plaintiff and Class Members' property.

79.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## COUNT SEVEN
## WANTONNESS AND PUNITIVE DAMAGES

80.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

81.    As described in detail throughout this Complaint, Defendants consciously or deliberately engaged in oppression, wantonness, or malice with regard to the Plaintiff and Class Members. Defendants' conduct was carried on with a reckless or conscious disregard of the rights or safety of others.

82.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## COUNT EIGHT
## CIVIL CONSPIRACY

83.    All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

84.    As described herein, Defendants knew or had reason to know that Plaintiff and Class Members' personal information was being used in a manner that exceed the of the terms of Facebook's agreement with its users. Defendants combined to do certain acts that are either (1) civilly unlawful or (2) lawful but accomplished by unlawful means. Specifically, the Defendants combined to:

      a.    Violate the Stored Communications Act, 18 U.S.C. § 2707, *et seq.*;

      b.    Violate the Alabama Deceptive Trade Practices Act, Alabama Code § 8-
         19-1, *et seq.*;

      c.    Violate the Alabama's Right to Publicity Act, Alabama Code § 6-5-770, *et
         seq.*;

    d.      Negligently caused the Plaintiff and Class Members damage by breaching

            their duty to excise reasonable care in obtaining and protecting Personal

            Information;

    e.      Convert Plaintiff and Class Members' Personal Information; and

    f.      Wantonly injury the Plaintiff and Class Members.

85.     There was an agreement and meeting of the minds by the Defendants to commit these acts.

86.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and each Class Member, seeks:

    (1)  An order certifying the proposed class and any appropriate subclasses, and

         appointing Plaintiff as class representative and Plaintiff's counsel as class

         counsel;

    (2)  Damages available under:

         a. Stored Communications Act, 18 U.S.C. § 2707, *et seq.*;

         b. Alabama Deceptive Trade Practices Act, Alabama Code § 8-19-1, *et seq.*;

         c. Alabama's Right to Publicity Act, Alabama Code § 6-5-770, *et seq.*;

    (3)  Punitive damages;

    (4)  Reasonable attorney's fees and costs;

(5) Injunctive relief, including an order prohibiting Defendant from further unlawful use of Personal Information;

(6) Full restitution; and

(7) All other relief which the Court or jury should find appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable of right.

Dated: April 4, 2018.                       Respectfully submitted,

/s/Brad Ponder
Luke Montgomery (ASB-3810-A55M)
Brad Ponder (ASB-0965-P56P)
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
luke@montgomeryponder.com
brad@montgomeryponder.com

## UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. 2843 _____ & TITLE - IN RE: Facebook, Inc., Consumer Privacy User Profile Liti

# NOTICE OF APPEARANCE

*Appearances should only be entered in compliance with Rule 4.1(c).*

**PARTIES REPRESENTED (indicate plaintiff or defendant--attach list if more than one action):**

Defendants Facebook, Inc.; Mark Zuckerberg

**SHORT CASE CAPTION(s) (Include District(s), Civil Action No(s).-- attach list if more than one action):**

See attached List of Actions

*****************************************************

In compliance with **Rule 4.1(c)**, the following designated attorney is authorized to file and receive service of all pleadings, notices, orders, and other papers relating to practice before the Judicial Panel on Multidistrict Litigation on behalf of the plaintiff(s)/ defendant(s) indicated. I am aware that only one attorney can be designated for each party.

| 04/05/2018 | /s/ Orin Snyder |
|---|---|
| Date | Signature of Attorney or Designee |

**Name and Address of Designated Attorney:**

Orin Snyder, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166

Telephone No.: (212) 351-2400      Fax No.: (212) 351-6335

Email Address: osnyder@gibsondunn.com

**Instructions:**

1. From the JPML home page, download Notice of Appearance. Fill out form and save in .pdf format. (All documents filed with the Judicial Panel must be in PDF Format.) The Appearance Form is to be filed as the main PDF document. Any documents submitted with the Appearance Form are attachments.
2. Select MDL from the menu bar at the top of the ECF screen.
3. Click on Notices. Select the appropriate Notice of Appearance. Select Next.
4. Enter the three or four digit MDL number (ex. 875). Select Next.
5. Verify MDL number, if correct Select Next.
6. Choose the case(s) for which the Appearance is being filed. Select Next.
7. Select Party. Select next twice.
8. Upload the Appearance Form as the Main document and all other documents as attachments. Be sure to choose a category and description. Select the document to which the Appearance relates. (Note: Appearances filed in new litigations will be linked to the initial Motion for Transfer and Appearances filed in transferred litigations should be linked to the Conditional Transfer Order (CTO).
9. Select the next button and verify docket text. If correct continue to select next to complete the transaction.

## List of Actions

1. *Theresa Beiner and Brandon Haubert, on behalf of themselves and all others similarly situated v. Facebook, Inc., and Cambridge Analytica*, Northern District of California, Case No. 3:18-CV-01953,

2. *Victor James Comforte, II and Brendan Michael Carr, Individually, and on behalf of all others similarly situated v. Cambridge Analytica, Facebook, Inc., Mark Zuckerberg, and John and Jane Does 1-100*, Northern District of Illinois, Case No: 1:18-CV-02120

3. *Ashley Gennock and Randy Nunez, and on behalf of all others similarly situated v. Facebook, Inc., and Cambridge Analytica*, Northern District of California, Case No: 4:18-CV-01891

4. *Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100*, Northern District of California, Case No.: 4:18-cv-01984

5. *Matthew Lodowski, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica, Robert Leroy Mercer, and Aleksandr Kogan*, Southern District of Texas, Case No: 4:18-CV-00907

6. *Jay Malskoff and Kenneth Irvine, individually and on behalf of all others v. Facebook, Inc., Cambridge Analytica, Cambridge Analytica (UK), Cambridge Analytica LLC, Robert Mercer, and Aleksandr Kogan*, District of New Jersey, Case No: 2:18-CV-04451

7. *Howard O'Kelly, on behalf of himself and all others similarly situated v. Facebook, Inc., and Cambridge Analytica, LLC*, Northern District of California, Case No: 3:18-CV-01915

8. *Lauren Price on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica*, Northern District of California, Case No: 3:18-CV-01732

9. *Jonathan D. Rubin, individually and on behalf of all those similarly situated v. Facebook, Inc., SCL Group, Global Science Research Ltd., and Cambridge Analytica LLC*, Northern District of California, Case No: 3:18-CV-01852

10. *Debra Kooser and Margaret Frankiewicz v. Facebook, Inc., Cambridge Analytica, SCL Group, Limited, and Global Science Research LTD*, Northern District of California, Case No.: 3:18-CV-02009

11. *Jordan O'Hara, Brent Collins, and Olivia Johnston v. Facebook, Inc., Cambridge Analytica, LLC, Aleksandr Kogan, Stephen K. Bannon, and Does 1-10*, Central District of California, Case No. 8:18-CV-00571

12. *Jackie Williams v. Facebook, Inc. and Cambridge Analytica, LLC*, Northern District of Alabama, Case No. 2:8-CV-00535-RDP

## BEFORE THE
## UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE:  FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION** | **MDL DOCKET NO. 2843** |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that on April 5, 2018, I caused the foregoing

documents to be filed with the Clerk of the Court using the Judicial Panel on Multidistrict

Litigation's CM/ECF system, which will serve notification of such filing to the email of all counsel

of record in this action. I further certify that copies of the foregoing were served on all counsel (or

unrepresented parties), and on the Clerk of the Court of each proposed transferor court, by U.S.

First Class Mail, postage pre-paid, as follows:

**Court Clerks**

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102

*Theresa Beiner and Brandon Haubert, on behalf of themselves and all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 3:18-CV-01953

*Howard O'Kelly, on behalf of himself and all others similarly situated v. Facebook, Inc., and Cambridge Analytica, LLC;* Case No. 3:18-CV-01915

*Lauren Price on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica;* Case No. 3:18-CV-01732

*Jonathan D. Rubin, individually and on behalf of all those similarly situated v. Facebook, Inc., SCL Group, Global Science Research Ltd., and Cambridge Analytica LLC;* Case No. 3:18-cv-01852

Thomas G. Bruton, Clerk
Chicago Division
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

*Victor James Comforte, II and Brendan Michael Carr, Individually, and on behalf of all others similarly situated v. Cambridge Analytica, Facebook, Inc., Mark Zuckerberg, and John and Jane Does 1-100,* Case No. 1:18-CV-02120

Susan Y. Soong, Clerk
Oakland Division
United States District Court
1301 Clay Street, Suite 400S
Oakland, CA 94612

*Ashley Gennock and Randy Nunez, and on behalf of all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 4:18-CV-01891

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
280 S. 1st Street
San Jose, CA 95113

*Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100;* 4:18-cv-01984-YGR

Kiry Gray, Clerk
Southern Division
Central Division of California
411 West 4th Street, Room 1053
Santa Ana, CA 92701

*Jordan O'Hara, Brent Collins, and Olivia Johnston, individually and on behalf of all others similarly situated v. Facebook, Inc., a Delaware corporation; Cambridge Analytica, LLC, a Delaware limited liability company; Aleksandr Kogan, an individual, Stephen K. Bannon, an individual, and DOES 1-10, Inclusive*

David J. Bradley, Clerk
Houston Division
United States Courthouse
515 Rusk Avenue
Houston, TX 77002

*Matthew Lodowski, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica, Robert Leroy Mercer, and Aleksandr Kogan*;
Case No. 4:18-CV-00907

William T. Walsh, Clerk
Newark Division
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

*Jay Malskoff and Kenneth Irvine, individually and on behalf of all others v. Facebook, Inc., Cambridge Analytica, Cambridge Analytica (UK), Cambridge Analytica LLC, Robert Mercer, and Aleksandr Kogan;*
Case No. 2:18-CV-04451

Clerk of Court
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

*Jackie Williams, on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica, LLC*, Case No. 2:18-CV-00535-RDP

## Counsel / Parties

Michael W. Sobol
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Fax: 415.956.1008
Email: msobol@lchb.com
*Counsel to Plaintiff Theresa Beiner and Brandon Haubert*

Joseph Scott Davidson
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: 630.581.5456
Fax: 630-575.8188
Email: jvlahakis@sulaimanlaw.com
*Counsel to Plaintiff Victor James Comforte, II and Brendan Michael Carr*

Todd David Carpenter
Carlson Lynch Sweet Kilpela &
Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619.762.1900
Fax: 619.756.6991
Email: tcarpenter@carlsonlynch.com
*Counsel to Plaintiff Ashley Gennock and Randy Nunez*

Jason Scott Hartley
Stueve Siegel Hanson, LLP
550 West C Street
Suite 1750
San Diego, CA 92101
Telephone: 619.400.5822
Fax: 619.400.5832
Email: hartley@stuevesiegel.com
*Counsel to Plaintiff Howard O'Kelly*

Christopher Springer
Keller Rohrback, L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: 805.456.1496
Fax: 805.456.1497
Email: cspringer@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

Lynn Lincoln Sarko
Gretchen Freeman Cappio
Cari Campen Laufenberg
Keller Rohrback, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206.623.1900
Fax: 206.623.3384
Email: lsarko@kellerrohrback.com
Email: gcappio@kellerrohrback.com
Email: claufenberg@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

William Craft Hughes
Hughes Ellzey, LLP
Galleria Tower I
2700 Post Oak Blvd, Suite 1120
Houston, TX 77056
Telephone: 888.350.3931
Fax: 888.995.3335
Email: craft@hughesellzey.com
*Counsel to Plaintiff Matthew Lodowski*

James E. Cecchi
Carella Byrne Cecchi Olstein Brody &
Agnello, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973.994.1700
Fax: 973.994.1744
Email: jcecchi@carellabyrne.com
*Counsel to Plaintiffs Jay Malskoff and
Kenneth Irvine*

John A. Yanchunis
Morgan and Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: 813.223.5505
Fax: 813.223.5402
Email: jyanchunis@ForThePeople.com
*Counsel to Plaintiff Lauren Price*

Steven William Teppler
Abbott Law Group, P.A.
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111
Fax: 904.292.1220
Email: steppler@abbottlawpa.com
*Counsel to Plaintiff Lauren Price*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law
Corporation
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel to Plaintiff Lauren Price*

Nicholas A. Carlin
Phillips Erlewine Given & Carlin LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA 94129
Telephone: 415.398.0900
Fax: 415.398.0911
Email: nac@phillaw.com
*Counsel to Plaintiff Jonathan D. Rubin*

Helen I. Zeldes
Amy C. Johnsgard
Andrew J. Kubik
Ben Travis
Coast Law Group LLP
1140 S. Coast Highway 101
Encinitas, California 92024
Telephone: 760.942.8505
Fax: 760.942.8515
Email: helen@coastlaw.com
Email: amy@coastlaw.com
Email: andy@coastlaw.com
Email: ben@coastlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, D.C. 20016
Telephone: 202.789.3960
Fax: 202.789.1813
Email: charlesl@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Michael J. Flannery
Cuneo Gilbert & LaDuca LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 314.226.1015
Fax: 202.789.1813
Email: mflannery@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Paul L. Hoffman
Aidan C. McGlaze
Schonbrun Seplow Harris & Hoffman LLP
11543 W. Olympic Blvd
Los Angeles, CA 90064
Telephone: 310.396.0731
Fax: 310.399.7040
Email: phoffman@sshhlaw.com
Email: amcglaze@sshhlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

Timothy G. Blood
Thomas J. O'Reardon II
Blood Hurst & O'Reardon, LLP
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619.339.1100
Fax: 619.338.1101
Email: tblood@bholaw.com
Email: toreardon@bholaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

SCL Group
1-6 Yarmouth Place
Mayfair
London, W1S 4EL

Global Science Research Ltd.
6th Floor 49 Peter Street,
Manchester, England, M2 3NG

Cambridge Analytica LLC
597 5th Avenue, 7th Floor
New York, NY 10017

Cambridge Analytica (UK) Ltd.
55 New Oxford Street
London WC1A 1BS

Aleksandr Kogan
University of Cambridge, Dept. of
Psychology
Downing Street
Cambridge, UK CB2 3EB

Stephen K. Bannon
210 A Street, N.E.
Washington, DC 20002
*Last Known Address*

Luke Montgomery
Brad Ponder
Montgomery Ponder, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Telephone: 205.201.0303
Fax: 205.208.9443
Email: luke@montgomeryponder.com
Email: brad@montgomeryponder.com
*Counsel for Jackie Williams*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law Corp.
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel for Debra Kooser and*
*Margaret Frankiewicz*

Robert Leroy Mercer
149 Harbor Rd.
Saint James, NY 11780

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
*Agent of Service of Process for Cambridge*
*Analytica, LLC*

Stephen K. Bannon
82 Heritage Hill Rd
New Canaan, CT 06840
*Last Known Address*

Dated:  April 5, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:___/s/ *Orin Snyder*_____
Orin Snyder
200 Park Avenue
New York, N.Y. 10166
Tel: 212.351.2400
Fax: 212.351.6335
osnyder@gibsondunn.com

Joshua S. Lipshutz
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8217
Fax: 202.530.9614
jlipshutz@gibsondunn.com

Kristin A. Linsley
Brian M. Lutz
555 Mission Street
Suite 300
San Francisco, CA 94105
Tel: 415.393.8379
Fax: 415.374.8474
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Facebook, Inc.*

# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

MDL No. _____2843_____ & TITLE - IN RE: _____Facebook, Inc. User Profile Litigation_____

Case Caption (Include Plaintiff, District, and Civil Action No.) (attach list if necessary):

List of actions attached

---

# CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for _____Facebook, Inc._____, (attach list if necessary) certifies that this party is a non-governmental corporate party and that:

☐   This party's parent corporation(s) are listed below:

☐   The following publicly-held corporation(s) own 10% or more of the party's stock (attach list if necessary):

**OR**

☑   This party does not have any parent corporations; and no publicly-held corporation owns 10% or more of the party's stock.

/s/ Orin Snyder                              Gibson, Dunn & Crutcher LLP
_____    _____
Signature of Attorney                        Name of Firm

200 Park Ave.                                New York, NY 10166
_____    _____
Address                                      City/State/Zip Code

4/5/2018
_____
Date

**Instructions:**

1. Download the form. Fill out the form and save as a PDF document. All documents filed with the Judicial Panel should be in PDF Format including attachments and exhibits. The Corporate Disclosure Statement is to be filed as a separate document. Any documents submitted with the Corporate Disclosure Statement are attachments.
2. Select MDL from the menu bar at the top of the ECF screen.
3. Click on Corporate Disclosure Statement. Select Next.
4. Enter the three or four digit number (without the MDL letters) and click the Find This Case button.
5. If this is the correct MDL No., select next. Also, select next for the following screen.
6. Choose the cases for which the Disclosure Statement is being filed.
7. Select the party filing the Disclosure Statement
8. Select the document to which the Corporate Disclosure relates. (Note: Disclosures filed in new litigations will be linked to the initial Motion for Transfer and Disclosures filed in transferred litigations should be linked to the Conditional Transfer Order (CTO) or Motion and Brief to Vacate CTO).
9. Upload the Corporate Disclosure Form and any attachments as a PDF document.
10. Submit the Disclosure Statement by selecting the Next button.

**List of Actions**

1. *Theresa Beiner and Brandon Haubert, on behalf of themselves and all others similarly situated v. Facebook, Inc., and Cambridge Analytica*, Northern District of California, Case No. 3:18-CV-01953,

2. *Victor James Comforte, II and Brendan Michael Carr, Individually, and on behalf of all others similarly situated v. Cambridge Analytica, Facebook, Inc., Mark Zuckerberg, and John and Jane Does 1-100*, Northern District of Illinois, Case No: 1:18-CV-02120

3. *Ashley Gennock and Randy Nunez, and on behalf of all others similarly situated v. Facebook, Inc., and Cambridge Analytica*, Northern District of California, Case No: 4:18-CV-01891

4. *Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100*, Northern District of California, Case No.: 4:18-cv-01984

5. *Matthew Lodowski, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica, Robert Leroy Mercer, and Aleksandr Kogan*, Southern District of Texas, Case No: 4:18-CV-00907

6. *Jay Malskoff and Kenneth Irvine, individually and on behalf of all others v. Facebook, Inc., Cambridge Analytica, Cambridge Analytica (UK), Cambridge Analytica LLC, Robert Mercer, and Aleksandr Kogan*, District of New Jersey, Case No: 2:18-CV-04451

7. *Howard O'Kelly, on behalf of himself and all others similarly situated v. Facebook, Inc., and Cambridge Analytica, LLC*, Northern District of California, Case No: 3:18-CV-01915

8. *Lauren Price on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica*, Northern District of California, Case No: 3:18-CV-01732

9. *Jonathan D. Rubin, individually and on behalf of all those similarly situated v. Facebook, Inc., SCL Group, Global Science Research Ltd., and Cambridge Analytica LLC*, Northern District of California, Case No: 3:18-CV-01852

10. *Debra Kooser and Margaret Frankiewicz v. Facebook, Inc., Cambridge Analytica, SCL Group, Limited, and Global Science Research LTD*, Northern District of California, Case No.: 3:18-CV-02009

11. *Jordan O'Hara, Brent Collins, and Olivia Johnston v. Facebook, Inc., Cambridge Analytica, LLC, Aleksandr Kogan, Stephen K. Bannon, and Does 1-10*, Central District of California, Case No. 8:18-CV-00571

12. *Jackie Williams v. Facebook, Inc. and Cambridge Analytica, LLC*, Northern District of Alabama, Case No. 2:8-CV-00535-RDP

## BEFORE THE
## UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION** | **MDL DOCKET NO. 2843** |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that on April 5, 2018, I caused the foregoing

documents to be filed with the Clerk of the Court using the Judicial Panel on Multidistrict

Litigation's CM/ECF system, which will serve notification of such filing to the email of all counsel

of record in this action. I further certify that copies of the foregoing were served on all counsel (or

unrepresented parties), and on the Clerk of the Court of each proposed transferor court, by U.S.

First Class Mail, postage pre-paid, as follows:

## **Court Clerks**

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102

*Theresa Beiner and Brandon Haubert, on behalf of themselves and all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 3:18-CV-01953

*Howard O'Kelly, on behalf of himself and all others similarly situated v. Facebook, Inc., and Cambridge Analytica, LLC;* Case No. 3:18-CV-01915

*Lauren Price on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica*; Case No. 3:18-CV-01732

*Jonathan D. Rubin, individually and on behalf of all those similarly situated v. Facebook, Inc., SCL Group, Global Science Research Ltd., and Cambridge Analytica LLC;* Case No. 3:18-cv-01852

Thomas G. Bruton, Clerk
Chicago Division
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

*Victor James Comforte, II and Brendan Michael Carr, Individually, and on behalf of all others similarly situated v. Cambridge Analytica, Facebook, Inc., Mark Zuckerberg, and John and Jane Does 1-100,* Case No. 1:18-CV-02120

Susan Y. Soong, Clerk
Oakland Division
United States District Court
1301 Clay Street, Suite 400S
Oakland, CA 94612

*Ashley Gennock and Randy Nunez, and on behalf of all others similarly situated v. Facebook, Inc., and Cambridge Analytica;* Case No. 4:18-CV-01891

Susan Y. Soong, Clerk
San Francisco Division
United States District Court
280 S. 1st Street
San Jose, CA 95113

*Suzie Haslinger, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica LLC, and DOES 1-100;* 4:18-cv-01984-YGR

Kiry Gray, Clerk
Southern Division
Central Division of California
411 West 4th Street, Room 1053
Santa Ana, CA 92701

*Jordan O'Hara, Brent Collins, and Olivia Johnston, individually and on behalf of all others similarly situated v. Facebook, Inc., a Delaware corporation; Cambridge Analytica, LLC, a Delaware limited liability company; Aleksandr Kogan, an individual, Stephen K. Bannon, an individual, and DOES 1-10, Inclusive*

David J. Bradley, Clerk
Houston Division
United States Courthouse
515 Rusk Avenue
Houston, TX 77002

*Matthew Lodowski, individually and on behalf of all others similarly situated v. Facebook, Inc., Cambridge Analytica, Robert Leroy Mercer, and Aleksandr Kogan;* Case No. 4:18-CV-00907

William T. Walsh, Clerk
Newark Division
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

*Jay Malskoff and Kenneth Irvine, individually and on behalf of all others v. Facebook, Inc., Cambridge Analytica, Cambridge Analytica (UK), Cambridge Analytica LLC, Robert Mercer, and Aleksandr Kogan;* Case No. 2:18-CV-04451

Clerk of Court
Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

*Jackie Williams, on behalf of herself and all others similarly situated v. Facebook, Inc. and Cambridge Analytica, LLC,* Case No. 2:18-CV-00535-RDP

## Counsel / Parties

Michael W. Sobol
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Fax: 415.956.1008
Email: msobol@lchb.com
*Counsel to Plaintiff Theresa Beiner and Brandon Haubert*

Joseph Scott Davidson
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: 630.581.5456
Fax: 630-575.8188
Email: jvlahakis@sulaimanlaw.com
*Counsel to Plaintiff Victor James Comforte, II and Brendan Michael Carr*

Todd David Carpenter
Carlson Lynch Sweet Kilpela &
Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619.762.1900
Fax: 619.756.6991
Email: tcarpenter@carlsonlynch.com
*Counsel to Plaintiff Ashley Gennock and Randy Nunez*

Jason Scott Hartley
Stueve Siegel Hanson, LLP
550 West C Street
Suite 1750
San Diego, CA 92101
Telephone: 619.400.5822
Fax: 619.400.5832
Email: hartley@stuevesiegel.com
*Counsel to Plaintiff Howard O'Kelly*

Christopher Springer
Keller Rohrback, L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: 805.456.1496
Fax: 805.456.1497
Email: cspringer@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

Lynn Lincoln Sarko
Gretchen Freeman Cappio
Cari Campen Laufenberg
Keller Rohrback, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206.623.1900
Fax: 206.623.3384
Email: lsarko@kellerrohrback.com
Email: gcappio@kellerrohrback.com
Email: claufenberg@kellerrohrback.com
*Counsel to Plaintiff Suzie Haslinger*

William Craft Hughes
Hughes Ellzey, LLP
Galleria Tower I
2700 Post Oak Blvd, Suite 1120
Houston, TX 77056
Telephone: 888.350.3931
Fax: 888.995.3335
Email: craft@hughesellzey.com
*Counsel to Plaintiff Matthew Lodowski*

James E. Cecchi
Carella Byrne Cecchi Olstein Brody &
Agnello, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973.994.1700
Fax: 973.994.1744
Email: jcecchi@carellabyrne.com
*Counsel to Plaintiffs Jay Malskoff and
Kenneth Irvine*

John A. Yanchunis
Morgan and Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: 813.223.5505
Fax: 813.223.5402
Email: jyanchunis@ForThePeople.com
*Counsel to Plaintiff Lauren Price*

Steven William Teppler
Abbott Law Group, P.A.
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: 904.292.1111
Fax: 904.292.1220
Email: steppler@abbottlawpa.com
*Counsel to Plaintiff Lauren Price*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law
Corporation
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel to Plaintiff Lauren Price*

Nicholas A. Carlin
Phillips Erlewine Given & Carlin LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA 94129
Telephone: 415.398.0900
Fax: 415.398.0911
Email: nac@phillaw.com
*Counsel to Plaintiff Jonathan D. Rubin*

Helen I. Zeldes
Amy C. Johnsgard
Andrew J. Kubik
Ben Travis
Coast Law Group LLP
1140 S. Coast Highway 101
Encinitas, California 92024
Telephone: 760.942.8505
Fax: 760.942.8515
Email: helen@coastlaw.com
Email: amy@coastlaw.com
Email: andy@coastlaw.com
Email: ben@coastlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, D.C. 20016
Telephone: 202.789.3960
Fax: 202.789.1813
Email: charlesl@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Michael J. Flannery
Cuneo Gilbert & LaDuca LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 314.226.1015
Fax: 202.789.1813
Email: mflannery@cuneolaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston*

Paul L. Hoffman
Aidan C. McGlaze
Schonbrun Seplow Harris & Hoffman LLP
11543 W. Olympic Blvd
Los Angeles, CA 90064
Telephone: 310.396.0731
Fax: 310.399.7040
Email: phoffman@sshhlaw.com
Email: amcglaze@sshhlaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

Timothy G. Blood
Thomas J. O'Reardon II
Blood Hurst & O'Reardon, LLP
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619.339.1100
Fax: 619.338.1101
Email: tblood@bholaw.com
Email: toreardon@bholaw.com
*Counsel to Plaintiffs Jordan O'Hara, Brent
Collins, and Olivia Johnston, individually and
on behalf of all others similarly situated*

SCL Group
1-6 Yarmouth Place
Mayfair
London, W1S 4EL

Global Science Research Ltd.
6th Floor 49 Peter Street,
Manchester, England, M2 3NG

Cambridge Analytica LLC
597 5th Avenue, 7th Floor
New York, NY 10017

Cambridge Analytica (UK) Ltd.
55 New Oxford Street
London WC1A 1BS

Aleksandr Kogan
University of Cambridge, Dept. of
Psychology
Downing Street
Cambridge, UK CB2 3EB

Stephen K. Bannon
210 A Street, N.E.
Washington, DC 20002
*Last Known Address*

Luke Montgomery
Brad Ponder
Montgomery Ponder, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Telephone: 205.201.0303
Fax: 205.208.9443
Email: luke@montgomeryponder.com
Email: brad@montgomeryponder.com
*Counsel for Jackie Williams*

Joshua Haakon Watson
Clayeo C. Arnold, A Professional Law Corp.
865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.777.7777
Fax: 916.924.1829
Email: jwatson@justice4you.com
*Counsel for Debra Kooser and*
*Margaret Frankiewicz*

Robert Leroy Mercer
149 Harbor Rd.
Saint James, NY 11780

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
*Agent of Service of Process for Cambridge*
*Analytica, LLC*

Stephen K. Bannon
82 Heritage Hill Rd
New Canaan, CT 06840
*Last Known Address*

Orin Snyder
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166
*Counsel for Mark Zuckerberg*

Dated: April 5, 2018                          Respectfully submitted,

                                              GIBSON, DUNN & CRUTCHER LLP

                                              By:___/s/ *Orin Snyder*_____
                                              Orin Snyder
                                              200 Park Avenue
                                              New York, N.Y. 10166
                                              Tel: 212.351.2400
                                              Fax: 212.351.6335
                                              osnyder@gibsondunn.com

                                              Joshua S. Lipshutz
                                              1050 Connecticut Avenue, N.W.
                                              Washington, D.C. 20036
                                              Tel: 202.955.8217
                                              Fax: 202.530.9614
                                              jlipshutz@gibsondunn.com

                                              Kristin A. Linsley
                                              Brian M. Lutz
                                              555 Mission Street
                                              Suite 300
                                              San Francisco, CA 94105
                                              Tel: 415.393.8379
                                              Fax: 415.374.8474
                                              klinsley@gibsondunn.com
                                              blutz@gibsondunn.com

                                              *Attorneys for Facebook, Inc.*