## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR JAMES COMFORTE, II and BRENDAN MICHAEL CARR, individually, and on behalf of all others similarly situated, | ) ) ) ) | **JURY DEMANDED** |
| Plaintiffs, | ) ) | CASE No.  18-cv-2120 |
| v. | ) ) | Judge Elaine E. Bucklo |
| CAMBRIDGE ANALYTICA, LLC, FACEBOOK, INC., MARK ZUCKERBERG, and JOHN and JANE DOES 1-100, | ) ) ) ) ) | Magistrate Judge Jeffery Cole |
| Defendants. | ) | |

## EMERGENCY MOTION FOR DOCUMENT AND DATA PRESERVATION ORDER

NOW COME, Plaintiffs VICTOR JAMES COMFORTE, II and BRENDAN MICHAEL CARR ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through their attorney James C. Vlahakis of SULAIMAN LAW GROUP, LTD., and seek the entry of a Document and Data Preservation Order against Defendant CAMBRIDGE ANALYTICA, LLC:

### I.  INTRODUCTION

1.     It has been widely reported that CAMBRIDGE ANALYTICA, LLC ("Cambridge") has engaged in data mining, data brokerage, and data analysis by and through its acquisition of the personal data of approximately 85 million Facebook users. This lawsuit was filed on March 22, 2018, and was the first class action in this District to be filed against Cambridge, and the second lawsuit to be filed in the country.  Exhibit A.  Facebook, Inc. and its CEO, Mark Zuckerberg are also Defendants.

2.     Both Plaintiffs reside in this District and both Plaintiffs were notified by Defendant Facebook, Inc. that their personal information had been obtained by

Cambridge.  A representative example of Facebook, Inc. notice to Plaintiffs is set forth below:



# Protecting Your Information

We understand the importance of keeping your data safe.

We have banned the app "This Is Your Digital Life," which one of your friends used Facebook to log into. We did this because the app may have misused some of your Facebook information by sharing it with a company called Cambridge Analytica. In most cases, the information was limited to public profile, Page likes, birthday, and current city.

You can learn more about what happened and how you can remove apps and websites anytime if you no longer want them to have access to your Facebook information.

There is more work to do, but we are committed to confronting abuse and to putting you in control of your privacy.

**Get More Information**

3.      Cambridge has appeared through Nancy A. Temple and Richard B. Bradshaw of Katten & Temple and Mark C. Scarsi of Milbank, Tweed, Hadley & McCloy LLP, has submitted a *pro hac vice* appearance which was granted on May 2, 2018.  *See* Dkt. 25-26, 38, 42.  On May 2, 2018, Judge Elaine E. Bucklo granted Cambridge's Motion to For Extension of Time to Answer or Otherwise Respond to Plaintiffs Complaint until thirty (30) days after the JPML issues a decision on a pending motion for transfer and consolidation.  *See* Dkts. 36, 42.[1]

4.      Cambridge is on the verge of filing for bankruptcy protection, and despite being directly implicated by Facebook, Inc. and Facebook, Inc.'s CEO, Cambridge continues to deny its involvement.  The following is a true and accurate screen capture of a press release issued by Cambridge on May 2, 2018:



---

[1] Over a dozen user and shareholder lawsuits have been filed in the wake of Facebook's admission that user data was improperly obtained by Cambridge, resulting in the filing of a transfer and consolidation motion that is fully briefed before the Joint Panel on Multidistrict Litigation.  Dkt. 28.  Oral argument will take place on May 30, 2018, in Chicago.  *Id.*

5.      The above screen capture was obtained from at the following website, https://ca-commercial.com/news/cambridge-analytica-and-scl-elections-commence-insolvency-proceedings-and-release-results-3

6.      The below screen capture was obtained from the same website:



7.      At approximately 4:45 central standard time, on today's date (May 2, 2018), Mark C. Scarsi of Milbank, Tweed, Hadley & McCloy LLP withdrew for Cambridge. See Exhibit B.  With notice of withdrawal did not follow the procedures set forth by Local Rule 83.17 which requires leave of court unless another attorney from same firm remains counsel of record. No other member of Mr. Scarsi's firm has filed an appearance.[2]

8.      Web-based reporter Melanie Ehrenkranz reported the following regarding Cambridge's abrupt shutdown of operations:

_____

[2] It is not Plaintiffs' position to quibble with formalities, but with Cambridge poised to file for bankruptcy, it is somewhat worrisome to see an attorney withdraw without seeking leave of court to do so.

> On Wednesday, Cambridge Analytica employees learned that its parent company, the SCL Group, was shuttering the business, with American-based workers directed to return their keycards immediately, according to documentation reviewed by Gizmodo.
>
> The news was announced during a conference call led by Julian Wheatland, the current chairman of the SCL Group who was reportedly tapped to take over as Cambridge Analytica's next CEO. Both Cambridge Analytica and SCL Elections (the SCL Group subsidiary connected to Cambridge Analytica) will now close their doors.
>
> During the call, Wheatland said that the board determined that rebranding the company's offerings in the current environment is "futile."
>
> Cambridge Analytica and the SCL Group have offices in London, New York City, Arlington, Virginia, and Washington, D.C. The conference call was originally scheduled for Tuesday morning, but was repeatedly pushed back until early Wednesday afternoon, ultimately getting rescheduled more than half a dozen times.

See, https://gizmodo.com/cambridge-analytica-just-shut-down-all-its-us-offices-1825698536

9.      Ms. Ehrenkranz's reporting suggests that Cambridge employees are not preserving data in the aftermath of the announced shutdown:

> Screenshots from the company's internal chat service obtained by Gizmodo show a darkly comic mood in anticipation of the call. One employee shared bleakly titled Spotify playlists in Slack featuring songs like "High and Dry" by Radiohead, "The End" by The Doors, and "Help!" by The Beatles. Another employee posted a still from *Titanic* showing the ship's band playing their instruments as the vessel sinks.

*Id.*

10.      Given the serious nature of the charges leveled against Cambridge, it is distressing to know that Cambridge employees are reportedly acting in this manner.

11.      At this time it has been widely reported that Cambridge may have already taken measures to reform as Emerdata, which was incorporated in August of 2017, and

shares the same address as Cambridge's parent company, SCL Group. *See, e.g.*, http://www.businessinsider.com/cambridge-analytica-executives-and-mercer-family-launch-emerdata-2018-3?r=UK&IR=T

## II.   SUMMARY OF RELIEF SOUGHT AND BASIS FOR RELIEF SOUGHT

12.   On information and belief, Cambridge is at risk of destroying and/or absconding with documentation critical to the prosecution of this case.  And until a bankruptcy court has jurisdiction over Cambridge, this is a real risk that it destroy and/or abscond with documentation critical to the prosecution of this case.

13.   To be clear, the relief sought by this Motion is solely against Cambridge and its officers, executives, employees, agents and in-house and retained lawyers.

14.   "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998).  *See, e.g., Danis v. USN Commc'ns, Inc.*, 2000 WL 1694325 (N.D. Ill. Oct. 20, 2000) (where Magistrate Judge recommended that the defendant CEO be sanctioned $10,000 for document preservation failings, to be paid to court registry).

15.   FRCP 16(b)(3)(B) and 16(c)(2)(F) which set forth a court's power to manage discovery and scheduling of discovery.

16.   FRCP 37(a) provides this Court with the power to enter orders regarding the preservation of discoverable information.

(a) MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

(2) *Appropriate Court.* A motion for an order to a party must be made in the court where the action is pending.

17.     FRCP 37(e) authorizes a court to enter sanctions against a party that fails to take reasonable steps to preserve evidence.

18.     As discussed below, efforts have been made to contact counsel for Cambridge before filing this motion.  The relief sought is being sought in the form of a temporary restraining order ("TRO) to maintain the status quo should Cambridge's counsel contend that data preservation efforts have been and will be maintained.

19.     A TRO can be issued in exceptional and emergency circumstances when necessary to preserve the status quo until the court has an opportunity to rule on a motion for preliminary injunction after an evidentiary hearing. *See, e.g., Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726- 27 (N.D. Ill. 1989).

### III.     THIS COURT HAS JURISDICTION OVER CAMBRIDGE

20.     Plaintiffs have alleged claims against Cambridge pursuant to the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq.  Accordingly, Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over Cambridge.  Additionally, this Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state.

21.     The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     Venue is proper under 28 U.S.C. § 1391(c) because on information and belief, Cambridge has conducted substantial business in this District and it is therefore subject to personal jurisdiction in this District.

23.     Venue is proper because a substantial part of the misconduct and deception giving rise to the claims in this action took place this District.

**IV.     COMPLIANCE WITH THIS COURT'S STANDING ORDER**

24.     Magistrate Judge Cole is the assigned Magistrate Judge in this case.  This motion is being brought before Magistrate Judge Cole because the undersigned counsel has been informed that the assigned District Court Judge, Elaine E. Bucklo is not present in court on May 3, 2018.

25.     In conformance with this Court's Standing Order on motion practice, this motion has been properly brought as an emergency motion because this motion has "arise[n] from circumstances that could not reasonably have been anticipated and that requires immediate action to avoid serious or irreparable harm" to Plaintiffs and the putative class members.  The circumstances could not reasonably have been anticipated because it was only days ago (Thursday, April 26, 2018) that Cambridge responded to the JPML transfer motion.  Dkt. 39.

26.     The undersigned counsel has also communicated with court personnel to have this motion presented as an emergency motion.

27.     Prior to filing this motion, Plaintiff's counsel attempted to comply with Local Rule 37.2 by emailing Ms. Temple on May 2, 2018, and by leaving a detailed phone message at approximately 8:30 pm at which time he apprised her of his intention to bring this motion.  Thereafter, on May 2, 2018, counsel emailed Nancy A. Temple and Richard B. Bradshaw of Katten & Temple to seek assurances regarding Cambridge's data and document preservation efforts.  Defense counsel has not responded to any of above communications.

28.     Plaintiffs' counsel emailed counsel for Cambridge on the morning of May 3, 2018, to ascertain whether Cambridge had taken measures to preserve relevant data

and to confirm that the measures were still in place.  Plaintiffs' counsel also asked whether Emerdata was emerging as a successor to Cambridge and otherwise preserving relevant data.  As of the filing of this motion, Cambridge's counsel have not responded.

## V.     ARGUMENT IN SUPPORT OF EMERGENCY PRESERVATION ORDER

29.     Although the Federal Rules of Civil Procedure do not expressly impose a duty to preserve documents, the Federal Rules of Civil Procedure empower this Court to order the preservation of evidence.  Courts have construed the federal discovery rules to imply a duty "to preserve documents and other information that may be relevant in a case," reasoning that the duty of disclosure under Rule 26 would be "a dead letter if a party could avoid the duty by the simple expedient of failing to preserve documents that it does not wish to produce.*" Danis v. USN Communications, Inc.*, 53 Fed. R. Serv. 3d 828 (N.D. Ill. 2000).  *See also, Treppel v. Biolvail Corp.*, 249 F.R.D. 111, 119-20 (S.D.N.Y. 2008) (collecting cases).

30.     "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a `litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("*Zubulake IV*").  Even without a court order, parties to civil litigation may not destroy evidence.  *See, e.g., Lekkas v. Mitsubishi Motors Corp.*, 2002 WL 31163722, at *3 (N.D. Ill. Sep. 26, 2002) (collecting cases).

31.     As part of a records retention program, companies should consider having a procedure to identify potential disputes and protect the corresponding ESI.  *Danis v. USN Commc'ns, Inc.*, 2000 WL 1694325 (N.D. Ill. Oct. 20, 2000).

32.     Parties to civil litigation have an ongoing duty to preserve evidence that attaches when a party knows, or should have known, that litigation was imminent. *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).  This duty is

broad, encompassing any relevant evidence that the party knew, or reasonably could foresee, would be relevant to the action. *In re Kmart*, 371 B.R. 823, 842 (N.D. Ill. 2007).

33.     In addition to this duty, the court has broad discretionary power to order a party to preserve evidence.  *See, e.g., In re African–American Slave Descendants' Litig.*, 2003 WL 24085346, *2 (N.D. Ill. July 15, 2003).  A preservation order is an injunctive remedy that should issue "upon an adequate showing that equitable relief is warranted." *Id*. In rendering this determination, the court considers: "1) whether Plaintiffs can demonstrate that Defendants will destroy necessary documentation without a preservation order; 2) whether Plaintiffs will suffer irreparable harm if a preservation order is not entered; and 3) the burden imposed upon the parties by granting a preservation order." *Id*.

34.     As to the second element, with Cambridge reportedly closing its doors and telling employees to turn in their key cards, there is a real risk that relevant data will not be preserved. *See, e.g., Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake V*") ("[I]t is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.") (emphasis omitted). Surely employees reporting loafing on the job on the final day or days is sufficient to support and require the entry of a preservation order.

35.     With counsel withdrawing, it is worrisome that there will be nobody at the helm of Cambridge to instruct employees, officers and executives of their continuing duties to preserve evidence.   Additionally, reports appear to demonstrate that Cambridge was removing documents from its London based office prior to being served with        summons        in        this        case.                *See,           e.g.,*

https://www.huffingtonpost.co.uk/entry/cambridge-analytica-high-court-judge-approves-search-warrant_uk_5ab4d8cae4b0decad048e727

    36.    An image attributed to Henry Nicholls of REUTERS documents the removal of potential documents on or about March 22 or 23, 2018.



*Id.*

    37.    On March 20, 2018, HuffPost reporter George Bowden posted the following tweet of boxes being removed from Cambridge's London office:



38.     On information and belief, it is plausible to contend that Cambridge may remove documents in a similar matter or worse – it is plausible that Cambridge may destroy or hid relevant documents.

39.     As to the second element, Plaintiffs will suffer irreparable harm if a preservation order is not entered.

40.     As to the third element, there is virtually no burden on Cambridge to do what it is supposed to do – secure and preserve relevant data.  While Cambridge's press release claims that is has lost clients, the release does not support the notion that there are no funds to continue to employ individuals for the purpose of preserving relevant data.

41.     A temporary order should issue to preserve the status quo.  While Plaintiffs are not seeking a temporary restraining order, the law applicable to restraining orders supports the entry of the relief requested in this motion.  In analyzing the propriety of filing a motion for which seeks a temporary restraining order, Illinois courts apply two-step analysis.  Step one analyzes whether there is a likelihood of success on the merits,

a threat of irreparable harm, and an inadequate remedy at law. If the movant satisfies these substantive factors, the court undertakes a secondary analyzing by balancing the hardships on parties if the preliminary injunction is granted or not, and in performing this analysis, a court considers the impact of the granting of the motion on public interest. *International Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 675 (N.D. Ill. 2006). The "likelihood of success" and "irreparable harm" elements are considered on sliding scale whereby the greater the likelihood of success, the less stringent the showing need be that balance of hardships weighs in movant's favor. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 – 387 (7th Cir. 1984). A movant has a "better than negligible" likelihood of success if the balance of harms is in its favor. *Roland Machinery*, 749 F.2d at 387; *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982)). When a TRO is entered with notice but without an evidentiary hearing, the TRO should be for a limited duration until an evidentiary hearing can be held. *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726-27 (N.D. Ill. 1989).

42.     To be clear, the relief being sought in this motion is temporary in nature, until such time as counsel for Cambridge can confirm that relevant data has and will be maintained, even if this proceeding ends up in bankruptcy court. The day or days between this suit being a justiciable civil action and it being stayed pending the filing of a bankruptcy proceeding is/are critical to data preservation. Notably, Cambridge denies liability so one would think that Cambridge should be preserving relevant data. But in light of widely reported public revelations and congressional and international based testimony by corporate officials and employees formerly employed by Cambridge, too many unanswered questions exist. Accordingly, the relief requested is justifiable, especially when no assurances as to data preservation have been given, and the newly formed company Emerdata may or may not obtain control over relevant data.

**WHEREFORE**, for the above reasons, this Court should enter an Order requiring Defendant CAMBRIDGE ANALYTICA, LLC to preserve all relevant Documents, Data and Tangible Things as defined by and in in accordance with the proposed order attached hereto as Exhibit B.


Plaintiffs VICTOR JAMES COMFORTE, II and
BRENDAN MICHAEL CARR individually
and on behalf of all others similarly situated,

By:   /s/James Vlahakis

James Vlahakis (lead counsel)
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456 telephone
jvlahakis@sulaimanlaw.com
jdavidson@sulaimanlaw.com

## Proof of Service

I, James C. Vlahakis, submit that on May 3, 2018, I served a copy of this Motion on all counsel of record pursuant to the Northern District of Illinois' ECF filing system.


/s/James C. Vlahakis

Counsel for Plaintiffs
Comforte and Carr