

BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| In re:<br><br>FACEBOOK USER PROFILE LITIGATION | MDL Docket No. 2843 |

**PLAINTIFF JONATHAN D. RUBIN'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA AND FOR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

I.  **INTRODUCTION**

Jonathan D. Rubin, plaintiff in the *Rubin v. Facebook, Inc., et al.* U.S District Court for the Northern District of California, Case No. 3:18-cv-01852, files this memorandum in support of Plaintiffs Theresa Beiner and Brandon Habert's motion for an Order transferring the eight (8) currently-filed cases listed in the Schedule of Actions (collectively, "the Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Northern District of California for coordinated or consolidated proceedings.

Mr. Rubin is the plaintiff in one of the eight cases filed to date against Facebook, Inc. ("Facebook"), Cambridge Analytica, and other related defendants, related to the massive data theft first reported in the press on or about March 17, 2018. Consistent with the Panel's recent data breach litigation decisions and especially in light of the expertise of the judges of the Northern District of California with these types of cases, Mr. Rubin agrees that consolidation and transfer of the Actions to the United States District Court for the Northern District of California, where Facebook is headquartered and five of the eight actions have been filed, is appropriate.

## II. The Facebook & Cambridge Analytica Data Theft Requires Immediate Action

Earlier this month, Christopher Wylie, a whistleblower and co-founder of Cambridge Analytica revealed that his firm, under the direction of its Vice President and Secretary, Steve Bannon, had used sensitive and personal information of over 50 million Americans, harvested illegally via Facebook, to manipulate American elections. Since then, media revelations and new lawsuits have become a daily occurrence and have only served to heighten Facebook users' justifiable concerns that their personal information has been leaked and used for illicit purposes. Just last night, it was revealed that an internal memo authored in 2016 by a Facebook VP, Andrew Bosworth, admitted Facebook's disturbing priorities, "The ugly truth is that we believe in connecting people so deeply that anything that allows us to connect more people more often is *de facto* good," even if it "costs a life by exposing someone to bullies." According to Bosworth, connecting people justifies "[a]ll the questionable contact importing practices. All the subtle language that helps people stay searchable by friends. . . . All of it." *See* https://www.buzzfeed.com/ryanmac/growth-at-any-cost-top-facebook-executive-defended-data?utm_term=.ypXLKn20o#.qioMmxEag.

The Courts must act quickly to rectify the situation. At least 50 million Americans now face serious long-term risk to their privacy and security, and substantially all American Facebook users remain uncertain about whether they were victims of the data theft.

In addition to having to live with the knowledge that their personal information was used to manipulate elections, exploitation of the highly personal data acquired by Cambridge Analytica can result in significant financial losses to individuals. Given the millions impacted, the financial consequences could be enormous. Prompt access to identify protection services is key to mitigating that risk and helping to minimize further misuse of personal data. The

immediate implementation of remedial security practices, above those practices Facebook has already changed in light of the public scrutiny it has faced thus far, is also imperative. Delay increases the chances that the data exploited by Cambridge Analytica for political means may be exploited for financial means by others.

Unfortunately, Facebook and Cambridge Analytica have not provided Facebook users with sufficient information about who was effected, how far their data spread, and the risk that the stolen data may be used in the future for illicit purposes. In light of the magnitude of the breach, this litigation demands jurists experienced in the tech and data privacy space that can act quickly and appropriately.

Mr. Rubin submits that the jurists of the Northern District of California are best-suited for the job.

### III.     The Right Venue For This Action is The Northern District of California

Mr. Rubin agrees that the Northern District of California is the best court for consolidation of pretrial proceedings in this litigation.

*First,* Defendant Facebook maintains its headquarters in Menlo Park, California within the Northern District, and regularly conducts business here. As a result, many of the witness would likely be present in the Northern District of California. San Francisco and the Bay Area are easily accessible by incoming flights to San Francisco International Airport, Oakland International Airport, and San Jose International Airport – all of which have direct domestic flights to Cambridge Analytica's domestic hubs and international flights to England where its parent company and some other witnesses may be located.

*Second*, courts in the Northern District of California have unique and extensive experience and expertise overseeing important digital privacy class actions, including class

actions involving defendant Facebook and MDLs. *See e.g.*, *Opperman v. Kong Techs., Inc.*, No. 13-cv-00453-JST (N.D. Cal.) (class action concerning breach of 1.9 million app users' data); Plaintiffs' Memo In Support of Transfer at pp. 6-7 & nn. 2-4 (listing cases). This experience managing complex litigation in Silicon Valley has produced the bench best-suited to address any legal or factual issues raised by this litigation.

Particularly in discovery, Northern District of California jurists have proven uniquely effective at narrowing disputes and facilitating exchange of the information critical to the efficient prosecution of data privacy class actions. For example, in late 2015, shortly after the Anthem data breach MDL was assigned, the Court ordered production of information Anthem had provided the government during a related criminal investigation, including a forensic report of the data breach by the cyber forensics firm Mandiant. *In re Anthem Data Breach Litig.*, 15-MD-02617-LHK, (N.D. Cal.) Dkt. No. 294, at 20-22. Providing more complete information to all parties early in the litigation significantly advanced the resolution of that case, which was reached in 2017 and is pending final approval. A similar tact may be used here given the ongoing investigation of Facebook by the Federal Trade Commission. *See* https://www.bloomberg.com/news/articles/2018-03-29/facebook-risks-millions-of-dollars-in-ftc-fines-over-data-crisis.

Such extensive experience with data privacy class actions, MDLs, and related discovery makes the Northern District of California the most promising venue to expeditiously resolve this data privacy litigation, which is a powerful reason to transfer the actions to the Northern District of California.

Among the many qualified jurists in the Northern District of California, Judge Vince Chhabria has been assigned to the first-filed Action here and has MDL experience in *In re*

*Roundup Products Liab. Litig.*, No. 3:16-md-02741 and Judge Jon S. Tigar has experience in MDL cases like *In Re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 3:07-cv-05944-JST and data privacy cases with multiple defendants to manage like *Opperman v. Kong Techs., Inc.*, No. 13-cv-00453-JST.

*Third*, the location of "the largest number of putative class members" is another factor supporting transfer of the actions here to the Northern District of California. *See In re Delta Air Lines, Inc.*, 170 F. Supp. 2d 1359, 1360 (U.S. Jud. Pan. Mult. Lit. 2001); *see also In re Credit Default Swaps Antitrust Litig.*, MDL No. 2476, 2013 WL 5703211 (U.S. Jud. Pan. Mult. Lit. October 16, 2013) (finding that the cases should be transferred to particular District in part because a "significant number of members of the putative classes" likely resided there). California, with nearly 40 million residents, is home to more probable class members than any other state. California victims will experience and have to remediate future harm from Facebook, Cambridge Analytica, and other defendants in their home state.

*Last*, five out of the eight cases filed against Facebook based on these facts were filed in this district, no other district had more than one.

## IV. CONCLUSION

For the foregoing reasons and the reasons set forth by Plaintiffs Beiner and Haubert, Plaintiffs' Motion to Transfer and Consolidation under Section 1407 should be granted and these related actions, as well as any subsequently filed actions containing similar allegations, should be transferred to the United States District Court for the Northern District of California.

Dated: March 30, 2018                             PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
                                                  By: /s/ Nicholas A. Carlin
                                                  Nicholas A. Carlin
                                                  Brian S. Conlon

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
Nicholas A. Carlin (State Bar No. 112532)
Brian S. Conlon (State Bar No. 303456)
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA   94129
Tel:   (415) 398-0900
Fax:   (415) 398-0911
Email: nac@phillaw.com
           bsc@phillaw.com

*Counsel for Plaintiff Jonathan D. Rubin*